**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| PARAGON OFFSHORE PLC, | Case No. 16-10386 (CSS) |
| Debtor.[1] | (Jointly Administered) |
| PARAGON LITIGATION TRUST, | |
| Plaintiff, | |
| v. | |
| NOBLE CORPORATION PLC, NOBLE CORPORATION HOLDINGS LTD, NOBLE HOLDING INTERNATIONAL (LUXEMBOURG) S.A R.L., NOBLE FDR HOLDINGS LIMITED, ASHLEY ALMANZA, JULIE H. EDWARDS, GORDON T. HALL, JON A. MARSHALL, JAMES A. MACLENNAN, MARY P. RICCIARDELLO, JULIE J. ROBERTSON, AND DAVID WILLIAMS, | Adv. Proc. No.17- 51882 (CSS) |
| | Hearing Date: To Be Determined |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ASHLEY ALMANZA'S**
**MOTION TO DISMISS THE COMPLAINT**

---

[1]   The Debtor in this case, along with the last four digits of the debtor's federal tax identification number, is Paragon Offshore plc (in administration) (6017). The Debtor's mailing address is 3151 Briarpark Drive, Suite 700, Houston, Texas 77042. Neville Barry Kahn and David Philip Soden, each of Deloitte LLP, are the joint administrators of Paragon Offshore plc (in administration) (the "Joint Administrators"). The affairs, business and property of Paragon Offshore plc (in administration) are managed by the Joint Administrators.

Dated: February 15, 2018

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Anthony W. Clark*

Anthony W. Clark (ID: 2051)
Stephen J. Della Penna (ID: 6103)
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone:  (302) 651-3000
Facsimile:   (302) 651-3001

- and -

George A. Zimmerman *(admitted pro hac vice)*
Lauren E. Aguiar *(admitted pro hac vice)*
Four Times Square
New York, New York 10036-6522
Telephone:  (212) 735-3000
Facsimile:   (212) 735-2000

-and-

Wallis M. Hampton *(admitted pro hac vice)*
1000 Louisiana, Suite 6800
Houston, Texas 77002-5026
Telephone:  (713) 655-5116
Facsimile:   (713) 483-9116

ALLEN & OVERY LLP

Andrew Rhys Davies *(admitted pro hac vice)*
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 610-6300
Facsimile:   (212) 610-6399

*Counsel for Defendant*

*Ashley Almanza*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii
NATURE AND STAGE OF THE PROCEEDING.............................................................1
SUMMARY OF ARGUMENT .........................................................................................2
PRELIMINARY STATEMENT .......................................................................................3
STATEMENT OF FACTS ...............................................................................................4

I.      AS AN IRISH CITIZEN, PERMANENTLY RESIDENT IN THE U.K., MR.
        ALMANZA HAS VIRTUALLY NO CONTACTS WITH THE UNITED
        STATES. ..............................................................................................................4

II.     MR. ALMANZA HAD NO CONTACTS WITH THE UNITED STATES IN HIS
        CAPACITY AS A NOBLE DIRECTOR BEFORE THE SPIN-OFF..............................5

ARGUMENT......................................................................................................................6

I.      THE CLAIM AGAINST MR. ALMANZA MUST BE DISMISSED BECAUSE
        THIS COURT LACKS PERSONAL JURISDICTION OVER HIM. .............................6

        A.      The Trust Cannot Establish that the Court Has Either  General or Specific
                Personal Jurisdiction Over Mr. Almanza...........................................................6

        B.      The Court Does Not Have General Personal Jurisdiction Over Mr.
                Almanza. ..........................................................................................................7

        C.      The Court Does Not Have Specific Jurisdiction Over Mr. Almanza. ..................10

                1.      Mr. Almanza Did Not Purposefully Avail Himself of the Benefits
                        and Protections of U.S. Law. ..............................................................10

                2.      Mr. Almanza's Contacts with the United States Also Do Not
                        Satisfy the *Calder* Effects Test. ........................................................15

                3.      This Court's Exercise of Personal Jurisdiction over Mr. Almanza
                        Would Not Comport with Fair Play and Substantial Justice. ....................18

II.     EVEN IF THE COURT DOES NOT DISMISS THE CLAIM AGAINST MR.
        ALMANZA, THE CLAIM CANNOT PROCEED BEFORE THIS COURT
        BECAUSE IT IS SUBJECT TO ARBITRATION...........................................................19

CONCLUSION...................................................................................................................20

# **TABLE OF AUTHORITIES**

## **CASES**

*Al-Ghena International Corp. v. Radwan*,
    957 F. Supp. 2d 511 (D.N.J. 2013) ...............................................................................9, 16

*Armstrong Development Properties, Inc. v. Ellison*,
    No. 13–1590, 2014 WL 1452322 (W.D. Pa. Apr. 14, 2014).............................................12

*Asahi Metal Industry Co. v. Superior Court of California, Solano County*,
    480 U.S. 102 (1987)........................................................................................................20

*Astropower Liquidating Trust v. Xantrex Technology, Inc. (In re Astropower Liquidating
    Trust)*, No. 04-10322 (MFW),
    2006 WL 2850110 (Bankr. D. Del. Oct. 2, 2006) ........................................................7, 11

*Boone v. Thompson*,
    No. 02-CV-1580, 2002 WL 31478834 (E.D. Pa. Nov. 1, 2002) .....................................13

*BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp.*,
    229 F.3d 254, 261 (3d Cir. 2000)...................................................................................13

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*,
    137 S. Ct. 1773 (2017)......................................................................................................8

*British American Insurance Co. v. Green Island Holdings, LLC (In re British American
    Insurance Co.)*, Nos. 09–31881–EPK, 09–35888–EPK, 11–03118–EPK,
    2013 WL 1881712 (Bankr. S.D. Fla. Apr. 30, 2013) ......................................................18

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985).....................................................................................................7, 11

*Burnham v. Superior Court of Cal.*,
    495 U.S. 604 (1990)..........................................................................................................8

*Calder v. Jones*,
    465 U.S. 783 (1984)......................................................................................................3, 16

*Corigliano v. Classic Motor, Inc.*,
    611 F. App'x 77 (3d Cir. 2015) .......................................................................................11

*Covenant Bank for Savings v. Cohen*,
    806 F. Supp. 52 (D.N.J. 1992) .........................................................................................10

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014)........................................................................................................8

*Diceon Electronics, Inc. v. Calvary Partners, L.P.*,
    772 F. Supp. 859 (D. Del. 1991) ........................................................................6

*Farmers Insurance Exchange v. Portage La Prairie Mutual Insurance Co.*,
    907 F.2d 911 (9th Cir. 1990) ...........................................................................12

*Fisher v. Teva PFC SRL*,
    212 F. App'x 72 (3d Cir. 2006) .......................................................................20

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    131 S. Ct. 2846 (2011) .......................................................................................8

*Hanson v. Denckla*,
    357 U.S. 235 (1958) .........................................................................................11

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) ....................................................................................8, 11

*Hendricks v. New Video Channel America, LLC*,
    No. 2:14-cv-02989-RSWL-SSx, 2015 WL 3616983 (C.D. Cal. June 8, 2015) ................10

*Hoechst Celanese Corp. v. Nylon Engineering Resins, Inc.*,
    896 F. Supp. 1190 (M.D. Fla. 1995) ................................................................8

*Hollingsworth v. Iwerks Entertainment, Inc.*,
    947 F. Supp. 473 (M.D. Fla. 1996) ................................................................15

*IMO Industries, Inc. v. Kiekert AG*,
    155 F.3d 254 (3d Cir. 1998) ..........................................................7, 11, 17, 18

*In re Cendant Corp. Derivative Action Litig.*,
    189 F.R.D. 117 (D.N.J. 1999) ........................................................................16

*In re DaimlerChrysler AG Secs. Litigation*,
    247 F. Supp. 2d 579 (D. Del. 2003) ...............................................................14

*International Energy Ventures Management, L.L.C. v. United Energy Group, Ltd.*,
    818 F.3d 193 (5th Cir. 2016) ..........................................................................12

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945) .........................................................................................7

*Kahn Lucas Lancaster, Inc. v. Lark International Ltd.*,
    956 F. Supp. 1131 (S.D.N.Y. 1997) ................................................................4

*L.A. Gem & Jewelry Design, Inc. v. Ecommerce Innovations, LLC*,
    No. CV 16-9325-RSWL-KSX, 2017 WL 1535084 (C.D. Cal. Apr. 27, 2017) ............. 9-10

*LaMonica v. CEVA Group PLC (In re CIL Ltd.)*,
No. 13–11272–JLG, 2018 WL 329893 at *14 (Bankr. S.D.N.Y. Jan. 5, 2018) .................9

*LaSala v. Marfin Popular Bank Public Co.*,
410 F. App'x 474 (3d Cir. 2011) ...................................................................19

*In re Lipitor Antitrust Litigation*,
No. 14-4632, 2018 WL 266751 (3d Cir. Jan. 3, 2018) ......................................8

*Marks v. Alfa Group*,
369 F. App'x 368 (3d Cir. 2010) ...........................................................17, 19

*Marten v. Godwin*,
499 F.3d 290 (3d Cir. 2007).........................................................16, 17, 19

*Mobilificio San Giacomo S.P.A. v. Stoffi*,
No. 96–415–LON, 1996 WL 924508 (D. Del. Oct. 29, 1996) ..........................20

*Moneygram Payment Systems, Inc. v. Consorcio Oriental, S.A.*,
65 F. App'x 844 (3d Cir. 2003) .................................................................13

*O'Connor v. Sandy Lane Hotel Co.*,
496 F.3d 312 (3d Cir. 2007).....................................................................15

*Richcourt Allweather Fund, Inc. v. Midanek*,
No. 13-4810 (RBK/AMD), 2014 WL 1582630 (D.N.J. Apr. 21, 2014)..............10

*Rosenberg v. XM Ventures*,
129 F. Supp. 2d 681 (D. Del. 2001), *aff'd*, 274 F.3d 137 (3d Cir. 2001) ...........6

*Spuglio v. Cabaret Lounge*,
344 F. App'x 724 (3d Cir. 2009) ................................................................20

*Stanziale v. Heico Holdings, Inc. (In re Conex Holdings, LLC)*,
514 B.R. 405 (Bankr. D. Del. 2014) ...........................................................12

*Time Share Vacation Club v. Atlantic Resorts, Ltd.*,
735 F.2d 61 (3d Cir. 1984)..........................................................................6

*Virgin Wireless, Inc. v. Virgin Enterprises Ltd.*,
201 F. Supp. 2d 294 (D. Del. 2002)..............................................................6

*Wallace v. Keystone Printed Specialties Co.*,
No. 14-5978 (ES) (MAH),
2016 U.S. Dist. LEXIS 132189, at *26-27 (D.N.J. Sept. 27, 2016) ................10

*Wolstenholme v. Bartels*,
511 F. App'x 215 (3d Cir. 2013) ............................................................14, 19

*World–Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)..................................................................................................7

## RULES

Federal Rule of Bankruptcy Procedure 7004................................................................7

Federal Rule of Civil Procedure 12(b)(2) ...................................................................7

## NATURE AND STAGE OF THE PROCEEDING

Approximately two years ago, on February 14, 2016, Paragon Offshore plc ("Paragon") along with twenty-five of its affiliates (collectively the "Debtors") each filed a Chapter 11 petition for relief (collectively, the "Chapter 11 Cases"). This Court subsequently entered an order directing joint administration of the Chapter 11 Cases. (*See* D.I. 69.)

On June 7, 2017, this Court entered an order confirming the Fifth Joint Chapter 11 Plan of Paragon Offshore plc and its Affiliated Debtors (the "Plan"). (*See* D.I. 1614.) As contemplated by the Plan, the Paragon Litigation Trust (the "Trust") was created. (*See* D.I. 1614-1 § 5.7, D.I. 1796-1.) The Plan provides for the transfer of the "Noble Claims," as that term is defined under the Plan, to the Trust.

On December 15, 2017, the Trust filed this adversary proceeding. (*See* D.I. 2012 and A.D.I. 1.) The Complaint alleges the following claims, all of which arise out of the spin-off of Paragon from Noble Corporation plc ("Noble") in 2014 (the "Spin-Off"):

- breach of fiduciary duty against two former Paragon directors, defendants James A. MacLennan and Julie J. Robertson;

- aiding and abetting breach of fiduciary duty against seven current and former Noble directors, including movant Ashley Almanza;

- unjust enrichment against Noble and certain of its subsidiaries; and

- actual and constructive fraudulent transfer, and recharacterization of debt as equity against Noble and certain of its subsidiaries.

With respect to Mr. Almanza, the Complaint alleges that he aided and abetted the two Paragon directors' alleged breaches of fiduciary duty. Mr. Almanza now moves to dismiss the Complaint for lack of personal jurisdiction. If the Court does not grant Mr. Almanza's

1

motion to dismiss for lack of personal jurisdiction, the claim against him cannot proceed in this Court because it is subject to arbitration for the reasons set forth in the Motion to Dismiss the Complaint in Favor of Arbitration and to Stay the Proceedings that is being filed simultaneously herewith.

## SUMMARY OF ARGUMENT

The Trust's aiding and abetting claim against Mr. Almanza must be dismissed because this Court does not have personal jurisdiction over him.  *First*, the Court lacks general personal jurisdiction over Mr. Almanza because he is an Irish national and permanent resident of the United Kingdom, who therefore lacks the requisite "continuous and systematic" contacts with the United States.  *Second*, the Court lacks specific personal jurisdiction over Mr. Almanza because the Trust does not, and cannot, allege that the aiding and abetting breach of fiduciary duty claim arises out of or relates to any contact between Mr. Almanza and the United States. The Trust therefore fails to meet either the "purposeful availment" test or the *Calder* "effects test."  *See Calder v. Jones*, 465 U.S. 783 (1984).  Accordingly, the claim against Mr. Almanza must be dismissed.  *In any event*, even if this Court does not dismiss the claim against Mr. Almanza for lack of personal jurisdiction, the claim cannot proceed before this Court because it is subject to arbitration for the reasons set forth in the Motion to Dismiss the Complaint in Favor of Arbitration and to Stay the Proceedings in the Bankruptcy Court that is being filed simultaneously herewith.

## PRELIMINARY STATEMENT

Nowhere in the 200 paragraphs of allegations in the 60-page Complaint does the Trust allege a single contact between Mr. Almanza and the United States.  Indeed, the Complaint contains scant allegations about Mr. Almanza at all:  he is mentioned by name in only *two paragraphs*, neither of which alleges that he had any contact with the United States.  (Compl. ¶¶ 24, 189.)  The Trust seems to base its jurisdictional theory on Mr. Almanza's position as an outside director of Noble Corporation plc ("Noble"), a company incorporated under the laws of England and Wales and, at all relevant times, based in London.  The few paragraphs that refer to alleged actions by Noble's outside directors lack any allegations linking Mr. Almanza to the United States.  (Compl. ¶¶ 24, 189-90, 192-93.)  In fact, the Trust acknowledges that "Mr. Almanza is a resident of the United Kingdom."  (Compl. ¶ 24.)  While making this concession, the Trust then asserts, using the same formulaic language that it directs in undifferentiated fashion against all of the individual defendants, and without any factual basis whatsoever, that "the Court has general and specific personal jurisdiction over Mr. Almanza due to his extensive contacts with and conduct within the United States and the State of Delaware, including contacts and conduct giving rise to and inextricably linked with the causes of action alleged in this Complaint."  (*Id.*)

In support of this general assertion, the Trust apparently relies on its conclusory allegations that the Noble directors aided and abetted the Paragon directors' breach of their fiduciary duties to Paragon "in the context of the Spin-Off."  (*See* Compl. ¶¶ 192-93.)  But these allegations, which assert no more than that Mr. Almanza acted as an outside director of a "company incorporated under the laws of England and Wales" (*Id.* ¶ 18), fall far short of establishing the required minimum contacts between Mr. Almanza and the United States.  In fact, the Paragon directors who allegedly breached their fiduciary duties to Paragon – which was also

3

a U.K. company – were also based in the U.K. at all relevant times.  Nothing suggests that a U.K. resident who allegedly aids and abets U.K.-based directors in their alleged breaches of fiduciary duty owed under English law to a U.K. company is subject to personal jurisdiction in the United States.  The claim against Mr. Almanza should be dismissed.

In the alternative, and if for some reason the Court does not dismiss the claim against Mr. Almanza for lack of personal jurisdiction, the aiding and abetting claim against Mr. Almanza cannot proceed before this Court because it is subject to arbitration for all of the reasons set forth in Defendants' Motion to Dismiss the Complaint in Favor of Arbitration and to Stay the Proceedings in the Bankruptcy Court.

## **STATEMENT OF FACTS**

### I.  **AS AN IRISH CITIZEN, PERMANENTLY RESIDENT IN THE U.K., MR. ALMANZA HAS VIRTUALLY NO CONTACTS WITH THE UNITED STATES.**

The Complaint is devoid of any facts that establish even a single personal contact between Mr. Almanza and the United States.  Indeed, as established in Mr. Almanza's declaration, he is an Irish citizen and a permanent resident of the U.K.  (Almanza Dec. ¶ 2.)  He has lived in the U.K. continuously for the last twenty-six years.  (*Id.*)  He has never been a citizen or resident of the United States.  (*Id.* ¶ 8.)   In addition:

- Mr. Almanza has never worked or paid taxes in the United States.  (*Id.*)

- He does not own or rent real property in the United States.  (*Id.* ¶ 10.)

- He does not maintain a phone number or a mailing address in the United States.  (*Id.* ¶ 9.)

- He holds no licenses or certifications in the United States.  (*Id.*)

- He has traveled to the United States only infrequently.  (*Id.* ¶ 11.)  These trips have been mostly in connection with his role as Chief Executive Officer of G4S, a British multinational security services company headquartered in England, that is not

4

affiliated with either Noble or Paragon.  (*Id.*)  These visits generally have lasted less than a week, with the exception of several short family vacations.  (*Id.*)

- The only property of any kind that he has ever owned in the United States is stock in Noble and Paragon that he received as director compensation. (*Id.* ¶ 10.)  He has never traded in either stock.  (*Id.*)

## II.    MR. ALMANZA HAD NO CONTACTS WITH THE UNITED STATES IN HIS CAPACITY AS A NOBLE DIRECTOR BEFORE THE SPIN-OFF.

From the time Mr. Almanza joined the Noble board on April 26, 2013, to the time the Spin-Off was completed on August 1, 2014, Noble's principal place of business was in London, England, and its executive management was based there.[2]  (Almanza Dec. ¶ 5.)  Chief Financial Officer James MacLennan and Executive Vice-President Julie Robertson (the two Paragon directors who allegedly breached their fiduciary duties) were based abroad (either in Geneva or London) during this time.  (*Id.* ¶ 5.)

During this 15-month period, Mr. Almanza did not travel to the United States on Noble business.  (*Id.* ¶ 7.)  He did not attend any board meetings in the United States; most of Noble's board meetings took place in the United Kingdom, Switzerland, or the Cayman Islands. (*Id.* ¶ 4.)  Moreover, Almanza's interactions with Noble's management team during this time were limited to executive management, all of whom were based in the U.K. or in Switzerland (*Id.* ¶ 5.)  Almanza does not recall having any specific communications with anyone in the United States regarding the Spin-Off, and certainly none that was material to the transaction.  (*Id.*)

---

[2]    *See* Form 10-K of Noble Corporation plc for years 2013, 2014, 2015, 2016; *see also Rosenberg v. XM Ventures*, 129 F. Supp. 2d 681, 687 (D. Del.), *aff'd*, 274 F.3d 137 (3d Cir. 2001) ("It is well settled that public records can be considered on a motion to dismiss."); *Diceon Electronics, Inc. v. Calvary Partners, LP*, 772 F. Supp. 859, 860 (D. Del. 1991) ("Securities and Exchange Commission ("SEC") filings fall within this category of public records . . . .").  (*See* Almanza Dec. ¶ 3); *see also Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984) ("A Rule 12(b)(2) motion . . . is inherently a matter which requires resolution of factual issues outside the pleadings."); *Virgin Wireless, Inc. v. Virgin Enters. Ltd.*, 201 F. Supp. 2d 294, 299 (D. Del. 2002) (court examines affidavits from defendants to determine court lacks personal jurisdiction over them).

## ARGUMENT

### I.    THE CLAIM AGAINST MR. ALMANZA MUST BE DISMISSED BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER HIM.

The law on personal jurisdiction is well settled:  This Court has jurisdiction over a defendant only if he (1) maintained continuous and systematic contacts with the forum, or (2) had contacts with the forum that gave rise to the claims against the defendant.  Because the Trust cannot satisfy either test, its claim against Mr. Almanza must be dismissed under section 12(b)(2) of the Federal Rules of Civil Procedure.

#### A.    The Trust Cannot Establish that the Court Has Either General or Specific Personal Jurisdiction Over Mr. Almanza.

Under Federal Rule of Bankruptcy Procedure 7004, a bankruptcy court may exercise personal jurisdiction over a defendant to the extent it is allowed by the Constitution. Accordingly, to establish that this Court has personal jurisdiction over Mr. Almanza, the Trust must plead and prove that he has sufficient "minimum contacts" with the United States.  *See generally Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985) ("[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum."); *Astropower Liquidating Tr. v. Xantrex Tech, Inc. (In re Astropower Liquidating Trust)*, No. 04-10322 (MFW), 2006 WL 2850110, at *3 (Bankr. D. Del. Oct. 2, 2006) ("In bankruptcy cases the forum is the United States.").  The non-resident's activities and connections with the forum must be such that the defendant would "reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  In addition, the exercise of jurisdiction must "comport with 'traditional notions of fair play and substantial justice.'" *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)).

Importantly, "the burden is on the [Trust] to prove personal jurisdiction by a preponderance of the evidence." *In re Lipitor Antitrust Litig.*, No. 14-4632, 2018 WL 266751, at *3 (3d Cir. Jan. 3, 2018).  General jurisdiction exists only if the defendant's contacts with the forum are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 & n.9 (1984).  Specific jurisdiction, on the other hand, exists only "when the suit arises out of or relates to the defendant's contacts with the forum." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011) (internal quotation marks and citations omitted).

### B.    The Court Does Not Have General Personal Jurisdiction Over Mr. Almanza.

As an Irish national and U.K. permanent resident, Mr. Almanza is not subject to this Court's general jurisdiction.  To support the exercise of general jurisdiction, Mr. Almanza's contacts would have to be "so constant and pervasive as to render [him] essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014).  For individual defendants such as Mr. Almanza, the "paradigm forum" is the "individual's domicile."[3] *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1776 (2017); *Goodyear Dunlop Tires*, 564 U.S. 915 at 924.  Indeed, courts have questioned whether the exercise of general jurisdiction over a non-resident individual defendant is ever proper.  *See Burnham v. Superior Court of Cal.*, 495 U.S. 604, 610 n.1 (1990) (plurality opinion) (declining to address the issue in detail, but recognizing that "[i]t may be that [general jurisdiction] applies only to corporations").  In fact, the United States Supreme Court and other courts have expressed reservations as to whether general jurisdiction may extend to non-resident individuals.  *See, e.g.,*

---

[3]    In performing a general jurisdiction analysis, courts frequently use the term "non-resident" to refer to a non-domiciliary.  The distinction is immaterial for the purposes of the analysis here.

*Hoechst Celanese Corp. v. Nylon Eng'g Resins, Inc.*, 896 F. Supp. 1190, 1193 n.4 (M.D. Fla. 1995) ("Nor is it clear that general jurisdiction can ever be held over a private, non-resident defendant." (citing *Burnham*, 495 U.S. at 610 n.1)).

Mr. Almanza lives in the U.K. and has never resided in the United States. For that reason alone, the Court does not have general jurisdiction over him. In any event, Mr. Almanza's practically non-existent contacts with the United States underscore that he cannot be subject to this Court's general jurisdiction. Mr. Almanza does not own or rent property in the United States. Nor does he maintain phone numbers, mailing addresses, licenses, or certifications in the United States. He has never worked in the United States or paid taxes here and he has traveled to the United States only infrequently.

Courts routinely hold that they lack general personal jurisdiction over individual defendants who live abroad, own no property in the United States, and do not conduct business in the United States. For instance, just last month, a bankruptcy court in the Southern District of New York held that it lacked general jurisdiction over a defendant director who was a U.K. citizen and resident, who had never maintained a residence in New York or owned real property in the United States, and who worked in London. *See LaMonica v. CEVA Group PLC* (*In re CIL Ltd.)*, No. 13–11272–JLG, 2018 WL 329893 at *14 (Bankr. S.D.N.Y. Jan. 5, 2018). Similarly, the *Al-Ghena* court held that it could not exercise general jurisdiction over a non-resident defendant with no residential or business addresses, property, tax filings, or bank accounts in the forum. *Al-Ghena Int'l Corp. v. Radwan*, 957 F. Supp. 2d 511, 517, 529 (D.N.J. 2013). Numerous other courts have reached similar conclusions. *See, e.g., L.A. Gem & Jewelry Design, Inc. v. Ecommerce Innovations, LLC*, No. CV 16-9325-RSWL-KSX, 2017 WL 1535084, at *4 (C.D. Cal. Apr. 27, 2017) (no general jurisdiction over non-resident defendant CEO who did not

have a personal mailing address, extensive business, or a personal bank account in the forum

state); *Hendricks v. New Video Channel Am., LLC*, No. 2:14-cv-02989-RSWL-SSx, 2015 WL

3616983, at *4 (C.D. Cal. June 8, 2015) (no general jurisdiction over a Canadian CEO and

director defendant who had never lived, owned property, or maintained a bank account in the

forum state).

      Mr. Almanza's attendance at a single Noble board meetings in the United States

(after the Spin-Off at issue) and his few visits to the United States for *unrelated purposes* do not

change the analysis.  Courts within the Third Circuit repeatedly have found that isolated business

activities do not give rise to general jurisdiction.  Indeed, "[i]n case after case, when an

individual conducts business that requires their occasional presence in a state, courts have not

found sufficient contact for general jurisdiction."  *Richcourt Allweather Fund, Inc. v. Midanek*,

No. 13-4810 (RBK/AMD), 2014 WL 1582630, at *5 (D.N.J. Apr. 21, 2014) (citation omitted)

(defendant's "intermittent trips" to forum state, even when performing work related to the

litigation, were insufficient).  Even where the isolated business contacts relate to the litigation,

courts routinely hold that they are insufficient to establish general personal jurisdiction.  *See*

*Wallace v. Keystone Printed Specialties Co.*, No. 14-5978 (ES) (MAH), 2016 U.S. Dist. LEXIS

132189, at *26-27 (D.N.J. Sept. 27, 2016) (visits to establish business relationship with plaintiff

and attendance at a funeral in forum state were insufficient); *Covenant Bank for Sav. v. Cohen*,

806 F. Supp. 52, 56–57 (D.N.J. 1992) (non-resident employee defendant's contacts with the

forum state, including telephone calls with the resident plaintiff, and defendant's occasional

travels to New Jersey to attend work-related meetings and inspect property were not "systematic

and continuous").

Because Mr. Almanza lacks "continuous" or "systematic" contacts with the United States, this Court lacks general personal jurisdiction over him. *See In re Astropower*, 2006 WL 2850110, at *7.[4]

### C.    The Court Does Not Have Specific Jurisdiction Over Mr. Almanza.

For a court to exercise specific personal jurisdiction over a defendant, the cause of action must "arise out of or relate to" at least one of the defendant's activities in the forum. *Helicopteros*, 466 U.S. at 414.  Courts generally apply two tests to determine whether specific jurisdiction exists:  (1) the purposeful availment test and (2) the *Calder* "effects" test. *See, e.g.*, *In re Astropower*, 2006 WL 2850110, at *6 (discussing purposeful availment); *IMO*, 155 F.3d at 259-60 (applying the *Calder* test).  Here, neither test supports jurisdiction over Mr. Almanza.

1.    Mr. Almanza Did Not Purposefully Avail Himself
of the Benefits and Protections of U.S. Law.

Under the purposeful availment test, specific jurisdiction exists only if:  (1) the defendant purposefully directed his activities at the forum state, thus invoking the benefits and protections of its laws; (2) the litigation arises out of or is related to at least one of those activities; and (3) the exercise of jurisdiction otherwise comports with fair play and substantial justice. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Burger King*, 471 U.S. at 475; *Corigliano v. Classic Motor, Inc.*, 611 F. App'x 77, 79-80 (3d Cir. 2015).  The Trust cannot satisfy any of these three elements.  First, it does not—and cannot—allege *a single contact* that Mr. Almanza purposefully directed towards the United States, much less any relating to the

---

[4]    For the same reasons discussed in Section I.C.3., *infra*, a finding of general jurisdiction would violate Mr. Almanza's due process rights because it would not comport with the notions of fair play and substantial justice.

claim against him.[5]  Between April 26, 2013 (when he became a director) and August 1, 2014

(when the Spin-Off was completed), Mr. Almanza had no contacts with the United States

relating to his work as a Noble director.  He never traveled to the United States on Noble

business, much less attended a board meeting in the United States, and his contacts with Noble

executive management were with people located outside of the United States.

Moreover (and particularly given his lack of United States contacts), Mr.

Almanza did not "purposefully avail" himself of conducting business in the United States or

benefiting from its laws.  Both Paragon[6] and Noble were U.K. companies.  The two Paragon

directors who allegedly breached their fiduciary duties were located in London.  And because

Paragon was a U.K. company, the fiduciary duties they owed are governed by English law under

the internal affairs doctrine.  *See Stanziale v. Heico Holdings, Inc.* (*In re Conex Holdings, LLC*,

514 B.R. 405, 412 (Bankr. D. Del. 2014) (Sontchi, J.).[7]

---

[5]    Mr. Almanza's connections with the United States have continued to be attenuated since the Spin-Off.  In July 2017 and February 2018, he dialed in to two Noble board meetings that took place in the United States, and in October 2017, he attended one such meeting in person.  (*Id.* ¶ 6.)  The rest of Noble's board meetings since the Spin-Off have occurred abroad.  Since the Spin-Off, save for the October 2017 meeting, he has not traveled to the United States on Noble business.  (*Id.* ¶ 7.)  In any event, Mr. Almanza's contacts with the United States after the Spin-Off are conceivably relevant only to this Court's general personal jurisdiction analysis, and are categorically irrelevant to the specific jurisdiction inquiry.  *See Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990) ("Only contacts occurring prior to the event causing the litigation may be considered.").  Accordingly, any post Spin-Off contacts are not pertinent.

[6]    10-Q of Paragon Offshore Limited plc for the quarterly period ended June 30, 2014.

[7]    A number of courts, including at least one district court in this Circuit, have held that the type of arbitration provision at issue here gives a federal district court in the state where the arbitration is to take place personal jurisdiction for the limited purpose of enforcing the arbitration agreement.  *See, e.g., Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016) ("When a party agrees to arbitrate in a particular state, via explicit or implicit consent, the district courts of the agreed-upon state may exercise personal jurisdiction over the parties for the limited purpose of compelling arbitration." (citation omitted)); *Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*, 956 F. Supp. 1131, 1139 (S.D.N.Y. 1997) (holding that an arbitration provision "is deemed consent to the jurisdiction of the courts for purposes relating to enforcing the arbitration agreement" (citing *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Lecopulos*, 553 F.2d 842, 844 (2d Cir. 1977)); *Armstrong Development Properties, Inc. v. Ellison*, No. 13–1590, 2014 WL 1452322, at *6 n.8 (W.D. Pa. Apr. 14, 2014) (recognizing that a party to an arbitration agreement "consents to the personal jurisdiction of the District Court nearest to the stated location of the arbitration" but only for "cases arising out of the parties' arbitration, such as a motion to compel arbitration and/or to enforce an arbitration award").  That

*(cont'd)*

Where the allegations center on conduct occurring outside of the forum and arise under non-forum law, the defendant necessarily has not directed his activities toward the forum. In *Boone v. Thompson*, No. 02-CV-1580, 2002 WL 31478834 (E.D. Pa. Nov. 1, 2002), the district court held that it lacked specific personal jurisdiction over a defendant who was alleged to have violated RICO and civil rights laws because "the cause of action arose solely from events" outside the forum. *Id.* at *5.  In reaching its conclusion that "[n]one of the events which led to plaintiff's cause of action ha[d] any connection to th[e] forum," the court noted in particular that the forum's law was "not invoked." *Id.*  That is precisely the case here with respect to the aiding and abetting claim against Mr. Almanza and the underlying breach of fiduciary duty claims.

Similarly, in *Moneygram Payment Systems, Inc. v. Consorcio Oriental, S.A.*, 65 F. App'x 844, 851 (3d Cir. 2003), the plaintiff sued a Dominican Republic corporation and two of its officers for breach of contract and related claims arising from an Agency and Trust Agreement between the plaintiff and the corporation. *Id.* at 845.  The plaintiff alleged that jurisdiction existed because of the individual defendants' travels to the forum to establish a bank account for the corporate defendant.  The court rejected this, finding that the officer defendants had not purposefully availed themselves of the forum by conducting business for a foreign corporation and that the alleged fraud had "emanated from their residence in the Dominican Republic." *Id.* at 850-51.

Moreover, courts repeatedly have held that even *some* limited contacts with the forum are insufficient to constitute the kind of purposeful availment that would confer personal

_____
*(cont'd from previous page)*

said, there is no question that this Court has personal jurisdiction over the remaining defendants to dismiss the claims against them in favor of arbitration, as the Court has nationwide jurisdiction.  Although the Third Circuit has not squarely addressed this issue, it has favorably cited the *Kahn* decision in dicta, *see BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp.*, 229 F.3d 254, 261 (3d Cir. 2000), suggesting that the Third Circuit would adopt the same rule.

jurisdiction.  The Third Circuit held exactly that in *Wolstenholme v. Bartels*, 511 F. App'x 215, 219 (3d Cir. 2013).  There, the plaintiff brought a derivative action alleging that the defendant, his former business partner, had engaged in self-dealing.  *Id.* at 216-17.  The court rejected the plaintiff's arguments that by entering into the operating agreement for the company, which created a relationship between the plaintiff—a resident of the forum—and the defendant, the defendant had purposefully availed himself of the benefit of conducting activities in the forum state: "the Operating Agreement created ties between [the defendant] and a resident of the forum; however, [the plaintiff]'s residence is the sole link to the forum, such that we cannot conclude that [the defendant] deliberately sought to invoke 'the benefits and protections' of [the forum's] laws." *Id.* at 220.  The fact that the transaction at issue was allegedly based on phone calls, e-mails and faxes the defendant had sent to the plaintiff in the forum did not alter this conclusion. *Id.* at 219.

Indeed, courts routinely decline to exercise personal jurisdiction over non-resident outside directors simply because the companies for which they work have ties to the United States.  In *In re DaimlerChrysler AG Secs. Litig.*, 247 F. Supp. 2d 579 (D. Del. 2003), the court determined that it did not have specific personal jurisdiction under the purposeful availment test over a board member who faced liability as a control person in a securities litigation arising from a merger.  There, the plaintiffs alleged that the court had jurisdiction because the foreign director defendant, among other things, had attended pre-merger negotiations in the United States where plaintiffs asserted that merger terms were discussed.  *See id.* at 584.  The court was not persuaded because it determined that "the evidence [wa]s insufficient to show that any final decisions regarding the merger were made at [that] meeting." *Id.*  Here, the Trust has not even

*alleged* that Mr. Almanza attended board meetings where the Spin-Off was discussed, much less shown his presence in the United States at a board meeting where the Spin-Off was approved.

Likewise, in *Hollingsworth v. Iwerks Entm't, Inc.*, 947 F. Supp. 473, 479 (M.D. Fla. 1996), the court found that it did not have personal jurisdiction under the purposeful availment test over outside director defendants for alleged RICO violations in connection with a merger. There, the director defendants' only participation in activities related to the litigation were (1) the review of the contested merger approval, (2) consideration of its merits, (3) discussions with the board and (4) approval of the transaction, which approval took place outside of the forum state. *See id.* at 479. The court determined "that the contacts of these individual [d]efendants [we]re insufficient to meet the constitutional standard." *Id.* The same result is warranted here.

Furthermore, because Mr. Almanza lacks the minimum contacts necessary to satisfy the purposeful availment test, the Trust cannot establish that the aiding and abetting cause of action would not have arisen "but for" those contacts, let alone meet the more stringent standard applied in the Third Circuit. In determining whether the cause of action arises out of the forum contacts, there must be "a closer and more direct causal connection than that provided by the but-for test." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 323 (3d Cir. 2007). In other words, merely showing that the claim would not have arisen but for Mr. Almanza's contacts with the United States is not enough.

It necessarily follows that where, as here, the plaintiff cannot establish the requisite minimum contacts, it cannot establish the causal connection required by the Third Circuit. In *Al-Ghena*, the court dismissed tort and racketeering claims where the allegations failed to "establish a 'direct casual connection' between a purposeful contact and plaintiffs'

14

claims" because "[m]ost of the communications occurred electronically and had no purposeful connection to" the forum and the few allegedly misleading statements made in the forum "fail[ed] to establish that the [defendants] directed fraudulent activity at" the forum. *Al-Ghena*, 957 F. Supp. 2d at 532.  In *In re Cendant Corp. Derivative Action Litig.*,189 F.R.D. 117 (D.N.J. 1999), the court similarly dismissed breach of fiduciary duty and negligence claims for lack of personal jurisdiction where the plaintiff failed to connect the alleged breaches to the defendant's contacts with the forum. *See id.* at 136-137.

Accordingly, the Court does not have personal jurisdiction over Mr. Almanza under the purposeful availment test.

2.   Mr. Almanza's Contacts with the United States
      Also Do Not Satisfy the *Calder* Effects Test.

The "effects test" confers specific jurisdiction over a defendant whose tortious conduct takes place outside the forum but nevertheless produces effects within the forum.  Under this test, a defendant is not subject to specific jurisdiction unless:  (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm; *and* (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity. *See Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007); *see also Calder v. Jones*, 465 U.S. 783, 789 (1984).  Courts applying this test typically focus their analysis on the third factor. *See Marten*, 499 F.3d at 297 ("Only if the 'expressly aimed' element of the effects test is met need we consider the other two elements." (citation omitted)).

Here, the Trust has not alleged that Mr. Almanza expressly targeted the United States, much less alleged any specific facts to support such a theory.  The Trust merely alleges that the Paragon directors "directly or indirectly reported to Noble's Board of Directors," and the

15

Noble board "colluded in and aided and abetted [their] breaches of fiduciary duties." (Compl. ¶¶ 189, 193.) These conclusory allegations do not come close to satisfying *Calder*. *See Marten*, 499 F.3d at 298 (plaintiff failed to establish personal jurisdiction under *Calder* where he "ha[d] not shown with respect to either claim that defendants expressly aimed their conduct at [the forum]"); *see also Marks v. Alfa Grp.*, 369 F. App'x 368, 370 (3d Cir. 2010) ("The factual allegations in Marks' complaint do not support Marks' conclusory allegations that defendants aimed their conduct at [the forum].").

Indeed, the Trust cannot show the required intentional targeting. Both Noble and Paragon[8] were U.K. companies. (*See* Almanza Dec. ¶ 3.) Almanza did not attend any meetings in the United States during the relevant time, the Paragon directors were based in Geneva or the U.K., and the Paragon directors owed fiduciary duties under English law. Courts considering similar facts have concluded that the defendant did not expressly aim his conduct at the forum state. In *IMO*, for instance, the plaintiff sued a German company for tortiously interfering with the plaintiff's attempted sale of an Italian subsidiary to a French company. *IMO*, 155 F.3d at 257-58. The defendant wrote the prospective buyer that the defendant had the right to revoke the license to its technology held by the Italian subsidiary, which allegedly caused the prospective French buyer to stop its negotiations with the plaintiff. The court determined that despite the fact that the defendant had sent letters that it may have reasonably known would be forwarded to the plaintiff in the forum and received phone calls from the plaintiff that were made from the forum, the plaintiff "c[ould] not demonstrate that [the defendant] expressly aimed its tortious conduct at" the forum where the relevant companies and contacts were located elsewhere:

---

[8]    10-Q of Paragon Offshore Limited plc for the quarterly period ended June 30, 2014.

> The solicitation of bids . . . was done in New York [outside the forum], and the bid with which [the defendant] allegedly interfered came from a French company.  The subject of the bidding was an Italian company, and the licensing agreement upon which the allegedly tortious activity was based appears to be governed by German law. In that light, the fact that it may be reasonably foreseeable that [the buyer] and/or [the subsidiary] would have passed [the defendant]'s letters on to [the plaintiff] in New Jersey [the forum] (and that [the plaintiff] called [the defendant] from New Jersey) cannot be sufficient to overcome the clear implication from the surrounding facts that New Jersey was not the focus of the dispute.

*Id.* at 268.

The Trust cannot overcome this problem by alleging that Mr. Almanza knew that Paragon would suffer an injury in the United States.  As a threshold matter, that theory would rest on a flawed premise:  If U.K. directors breach duties owed to a U.K. company that is a U.K. resident, the injury occurs in the U.K.  *See British Am. Ins. Co. v. Green Island Holdings, LLC (In re British Am. Ins. Co.)*, No. 09-31881-EPK, 2013 WL 1881712, at *3 (Bankr. S.D. Fla. Apr. 30, 2013) (where company to which fiduciary duties were owed "was formed under the laws of the Bahamas and ha[d] its primary business operations outside the United States[, a]ny breach of fiduciary duty by [the director defendant] caused harm to [the Plaintiffs in their] place of formation outside this forum.").

But this argument also would rest on the equally flawed concept that Mr. Almanza's knowledge that Paragon would somehow be injured in the United States would satisfy *Calder*.  That is not the law.  As the Third Circuit held in *IMO*, "[s]imply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself to meet this requirement."  *IMO*, 155 F.3d at 265.  Similarly, in *Marks*, the Third Circuit reiterated that the defendant's mere knowledge of where a plaintiff resides is insufficient to establish personal jurisdiction.  *Marks v. Alfa Group*, 369 F. App'x. 368, 370 (3d Cir. 2010).  The Third Circuit again came to a similar conclusion in *Wolstenholme*.

There, the plaintiff alleged that the court had jurisdiction over the defendant because he had "expressly aimed his allegedly tortious conduct at [the forum] because he knew that [the plaintiff] lived there"; the relevant transactions were based on calls initiated by the defendant to the plaintiff in the forum; the operating agreement for the partnership was sent to the forum for the plaintiff's signature and the defendant allegedly injured the plaintiff in the forum. *Wolstenholme*, 511 F. App'x 215 at 219. The court rejected the plaintiff's jurisdictional argument, finding that the defendant's "contact with an individual residing in [the forum] does not 'insure[] that the defendant . . . ha[s] sufficiently directed his tortious conduct at the [forum] to render him subject to personal jurisdiction there.'" *Id.* (citation omitted); *accord LaSala v. Marfin Popular Bank Pub. Co.*, 410 F. App'x 474, 477 (3d Cir. 2011) ("[T]he foreseeability of harm being suffered in the forum is insufficient to establish personal jurisdiction under *Calder*") (citing *Marten*, 499 F.3d at 297). Accordingly, although the Trust makes certain allegations regarding *Paragon's* connections to the United States (*see* Compl. ¶ 114), that is not the relevant inquiry.[9]

For all of these reasons, the Court does not have personal jurisdiction over Mr. Almanza under the *Calder* effects test.

3.   This Court's Exercise of Personal Jurisdiction over Mr. Almanza
     Would Not Comport with Fair Play and Substantial Justice.

Where, as here, a defendant does not aim his conduct at the forum and his contacts are insufficient to establish general jurisdiction, the exercise of personal jurisdiction over him does not comport with the traditional notions of fair play and substantial justice. *See Spuglio v. Cabaret Lounge*, 344 F. App'x 724, 727 (3d Cir. 2009). "To determine whether the

---

[9]   Notably, although the Trust focuses on Paragon's *current* connections to the United States (*see* Compl. ¶ 114), there are no allegations in the Complaint about Paragon's connections to the United States at the time that Mr. Almanza allegedly aided and abetted the Paragon directors' supposed breaches of fiduciary duty.

exercise of jurisdiction is reasonable and comports with 'traditional notions of fair play and substantial justice,' courts consider the following factors: the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the judicial system's interest in obtaining efficient results." *Fisher v. Teva PFC SRL*, 212 F. App'x 72, 77 (3d Cir. 2006) (citing *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 114 (1987)).

Here, forcing Mr. Almanza to participate as a litigant in this case in Delaware would be extremely burdensome because, as established above, he has virtually no ties to the United States, is not a United States resident, and rarely travels to the United States. Moreover, this forum has little interest in the claim against him, as none of the alleged acts giving rise to it took place in or were directed at the United States, and the claim is not governed by United States law. *See Mobilificio San Giacomo S.P.A. v. Stoffi*, No. 96–415–LON, 1996 WL 924508, at *9 (D. Del. Oct. 29, 1996). Dismissing the claim against Mr. Almanza would have no effect on the Trust's ability to pursue its other claims, and the judicial system has little interest in this claim, as it is subject to mandatory arbitration if not dismissed as to Mr. Almanza. *See id.* Accordingly, exercising jurisdiction over Mr. Almanza would not comport with traditional notions of fair play and substantial justice.

## II.    EVEN IF THE COURT DOES NOT DISMISS THE CLAIM AGAINST MR. ALMANZA, THE CLAIM CANNOT PROCEED BEFORE THIS COURT BECAUSE IT IS SUBJECT TO ARBITRATION.

If the Court determines that it has personal jurisdiction over Mr. Almanza, the aiding and abetting breach of fiduciary duty claim cannot proceed before this Court because it is subject to arbitration for the reasons set forth in Defendants' Motion to Dismiss in Favor of Arbitration and to Stay the Proceedings and supporting memorandum of law, which arguments

19

Mr. Almanza fully adopts and incorporates by reference herein, subject always to his personal jurisdiction defense.

## <u>CONCLUSION</u>

For all the foregoing reasons, because this Court does not have personal jurisdiction over Mr. Almanza, the aiding and abetting claim against him must be dismissed. Alternatively, the claim against Mr. Almanza must be arbitrated for the reasons set forth in the Motion to Dismiss in Favor of Arbitration and to Stay the Proceedings.

Dated:          February 15, 2018
                Wilmington, Delaware

                          Respectfully submitted,

                          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                           */s/ Anthony W. Clark*
                          Anthony W. Clark (ID: 2051)
                          Stephen J. Della Penna (ID: 6103)
                          Skadden, Arps, Slate, Meagher & Flom LLP
                          One Rodney Square
                          P.O. Box 636
                          Wilmington, Delaware 19899-0636
                          Telephone:  (302) 651-3000
                          Facsimile:   (302) 651-3001

                          - and -

                          George A. Zimmerman *(admitted pro hac vice)*
                          Lauren E. Aguiar *(admitted pro hac vice)*
                          Four Times Square
                          New York, New York 10036-6522
                          Telephone:  (212) 735-3000
                          Facsimile:   (212) 735-2000

                          -and-

                          Wallis M. Hampton *(admitted pro hac vice)*
                          1000 Louisiana, Suite 6800
                          Houston, Texas 77002-5026
                          Telephone:  (713) 655-5116
                          Facsimile:   (713) 483-9116

                          ALLEN & OVERY LLP

                          Andrew Rhys Davies *(admitted pro hac vice)*
                          1221 Avenue of the Americas
                          New York, New York 10020
                          Telephone:  (212) 610-6300
                          Facsimile:   (212) 610-6399

                          *Counsel for Defendant*
                          *Ashley Almanza*

21