## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| PARAGON OFFSHORE PLC, | Case No. 16-10386 (CSS) |
| Debtor.[1] | |
| PARAGON LITIGATION TRUST, | |
| Plaintiff, | |
| v. | |
| NOBLE CORPORATION PLC, NOBLE CORPORATION HOLDINGS LTD, NOBLE HOLDING INTERNATIONAL (LUXEMBOURG) S.A R.L., NOBLE FDR HOLDINGS LIMITED, ASHLEY ALMANZA, JULIE H. EDWARDS, GORDON T. HALL, JON A. MARSHALL, JAMES A. MACLENNAN, MARY P. RICCIARDELLO, JULIE J. ROBERTSON, AND DAVID WILLIAMS, | Adv. Proc. No.17-51882 (CSS) |
| Defendants. | Hearing Date: To Be Determined |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS IN FAVOR OF ARBITRATION AND TO STAY THE PROCEEDINGS

---

[1]    The Debtor in this case, along with the last four digits of the debtor's federal tax identification number, is Paragon Offshore plc (in administration) (6017).  The Debtor's mailing address is 3151 Briarpark Drive, Suite 700, Houston, Texas 77042.  Neville Barry Kahn and David Philip Soden, each of Deloitte LLP, are the joint administrators of Paragon Offshore plc (in administration) (the "Joint Administrators").  The affairs, business and property of Paragon Offshore plc (in administration) are managed by the Joint Administrators.

Dated:  February 15, 2018          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

Anthony W. Clark (ID: 2051)
Stephen J. Della Penna (ID: 6103)
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone:  (302) 651-3000
Facsimile:  (302) 651-3001

- and -

George A. Zimmerman *(admitted pro hac vice)*
Lauren E. Aguiar *(admitted pro hac vice)*
Four Times Square
New York, New York 10036-6522
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000

- and –

Wallis M. Hampton *(admitted pro hac vice)*
1000 Louisiana Street, Suite 6800
Houston, Texas 77002-5026
Telephone:  (713) 655-5116
Facsimile:   (713) 483-9116

*Counsel for the Defendants*

## <u>TABLE OF CONTENTS</u>

NATURE AND STAGE OF PROCEEDING ...............................................................................1

SUMMARY OF ARGUMENT ...................................................................................................2

PRELIMINARY STATEMENT ................................................................................................3

STATEMENT OF FACTS .........................................................................................................5

I.      NOBLE AND PARAGON AGREED TO ARBITRATE ANY DISPUTES
        ARISING OUT OF OR RELATED TO THE SPIN-OFF....................................................5

II.     THE TRUST WAS FORMED TO PROSECUTE PARAGON'S CLAIMS
        RELATED TO THE SPIN-OFF............................................................................................7

III.    THE TRUST HAS BROUGHT CLAIMS AGAINST THE DEFENDANTS ON
        BEHALF OF PARAGON.......................................................................................................8

ARGUMENT ................................................................................................................................9

I.      COUNTS VI, VII, AND VIII SHOULD BE DISMISSED IN FAVOR OF
        ARBITRATION BECAUSE QUESTIONS OF ARBITRABILITY MUST BE
        DECIDED BY THE ARBITRATORS. ..................................................................................9

II.     COUNTS VI, VII, AND VIII SHOULD BE DISMISSED IN FAVOR OF
        ARBITRATION BECAUSE THE FEDERAL ARBITRATION ACT REQUIRES
        ARBITRATION OF THE TRUST'S DEBTOR-DERIVED CLAIMS. ...........................12

        A.      Congress Did Not Intend to Override the FAA's Strong Policy Favoring
                Arbitration of These Claims...................................................................................12

        B.      The Presence of Nonarbitrable Claims Does Not Permit the Trust to Avoid
                Arbitration..............................................................................................................15

III.    THE REMAINING CLAIMS SHOULD BE STAYED PENDING THE
        EXPEDITED ARBITRATION OF THE DEBTOR-DERIVED CLAIMS.....................16

        A.      The Trust Relies on the Same Factual Allegations for its Arbitrable and
                Nonarbitrable Claims. ...........................................................................................17

        B.      There is Significant Legal Overlap Between the Trust's Arbitrable and
                Nonarbitrable Claims. ...........................................................................................19

CONCLUSION...........................................................................................................................22

**TABLE OF AUTHORITIES**

**CASES**

*Adtile Technologies Inc. v. Perion Network Ltd.*,
    192 F. Supp. 3d 515 (D. Del. 2016)...................................................................9

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624 (2009)..................................................................................10

*AstroPower Liquidating Tr. V. Xantrex Tech., Inc.* (*In re AstroPower Liquidating Trust*),
    335 B.R. 309, (Bankr. D. Del. 2005) .................................................14

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)..................................................................................13

*Burtch v. Huston* (*In re USDigital, Inc.*),
    443 B.R. 22 (Bankr. D. Del. 2011) .....................................................14

*Burtch v. Seaport Capital, LLC* (*In re Direct Response Media, Inc.*),
    466 B.R. 626 (Bankr. D. Del. 2012) .............................................14, 20

*Carder v. Carl M. Freeman Communities, LLC*,
    No. 3319-VCP, 2009 WL 106510 (Del. Ch. Jan. 5, 2009)................................11

*Contec Corp. v. Remote Solution Co.*,
    398 F.3d 205 (2d Cir. 2005)....................................................................11

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)..........................................................................15, 16

*Degraw Const. Group, Inc. v. McGowan Builders, Inc.*,
    152 A.D.3d 567 (N.Y. App. Div. 2017) ...............................................11

*EXDS, Inc. v. Ernst and Young LLP* (*In re EXDS, Inc.*),
    316 B.R. 817 (Bankr. D. Del. 2004) ............................................5, 14, 17, 22

*In re Exide Technologies*,
    544 F.3d 196 (3d Cir. 2008).....................................................................14

*Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    885 F.2d 1149 (3d Cir. 1989)............................................................ passim

*Home Buyers Warranty Corp. v. Jones,*
    No. 15-mc-324-RGA-MPT, 2016 WL 2350103 (D. Del. May 4, 2016) , *report
    and recommendation adopted*, 2016 WL 3457006 (D. Del. June 21, 2016).......................9

*Kittay v. Landegger* (*In re Hagerstown Fiber, Ltd. Partnership*),
  277 B.R. 181 (Bankr. S.D.N.Y. 2002) ...................................................................16, 17

*KPMG LLP v. Cocchi*,
  565 U.S. 18 (2011) ...............................................................................................3, 16

*Lapina v. Men Women N.Y. Model Management Inc.*,
  86 F. Supp. 3d 277 (S.D.N.Y. 2015) .........................................................................10

*Lum v. Bank of America*,
  361 F.3d 217 (3d Cir. 2004) .......................................................................................2

*Madison Foods, Inc. v. Fleming Cos.* (*In re Fleming Cos., Inc.*),
  325 B.R. 687 (Bankr. D. Del. 2005) .......................................................................5, 16

*McLaughlin v. McCann*,
  942 A.2d 616 (Del. Ch. 2008) ....................................................................................11

*Mintze v. American General Financial Services, Inc.* (*In re Mintze*),
  434 F.3d 222 (3d Cir. 2006) .........................................................................3, 4, 13, 15

*Moore v. Interacciones Global, Inc.*,
  No. 94 Civ. 4789(RWS), 1995 WL 33650 (S.D.N.Y. Jan. 27, 1995) ..............................16

*Official Committee of Unsecured Creditors of Allied Holding, Inc. v. Alliance Fund I, L.P.*
  (*In re Allied Systems Holdings, Inc.*),
  524 B.R. 598 (Bankr. D. Del. 2015) .......................................................................13, 14

*Opalinski v. Robert Half International Inc.*,
  761 F.3d 326 (3d Cir. 2014) ........................................................................................9

*Palcko v. Airborne Express, Inc.*,
  372 F.3d 588 (3d Cir. 2004) ........................................................................................2

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  7 F.3d 1110 (3d Cir. 1993) ..........................................................................................11

*Shandler v. DLJ Merchant Banking* (*In re Insilco Technologies, Inc.*),
  330 B.R. 512 (Bankr. D. Del. 2005) ...........................................................................14

*Shubert v. Wellspring Media, Inc.* (*In re Winstar Communications, Inc.*),
  335 B.R. 556 (Bankr. D. Del. 2005) ......................................................................5, 7, 16

*Sicherman v. World Auto Network Inc.* (*In re McZeal*),
  No. 14-15947, 2017 WL 2372375 (Bankr. N.D. Ohio May 31, 2017)..............................12

*In re TEU Holdings, Inc.*,
  287 B.R. 26 (Bankr. D. Del. 2002) ..............................................................................14, 15

*Washington v. William Morris Endeavor Entertainment, LLC*,
    No. 10 Civ. 9647 (PKC) (JCF), 2011 WL 3251504 (S.D.N.Y. July 20, 2011) ................10

*Witkowski v. Welch*,
    No. CIV. A. 92-0924, 1993 WL 69587 (E.D. Pa. Mar. 11, 1993) ....................................16

## STATUTES

9 U.S.C.A. § 1 ...........................................................................................................................16

11 U.S.C. § 548(a)(1) ...............................................................................................................19

11 U.S.C. § 548(a)(1)(B)(i) ......................................................................................................20

11 U.S.C. § 548(c) ....................................................................................................................19

11 U.S.C. §§ 544(b)(1) and 550(a) ..........................................................................................21

11 U.S.C. §§ 544(b), 548(a)(1)(B) and 550(a) .........................................................................21

11 U.S.C. §§ 548(a)(1)(A) and 550(a) .....................................................................................21

11 U.S.C. §§ 548(a)(1)(B) and 550(a) .....................................................................................21

Del. Code Ann. Tit. 6 § 1304(a)(1) ..........................................................................................21

Del. Code Ann. Tit. 6 § 1304(a)(2) ..........................................................................................21

## OTHER AUTHORITIES

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, (3d
    ed. 2004) ............................................................................................................................2

**NATURE AND STAGE OF PROCEEDING**

Approximately two years ago, on February 14, 2016, Paragon Offshore plc along with twenty-five of its affiliates (collectively the "Debtors" or "Paragon") each filed a Chapter 11 petition for relief (collectively, the "Chapter 11 Cases"). This Court subsequently entered an order directing joint administration of the Chapter 11 Cases. (*See* D.I. 69.)

On June 7, 2017, this Court entered an order confirming the Fifth Joint Chapter 11 Plan of Paragon Offshore plc and its Affiliated Debtors (the "Plan"). (*See* D.I. 1614.) As contemplated by the Plan, the Paragon Litigation Trust (the "Trust") was created. (*See* D.I. 1614-1 § 5.7, D.I. 1796-1) The Plan provides for the transfer of the "Noble Claims," as that term is defined under the Plan, to the Trust.

On December 15, 2017, the Trust filed this adversary proceeding. (*See* D.I. 2012 & A.D.I. 1.) The Complaint alleges the following claims, all of which arise out of the spin-off of Paragon from Noble Corporation plc ("Noble") in 2014 (the "Spin-Off"):

- breach of fiduciary duty against two former Paragon directors;

- aiding and abetting breach of fiduciary duty against certain current and former Noble directors;

- unjust enrichment against Noble and certain of its subsidiaries; and

- actual and constructive fraudulent transfer and recharacterization of debt as equity against Noble and certain of its subsidiaries.

Defendants move to dismiss the Trust's claims for breach of fiduciary duty, aiding and abetting, and unjust enrichment in favor of arbitration. In addition, Defendant Ashley Almanza has contemporaneously filed a Motion to Dismiss the Complaint.[2]

---

[2]    "Noble Defendants" refers to the corporate defendants. (Compl. ¶¶ 18–23.) "Individual Defendants" refers to defendants Michael A. Cawley, Lawrence J. Chazen, Julie H. Edwards, Gordon T. Hall, Jon A. Marshall, James
*(cont'd)*

## SUMMARY OF ARGUMENT

The Spin-Off was effectuated through five principal agreements (the "Spin-Off Agreements").[3]  Under the clear and unambiguous provisions of each of these agreements, Noble and Paragon agreed to arbitrate all claims – whether based in contract, tort or any other theory – arising out of and/or related to the Spin-Off, as well as all issues related to the arbitrability of those claims (the "Arbitration Provision").  The Trust's claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust enrichment, which are asserted as debtor-derived claims, must therefore be dismissed in favor of arbitration; and any potential questions regarding the arbitrability of those claims or the scope of their arbitrability must be decided by the arbitration panel.

The Court also should stay the remaining claims before it pending final resolution of the arbitration.  As set forth below, the Delaware bankruptcy court has explicitly followed this procedure when, as here, there is substantial factual or legal overlap between the claims to be arbitrated and the claims to be tried in court, and an arbitral ruling would be helpful in facilitating the resolution of the issues before the Court.  This reasoning applies with special

---

*(cont'd from previous page)*
    A. MacLennan, Mary P. Ricciardello, Julie J. Robertson, and David W. Williams.  (Compl. ¶¶ 24–33.)
    "Defendants" refers to the Noble Defendants and the Individual Defendants collectively.

[3]    The Master Separation Agreement, Tax Sharing Agreement, Employee Matters Agreement, Transition Services Agreement, and Brazil Services Agreement (Exhibits A-E, which are attached to the transmittal declaration of Stephen J. Della Penna filed herewith) specifically are referred to and relied upon in the adversary complaint (Compl. ¶ 111).  As such, they may be considered on a motion to dismiss in favor of arbitration.  *See* 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 376 (3d ed. 2004) (On a Rule 12(b)(6) motion to dismiss, "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned . . may be considered by the district judge without converting the motion into one for summary judgment."); *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) (court may consider "allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim"); *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 597 (3d Cir. 2004) (stating that "[o]ur prior decisions support the traditional practice of treating a motion to compel arbitration as a [Rule 12(b)(6)] motion to dismiss for failure to state a claim upon which relief can be granted").

force here in light of the streamlined and expedited arbitration process mandated by the Spin-Off Agreements.

## PRELIMINARY STATEMENT

All of the Trust's claims arise directly out of the Spin-Off. Each of the Spin-Off Agreements contains an identically broad and all-encompassing Arbitration Provision that states, in relevant part, that any and all disputes, "whether sounding in contract, tort or otherwise . . . that arises out of or relates to [the] Agreement . . . or the transactions contemplated hereby" must be submitted to arbitration (the "Arbitration Provision"). (*See*, *e.g.*, MSA § 5.1.) The Arbitration Provision also expressly provides that "[t]he arbitrators shall have full power and authority to determine issues of arbitrability," and the Commercial Arbitration Rules of the American Arbitration Association (the "AAA Rules") shall govern any dispute. (MSA §§ 5.3, 5.6(b).) Accordingly, Defendants now move to dismiss the Trust's claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust enrichment in favor of arbitration.

The Supreme Court has expressly recognized the "emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (per curiam) (citation omitted). Under controlling Third Circuit authority, in order to defeat this "emphatic" policy favoring arbitration, the Trust must "demonstrate that 'Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue.'" *Mintze v. Am. Gen. Fin. Servs., Inc.* (*In re Mintze*), 434 F.3d 222, 229 (3d Cir. 2006) (quoting *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 227 (1987)). Importantly, this is the key judicial determination to be made on this motion, as the parties explicitly agreed that any disputes as to arbitrability or the scope of issues and/or parties subject to arbitration must be decided by the arbitration panel. Moreover, this judicial inquiry – whether Congress intended to preclude the arbitration of the

3

breach of fiduciary duty, aiding and abetting, and unjust enrichment claims asserted here – has

been conclusively answered by the Third Circuit Court of Appeals, which has squarely held that

the Bankruptcy Code does not reflect a Congressional intent to preclude arbitration of state law

breach of fiduciary duty claims – including specifically such claims that, like the Trust's claims

here, accompany claims for fraudulent transfer.  *See Hays & Co. v. Merrill Lynch, Pierce,*

*Fenner & Smith, Inc.*, 885 F.2d 1149, 1153–54 (3d Cir. 1989).  To drive home the point, the

*Hays* court emphasized that arbitration of these breach of fiduciary duty and non-core unjust

enrichment claims was mandatory – *i.e.*, the Bankruptcy Court had no discretion to deny a

motion to compel arbitration of these claims.

    Finally, the Trust's remaining claims for constructive and actual fraudulent

transfer and recharacterization of debt as equity (Counts I-V) should be stayed pending

arbitration.  It is well settled that courts have discretion to stay nonarbitrable claims to promote

judicial economy or avoid conflicting rulings when, as here, there is substantial factual and legal

overlap between the arbitrable and nonarbitrable claims.  As set forth in the table in Argument

Section III.A below, the factual allegations underlying the Trust's fraudulent transfer and

recharacterization claims are virtually *in haec verba* with the allegations underlying the claims to

be arbitrated.  Permitting the litigation to move forward under these circumstances would

seriously undermine Defendants' right to arbitrate disputes arising out of the Spin-Off – a right

that "requires rigorous enforcement."  *In re Mintze*, 434 F.3d at 229.

    Moreover, as Judge Walsh explained in staying fraudulent transfer claims pending

arbitration of breach of fiduciary duty and unjust enrichment claims – precisely the factual

scenario here – the arbitration could "'contribute to the resolution of the issues raised by the

fraudulent conveyance claims.'"  *EXDS, Inc. v. Ernst and Young LLP* (*In re EXDS, Inc.*), 316

B.R. 817, 826 (Bankr. D. Del. 2004) (citation omitted).  Indeed, Delaware bankruptcy courts

routinely stay proceedings before them pending arbitration.  *See*, *e.g.*, Madison Foods, Inc. v.

Fleming Cos. (*In re Fleming Cos., Inc.*), 325 B.R. 687, 695 (Bankr. D. Del. 2005) (staying

plaintiff's claims under Bankruptcy Code pending arbitration); *Shubert v. Wellspring Media, Inc.*

(*In re Winstar Commc'ns, Inc.*), 335 B.R. 556, 569 (Bankr. D. Del. 2005) (staying adversary

proceedings pending arbitration of dispute over underlying factual issue relevant to the adversary

proceedings).

        Granting a stay is particularly appropriate here, given the expedited nature of the

arbitration proceeding.  The Spin-Off Agreements require the arbitration hearing to commence

no later than 180 days from the impaneling of arbitrators, and provide for streamlined discovery.

(MSA § 5.4.)  Thus, granting a stay would protect Defendants' federally protected right to

arbitrate, while causing no cognizable harm to the Trust.  Simply put, as Paragon already has

emerged from bankruptcy, a stay will not interfere with any ongoing bankruptcy proceedings;

and as the Trust waited almost half a year before filing this lawsuit, and availed itself of the

expansive benefits of Rule 2004 discovery – to which it would not have been entitled had it

commenced arbitration in a timely fashion – it cannot credibly point to any adverse impact of the

requested stay.

## STATEMENT OF FACTS

### I.    NOBLE AND PARAGON AGREED TO ARBITRATE ANY DISPUTES ARISING OUT OF OR RELATED TO THE SPIN-OFF.

        On August 1, 2014, Noble completed a transaction in which it transferred the

majority of its standard specification assets into its subsidiary Paragon.  Noble then spun off

Paragon as an independent, publicly traded company.

To complete the Spin-Off, Noble and Paragon, on their own behalf and on behalf of their respective subsidiaries or "Groups" (the "Noble Group" and the "Paragon Group"), executed five agreements: a Master Separation Agreement (the "MSA"), a Tax Sharing Agreement, a Transition Services Agreement, an Employee Matters Agreement, and a Brazil Services Agreement. All five agreements are governed by New York law and provide that "any dispute, controversy or claim (whether sounding in contract, tort or otherwise) that arises out of or relates to" the "Agreement . . . or the transactions contemplated hereby" must be submitted to arbitration in Houston, Texas.[4]  (*See* MSA § 5.1, Compl. ¶ 111.) The Spin-Off was the "transaction contemplated" by these agreements. (*See* MSA, Recitals.)

The MSA was the primary agreement executing the Spin-Off of Paragon from Noble.[5] Section 5.1 of the MSA contains a broad arbitration provision:

> Except as otherwise specifically provided in any Ancillary Agreement, the procedures for discussion, negotiation and arbitration set forth in this Article V shall apply to *any dispute, controversy or claim (whether sounding in contract, tort or otherwise) that arises out of or relates to, this Agreement or any Ancillary Agreement, any alleged breach hereof or thereof, or the transactions contemplated hereby or thereby (including all actions taken in furtherance of the transactions contemplated hereby or thereby on or prior to the date hereof), the construction, interpretation, enforcement or validity hereof or thereof (a "Dispute"). Each Party agrees on behalf of itself and each member of its respective Group that the procedures set forth in this Article V shall be the sole and exclusive remedy in connection with any Dispute* and irrevocably waives any right to commence any Action in or before any Governmental Authority, except (i) as expressly provided in Section 5.7(b), (ii) to the extent provided for under the Federal Arbitration Act and (iii) as required by applicable Law. Each Party on behalf of itself and each member of its respective Group irrevocably waives any right to any trial by jury with

---

[4]   The other four agreements governing the Spin-Off include dispute resolution provisions incorporating by reference the Arbitration Provision of the MSA. *See* Tax Sharing Agreement, § 8.20, Transition Services Agreement, § 11.3, Employee Matters Agreement, § 10.6, Brazil Services Agreement, § 11.3 (incorporation of MSA Arbitration Provision in Transition Services Agreement and Employee Matters Agreement mistakenly refers to Article VI rather than Article V).

[5]   The MSA provides that "the Parties intend this Agreement, including the Schedules hereto, to set forth the principal arrangements between them regarding the separation of the Paragon Business from the Noble Business and the Distribution." (*See* MSA, Recitals.)

respect to any Dispute to which this Section 5.1 applies.   As used in the following provisions of this Article V, any reference to "party" or "parties" shall mean and refer to a party or parties involved in a Dispute.

(MSA, § 5.1.) (emphasis added).

Importantly, Section 5.6 of the MSA provides that "[t]he arbitrator shall have full power and authority to determine issues of arbitrability . . . ."  (MSA, § 5.6(b).)  The MSA also provides that any dispute "shall be resolved by final and binding arbitration pursuant to the then current Commercial Arbitration Rules . . . of the American Arbitration Association."  (MSA, § 5.3.)  Those rules, in turn, state that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  (AAA Rule 7(a).)

The Arbitration Provision also mandates that any arbitration must occur on an expedited basis.  Among other things, all arbitrators must be selected within 45 days of the Arbitration Demand Notice (MSA § 5.4.); the arbitration "will commence no later than 180 days after the date of the appointment of the third arbitrator," and the "hearing will be no longer than 15 days."  *Id*.  It also provides that the arbitrators "shall use their best efforts to reach a final decision" no "later than 60 days after the last hearing date."  *Id*.

## II.     THE TRUST WAS FORMED TO PROSECUTE
##          PARAGON'S CLAIMS RELATED TO THE SPIN-OFF.

On February 14, 2016, Paragon filed a voluntary petition under Chapter 11 of the Bankruptcy Code.  (D.I. 1.)  When the Court approved Paragon's exit from bankruptcy last summer, it also approved the creation of the Trust "for the sole purpose of prosecuting the Noble Claims."  (D.I. 1614-1 § 5.7(b).)  The "Noble Claims" include claims "arising under, relating to or in connection with the Spin-Off, against the Noble Entities and their respective officers and

directors." (D.I. 1614-1 § 1.1.) The Litigation Trust Agreement provides that the Trust "shall succeed to all of the [Paragon] Debtors' and the Estates' rights, title, and interests in and to the Trust Assets." (D.I. 1796-1 § 2.4.) The "Trust Assets" include "the Noble Claims and all proceeds thereon, vested in the Trust free and clear of Liens, charges, Claims, encumbrances, and other interests . . . ." (D.I. 1796-1 § 1.1.) The Trust therefore succeeded to Paragon's claims against Noble, including claims arising under or related to the Spin-Off.

## III.   THE TRUST HAS BROUGHT CLAIMS AGAINST THE DEFENDANTS ON BEHALF OF PARAGON.

The Trust has now brought claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust enrichment against Noble, several of its subsidiaries, and certain current and former directors of Paragon and Noble. The Trust alleges that Paragon itself was harmed by the alleged misconduct giving rise to these claims. (Compl. ¶¶ 186, 194, 197.) More importantly, the Trust alleges that each of these claims arises out of and relates to the Spin-Off:

- The Trust alleges that former Paragon directors James A. MacLennan and Julie J. Robertson breached the fiduciary duties they owed to Paragon "in connection with the Spin-Off." (Compl. ¶ 182.)

- The Trust also alleges that Noble's directors aided and abetted MacLennan's and Robertson's breaches of fiduciary duties to Paragon "in the context of the Spin-Off." (Compl. ¶ 192.)

- According to the Trust, Noble was unjustly enriched by the payment of $1.7 billion in connection with the Spin-Off. (Compl. ¶¶ 109, 196.)

Consequently, these claims are directly within the scope of the Arbitration Provision. (Compl. ¶¶ 109, 181-82, 192-93, 196.)

## ARGUMENT

**I.    COUNTS VI, VII, AND VIII SHOULD BE DISMISSED IN FAVOR OF ARBITRATION BECAUSE QUESTIONS OF ARBITRABILITY MUST BE DECIDED BY THE ARBITRATORS.**

Questions of arbitrability are limited to "a narrow range of gateway issues" that include what parties are bound by an arbitration clause and whether a clause covers the particular type of controversy at issue.  *See Opalinski v. Robert Half Int'l, Inc.*, 761 F.3d 326, 331 (3d Cir. 2014).  Parties may express their intent to have the arbitrators (rather than the court) determine these questions by expressly providing so in the arbitration agreement.  *See generally id.* at 335; *Home Buyers Warranty Corp. v. Jones,* No. 15-mc-324-RGA-MPT, 2016 WL 2350103, at *5 (D. Del. May 4, 2016), *report and recommendation adopted* 2016 WL 3457006 (D. Del. June 21, 2016) (holding that an agreement stating "[a]ny disputes concerning the interpretation or the enforceability of this arbitration agreement, including, without limitation, its revocability or voidability for any cause, the scope of arbitrable issues, and any defense based upon waiver, estoppel or laches, shall be decided by the arbitrator," constituted clear and unmistakable evidence that the parties agreed to arbitrate issues of arbitrability).  Additionally, as the Delaware District Court has noted, "[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA Rules] constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."  *Adtile Techs. Inc. v. Perion Network Ltd.*, 192 F. Supp. 3d 515, 525 (D. Del. 2016) (alteration in original) (citation omitted) (holding that incorporation of JAMS Comprehensive Arbitration Rules signaled that parties agreed to arbitrate arbitrability).

The Arbitration Provision expressly provides that "[t]he arbitrators shall have full power and authority to determine issues of arbitrability . . . ."  (MSA, § 5.6(b).)  The Arbitration Provision also incorporated the AAA Rules, stating that any dispute "shall be resolved by final

and binding arbitration pursuant to the then current Commercial Arbitration Rules . . . of the

American Arbitration Association."  (MSA § 5.3.)  In turn, the AAA Rules dictate that the

"arbitrator shall have the power to rule on his or her own jurisdiction, including any objections

with respect to the existence, scope, or validity of the arbitration agreement."  (AAA Rule 7(a).)[6]

        Under both Delaware and New York law,[7] the Individual Defendants – Noble and

Paragon directors who allegedly caused the Spin-Off, as executed in the MSA, but are not

signatories themselves – are entitled to enforce the Arbitration Provision, including its mandate

that the parties arbitrate questions of arbitrability.  *See Lapina v. Men Women N.Y. Model Mgmt.*

*Inc.*, 86 F. Supp. 3d 277, 284 (S.D.N.Y. 2015) ("[W]here a party seeking to avoid arbitration is a

signatory to an arbitration agreement which incorporates rules that delegate arbitrability

questions to the arbitrator, a court need not reach the issue of whether a non-signatory may

compel arbitration, because that is an issue properly resolved by the arbitrator."); *accord*

*Washington v. William Morris Endeavor Entm't, LLC*, No. 10 Civ.9647 (PKC) (JCF), 2011 WL

3251504, at \*9 (S.D.N.Y. July 20, 2011) (Because the nonsignatory employee defendants were

"the actors who carry out the company functions" and "[t]he allegations against the Individual

Defendants relate to the manner in which they executed their duties" as employees of the

corporation, the nonsignatories could compel arbitration of arbitrability.).  Thus, so long as a

non-signatory's arguments in favor of arbitration are not frivolous, "a signatory to an agreement

---

[6]    The AAA Rules (Exhibit F, which is attached to the transmittal declaration of Stephen J. Della Penna filed
herewith) are incorporated by reference in the MSA, which is specifically referred to and relied upon in the
adversary complaint. (Compl. ¶ 111.)  As such, they may be considered on a motion to dismiss in favor of
arbitration.  *See* n. 3 above.

[7]    State contract law applies to the Court's inquiry here.  *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–
631 (2009) ("'[S]tate law,' therefore, is applicable to determine which contracts are binding under § 2 and
enforceable under § 3 [of the FAA] '*if* that law arose to govern issues concerning the validity, revocability, and
enforceability of contracts generally.'" (first alteration in original) (citation omitted)).

vesting questions of substantive arbitrability to the arbitrator must resolve disputes about arbitrability against a nonsignatory before the arbitrator." *Carder v. Carl M. Freeman Cmtys., LLC*, No. 3319-VCP, 2009 WL 106510, at *7 (Del. Ch. Jan. 5, 2009) (citing *McLaughlin v. McCann*, 942 A.2d 616, 625 (Del. Ch. 2008)).

   Under these circumstances, the only question for the Court is whether the non-signatories' (Noble's and Paragon's officers and directors') relationship with Noble and Paragon is such that the arguments supporting arbitration are not frivolous. As the directors allegedly caused Noble and Paragon to engage in the conduct underlying all of the Trust's claims, and allegedly caused Noble and Paragon to enter into the Arbitration Provision, they manifestly can enforce it and have the arbitrators decide their ability to have the claims against them arbitrated. *See Contec Corp. v. Remote Solution Co*, 398 F.3d 205, 209 (2d Cir. 2005) (holding that arbitrator can decide issue of whether nonsignatory can enforce arbitration agreement against signatory if "the parties have a sufficient relationship to each other and to the rights created under the agreement."); *see generally Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir. 1993) ("Where the parties to [an arbitration] clause unmistakably intend to arbitrate all controversies which might arise between them, their agreement should be applied to claims against agents or entities related to the signatories."); *Degraw Const. Grp., Inc. v. McGowan Builders, Inc.*, 152 A.D.3d 567, 570 (N.Y. App. Div. 2017) (holding that non-signatory officers and employees could enforce arbitration clause because corporation could act only through its officers and employees, and alleged misconduct attributed to officers and employees related to their behavior as employees and officers of corporation). Likewise, the Individual Defendants may enforce arbitration as to the Trust, because the Trust inherited its claims from Paragon, "stands in the shoes of the debtor for the

purposes of the arbitration clause," and "is bound by the clause to the same extent as would the

debtor." *See Hays*, 885 F.2d at 1153.

      As a result, questions of arbitrability are for the arbitrators, not the Court, and

therefore the Court should dismiss these claims in favor of arbitration.

## II.    COUNTS VI, VII, AND VIII SHOULD BE DISMISSED IN FAVOR OF ARBITRATION BECAUSE THE FEDERAL ARBITRATION ACT REQUIRES ARBITRATION OF THE TRUST'S DEBTOR-DERIVED CLAIMS.

      As the parties "validly delegated gateway questions of arbitrability to arbitration,"

the sole remaining question for the Court is "whether Congress intended any of the trustee's

claims to be nonarbitrable." *Sicherman v. World Auto Network Inc.* (*In re McZeal*), No. 14-

15947, 2017 WL 2372375, at *9 (Bankr. N.D. Ohio May 31, 2017). Here, the Trust cannot

establish that Congress intended to override the Federal Arbitration Act's (the "FAA") policy in

favor of arbitration in the context of these claims. Accordingly, the Court does not have

discretion to deny enforcement of the Arbitration Provision. *See id.* at *9-10 (holding that

because Congress did not intend to preclude arbitration of non-core matters, the Court has no

discretion, and is required to enforce the arbitration agreements and their respective delegation

provisions).

### A.    Congress Did Not Intend to Override the FAA's Strong Policy Favoring Arbitration of These Claims.

      Congress designed the FAA "to promote arbitration." *AT&T Mobility LLC v.

Concepcion*, 563 U.S. 333, 345 (2011). The Act "embod[ies] [a] national policy favoring

arbitration" and "a liberal federal policy favoring arbitration agreements, notwithstanding any

state substantive or procedural policies to the contrary." *Id.* at 346 (second alteration in original)

(citations omitted). The Trust cannot override the FAA's mandate in favor of arbitration unless

it can "demonstrate that 'Congress intended to preclude a waiver of judicial remedies for the *statutory rights at issue.*'" *In re Mintze*, 434 F.3d at 229 (quoting *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 227 (1987)) (emphasis added). This Congressional intent may be shown through: (1) the language of the statute; (2) legislative history; or (3) "an inherent conflict between arbitration and the statute's underlying purposes." *McMahon*, 482 U.S. at 227. Here, the Trust cannot satisfy its heavy burden.

> <u>First</u>, the Trust has not pled that its claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, or unjust enrichment arise under any federal statute. As a result, it can point to no statutory language or legislative history that prevents the arbitration of these claims. As the Third Circuit has held, there are "no provisions in the text of the bankruptcy laws . . . suggesting that arbitration clauses are unenforceable in a non-core adversary proceeding" and "no legislative history indicating that this kind of proceeding was intended to be an exception to the mandate of the Arbitration Act." *Hays*, 885 F.2d at 1157. Likewise, numerous courts – including this Court – have determined that claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust enrichment do not invoke a substantive right under the Bankruptcy Code or present an issue of bankruptcy law. *See Official Comm. of Unsecured Creditors of Allied Holding, Inc. v. Alliance Fund I, L.P.* (*In re Allied Sys. Holdings, Inc.*), 524 B.R. 598, 605 (Bankr. D. Del. 2015) (Sontchi, J.) (claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty neither "invoke[d] a substantive right provided by title 11" nor were proceedings "that by [their] nature, could arise only in the context of a bankruptcy case").[8]

---

[8]    *See also In re Exide Techs.*, 544 F.3d 196, 207 (3d Cir. 2008) (unjust enrichment claims did not "invoke[] a substantive right under the Bankruptcy Code," pre-dated the filing of the bankruptcy petition, and were not "proceedings 'could arise only in the context of a bankruptcy case'" (citation omitted)); *Shandler v. DLJ*

*(cont'd)*

Accordingly, courts routinely hold that these claims must be submitted to

arbitration. *See, e.g.*, *AstroPower Liquidating Tr. V. Xantrex Tech., Inc.* (*In re AstroPower*

*Liquidating Tr.*), 335 B.R. 309, (Bankr. D. Del. 2005) (requiring arbitration of breach of

fiduciary duty claim because it did not "invoke a substantive right under the Bankruptcy Code"

and was not a claim "by [its] nature, capable of arising only in the context of a bankruptcy

case"); *Official Comm. of Unsecured Creditors of TEU Holdings, Inc. v. Kemeny* (*In re TEU*

*Holdings, Inc.*), 287 B.R. 26, 37 (Bankr. D. Del. 2002) (submitting common-law claims to

mandatory arbitration because neither claim "involve[d] federal bankruptcy law" and both

"could have arisen outside the bankruptcy case . . . in a [ ] court of competent jurisdiction").  The

same is true of the Trust's claims here.

Second, there is no conflict between the purposes of the Bankruptcy Code and the

arbitration of these debtor-derived, non-bankruptcy claims.[9]  In *Hays*, the Third Circuit held that

"[w]here, as here, a trustee seeks to enforce a claim inherited from the debtor" – in that case, a

claim for breach of fiduciary duty – there was "no adverse effect on the underlying purposes of

the [Bankruptcy Code] from enforcing arbitration – certainly no adverse effect of sufficient

_____
*(cont'd from previous page)*
  *Merchant Banking* (*In re Insilco Techs., Inc.*), 330 B.R. 512, 526 (Bankr. D. Del. 2005), *aff'd*, 394 B.R. 747 (D.
  Del. 2008) (unjust enrichment claims did not "invoke[] a substantive right provided by title 11, nor could [the]
  claim arise only in the context of a bankruptcy case").

[9]   Claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty and unjust enrichment all
     derive from the debtor.  *Burtch v. Huston* (*In re USDigital, Inc.*), 443 B.R. 22, 42 (Bankr. D. Del. 2011)
     (Sontchi, J.) ("[C]reditors may not assert direct claims for breach of fiduciary duty against directors of a solvent
     or insolvent corporation."); *accord Burtch v. Seaport Capital, LLC* (*In re Direct Response Media, Inc.*), 466 B.R.
     626, 648 (Bankr. D. Del. 2012) ("The breach of fiduciary duty claims against the Board Defendants are
     derivative claims as the Trustee stands in the shoes of the Debtor."); *Official Comm. of Unsecured Creditors of
     Allied Holding, Inc. v. Alliance Fund I, L.P.* (*In re Allied Sys. Holdings, Inc.*), 524 B.R. 598, 601 (Bankr. D. Del.
     2015) (Sontchi, J.)(Claims for aiding and abetting breach of fiduciary duty are likewise asserted on behalf of
     debtors); *AstroPower Liquidating Tr. V. Xantrex Tech., Inc.* (*In re AstroPower Liquidating Tr.*), 335 B.R. 309,
     315 (Bankr. D. Del. 2005) (submitting trust's claims, including breach of fiduciary duty and unjust enrichment,
     to arbitration pursuant to debtor's pre-petition arbitration agreement); *EXDS, Inc. v. Ernst & Young LLP* (*In re
     EXDS, Inc.*), 316 B.R. 817, 826 (Bankr. D. Del. 2004) (submitting debtor's state-law claims, including unjust
     enrichment, to arbitration pursuant to debtor's pre-petition arbitration agreement).

magnitude to relieve a district court of its *mandatory* duty under the Arbitration Act." 885 F.2d at 1161 (emphasis added). Moreover, because non-bankruptcy claims, by definition, do not arise out of the Bankruptcy Code, arbitrating them does "not subvert any provisions or underlying policies of the Bankruptcy Code." *In re TEU Holdings, Inc.*, 287 B.R. at 37. "With no bankruptcy issue to be decided by the Bankruptcy Court," there can be no "inherent conflict between arbitration . . . and the underlying purposes of the Bankruptcy Code." *In re Mintze*, 434 F.3d at 231–32. That is the square holding of *Hays*.

**B.      The Presence of Nonarbitrable Claims
        Does Not Permit the Trust to Avoid Arbitration.**

The Trust's decision to bring nonarbitrable claims along with claims subject to mandatory arbitration does not change the analysis. Indeed, the Supreme Court expressly so ruled in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985) holding that the FAA "*requires* district courts to compel arbitration of pendent arbitrable claims" – *i.e.*, arbitrable claims brought in the same suit as nonarbitrable claims. (Emphasis added). "By its terms, the [FAA] leaves no room for the exercise of discretion" by a court, but instead mandates that courts "shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* at 218. The Supreme Court has since reiterated that "if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration." *KPMG LLP v. Cocchi*, 565 U.S. at 19.

Following *Dean Witter*, the Third Circuit in *Hays* held that a trustee's arbitrable claims must proceed in arbitration even though the nonarbitrable fraudulent conveyance claims would remain in bankruptcy court. 885 F.2d at 1158. The court rejected the notion that any countervailing policy arising from the Bankruptcy Code "would be substantial enough to

override the policy favoring arbitration." *Id.*  Accordingly, as in *Hays*, the Trust's arbitrable

claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust

enrichment must be sent to arbitration regardless of the nonarbitrable claims.

## III.    THE REMAINING CLAIMS SHOULD BE STAYED PENDING THE EXPEDITED ARBITRATION OF THE DEBTOR-DERIVED CLAIMS.

The Court should stay nonarbitrable claims "where doing so will promote judicial

economy or avoid conflicting rulings." *In re Fleming Cos., Inc.*, 325 B.R. at 695 (staying

plaintiff's claims under Bankruptcy Code pending arbitration); *See* 9 U.S.C.A. § 1 et seq.  Courts

routinely stay nonarbitrable claims for these reasons.  *See, e.g.*, *In re Winstar Commc'ns, Inc.*,

335 B.R. 556, 569 (Bankr. D. Del. 2005) (Baxter, J.) (staying adversary proceedings pending

arbitration of dispute over underlying factual issue relevant to adversary proceedings); *Kittay v.*

*Landegger* (*In re Hagerstown Fiber Ltd. P'ship*), 277 B.R. 181, 199 (Bankr. S.D.N.Y. 2002)

(holding that stay is warranted when it will "'promote judicial economy, avoidance of confusion

and possible inconsistent results' without working an undue hardship or prejudice against the

plaintiff") (citation omitted); *Witkowski v. Welch*, No. CIV. A. 92-0924, 1993 WL 69587, at *2

(E.D. Pa. Mar. 11, 1993) (staying counts not within purview of arbitration clause); *Moore v.*

*Interacciones Glob., Inc.*, No. 94 Civ. 4789(RWS), 1995 WL 33650, at *7 (S.D.N.Y. Jan. 27,

1995) ("It is well-settled that claims are appropriately stayed when they involve common issues

of fact and law with those subject to arbitration.").

Judge Walsh confronted a virtually identical situation in *In re EXDS, Inc.*  In that

case, as here, the plaintiff asserted claims for fraudulent transfer, breach of fiduciary duty, and

unjust enrichment among others.  *In re EXDS, Inc.*, 316 B.R. at 823, 826.  Once it was clear that

the breach of fiduciary duty and unjust enrichment claims had to proceed in arbitration, Judge

Walsh determined that the arbitration might "'contribute to the resolution of the issues raised by the fraudulent conveyance claims.'" *Id.* at 826 (citing *In re Hagerstown*, 277 B.R. at 208.).  In light of this, he concluded that a stay of the fraudulent transfer claim was warranted because the "factual underpinnings" of the claims were "essentially those underlying" the claims to be arbitrated.  *Id.* at 826.

Judge Walsh's rationale, which fits squarely in the mainstream of bankruptcy courts' decisions on this precise fact pattern, applies with special force here.  Due to the factual and legal overlap between the Trust's arbitrable and nonarbitrable claims, staying the litigation of the nonarbitrable claims would promote judicial economy and all of the salutary policy factors emphatically favoring arbitration; and the streamlined nature of the arbitration proceedings mandated by the MSA will ensure there is no undue hardship for the Trust, which waited five months before filing its Complaint, and reaped the benefit of broad Rule 2004 discovery.

### A.    The Trust Relies on the Same Factual Allegations for its Arbitrable and Nonarbitrable Claims.

As in *EXDS*, the same facts underpin the Trust's arbitrable and nonarbitrable claims – namely the Spin-Off.  All of the Trust's claims center on the value Paragon received during the Spin-Off; whether Paragon was insolvent at the time of the Spin-Off; and whether the Individual Defendants acted in good faith in connection with the Spin-Off.  (*See* Compl. ¶¶  131–32, 134, 139–40, 142, 147–48, 150, 156–57, 182, 192.)  The Trust's unjust enrichment claim similarly focuses on the Spin-Off and the same note payments that are at issue in the fraudulent transfer and recharacterization claims.  (*Compare* Compl. ¶¶ 135, 143, 152, 161, 174 *with* ¶ 196.)

The overwhelming overlap between all of these claims is evident from a comparison of the virtually identical factual allegations to support the Trust's claims for actual fraudulent transfer and breach of fiduciary duty:

| **Actual Fraudulent Transfer**<br>(Compl. ¶¶ 134(a)–(e), 142(a)–(e)) | **Breach of Fiduciary Duty**<br>(Compl. ¶ 181(b)–(f)) |
|---|---|
| Knowingly false and misleading statements made to prospective lenders, rating agencies, and shareholders regarding, among other things, Paragon's future business, the expected useful life of Paragon's fleet, Paragon's anticipated effective tax rate, and Paragon's anticipated future tax liabilities; | Providing or causing Paragon to provide knowingly false and misleading statements to prospective lenders, rating agencies, and shareholders regarding, among other things, Paragon's future business, the expected useful life of Paragon's fleet, Paragon's anticipated effective tax rate, and Paragon's anticipated future tax liabilities; |
| Concealment of the Master Model from Houlihan; | Concealing or causing Paragon to conceal the Master Model from Houlihan; |
| Provision of knowingly false and misleading information to Houlihan regarding, among other things, Paragon's future business, the expected useful life of Paragon's fleet, Paragon's anticipated effective tax rate, and Paragon's anticipated future tax liabilities; | Providing or causing Paragon to provide knowingly false and misleading information to Houlihan regarding, among other things, Paragon's future business, the expected useful life of Paragon's fleet, Paragon's anticipated effective tax rate, and Paragon's anticipated future tax liabilities; |
| Refusal to provide independent counsel to Paragon or negotiate an arms' length transaction. | Refusing to provide Paragon with independent counsel in connection with the Spin-Off. |

Likewise, the Trust's claim for aiding and abetting breach of fiduciary duty depends on the underlying breach of fiduciary duty, and so implicates precisely these same factual allegations.  (*See* Compl. ¶ 190–194.)

18

**B.      There is Significant Legal Overlap Between
the Trust's Arbitrable and Nonarbitrable Claims.**

1.      The Fraudulent Transfer Claims and the Claims Against the
Individual Defendants All Implicate the Defendants' Intent.

The legal elements of claims for fraudulent transfer, breach of fiduciary duty, and

aiding and abetting breach of fiduciary duty overlap as well, as each turns on the intent and good

faith of the defendants.  Specifically, a claim for intentional fraud requires proof of the

transferor's actual intent to hinder, delay or defraud.  11 U.S.C. § 548(a)(1).  Here, the Trustee

asserts that the intent of the Defendants should be imputed to the Debtors.   (Compl. ¶¶ 132, 134,

140, 142, 148, 157, 166, 193.)  Thus, the Trust has put the intent of the Defendants in play.

Similarly, a claim for constructive fraud is subject to a defense to the extent the transferee, *i.e.*,

Noble, acted in good faith.  11 U.S.C. § 548(c).

These same issues are centerpieces of the arbitrable fiduciary duty claims as well,

as the Trust has alleged that Paragon's directors acted with "gross negligence, reckless

indifference, and bad faith."  (Compl. ¶181.)  It also alleges that these directors violated various

duties, including their duty of "good faith."  (*Id.* ¶ 185.)  The Trust's claim for aiding and

abetting breach of fiduciary duty also focuses on the parties' state of mind.  The Trust concedes

this, alleging that Noble's board members "were active and knowing participants in these

breaches of fiduciary duty."  (Compl. ¶ 193.)  Such matters turn on all the same facts and

circumstances, including the same considerations that inform an assessment of "badges of fraud"

relevant in an intentional fraudulent transfer action.

19

2.    To Prove Both Unjust Enrichment and Fraudulent Transfer, the Trust
      Must Show Paragon Did Not Receive Adequate Value in the Spin-Off.

The Trust's claims for fraudulent transfer and unjust enrichment similarly overlap.  The Trust alleges that the "Corporate Defendants have been unjustly enriched and Paragon and its subsidiaries have been impoverished" as a result of the Spin-Off.  (Compl. ¶ 197.)  Furthermore, the "unjust" portion of this claim goes to the underlying good faith and propriety of the Individual Defendants' actions.  As a result, this claim focuses on the same central issues of value and solvency presented in the Trust's fraudulent transfer claims.  In particular, a trustee may avoid a fraudulent transfer if the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation."  11 U.S.C. § 548(a)(1)(B)(i).  Likewise, under claims for actual fraudulent transfer, courts look at "insolvency or indebtedness of debtors [and] how much of debtor's estate was transferred."  *In re Direct Response Media, Inc.*, 466 B.R. at 654 (citation omitted).

3.    The Fraudulent Transfer, Recharacterization,
      and Unjust Enrichment Claims All Allege the Same Damages.

The overlap of these claims is further evident when examining the damages elements alleged for each claim.  The Trust has presented nearly identical arguments for damages for its claims of fraudulent conveyance, recharacterization, and unjust enrichment.  All six counts recite the same damages request – restitution in the amount of the repayment of the intercompany notes that were issued to Noble subsidiaries, together with interest from July 18, 2014 onward:

| Count | Damages Allegation |
|---|---|
| **Count I** – Actual Fraudulent Transfer | As a consequence of the foregoing, Plaintiff is entitled to avoid the Intercompany Notes and avoid and recover the Note Payments, together with interest from July 18, 2014, from each Noble, Noble Holdings Cayman, Noble Cayman, NHIL 1, NHIL 2, and FDR pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550(a). (Compl. ¶ 137.) |
| **Count II** – Actual Fraudulent Transfer | As a consequence of the foregoing, Plaintiff is entitled to avoid the Intercompany Notes and avoid and recover the Note Payments, together with interest from July 18, 2014, from each Noble, Noble Holdings Cayman, Noble Cayman, NHIL 1, NHIL 2, and FDR pursuant to 11 U.S.C. §§ 544(b)(1) and 550(a) and Del. Code Ann. Tit. 6 § 1304(a)(1). (Compl. ¶ 145.) |
| **Count III** – Constructive Fraudulent Transfer | As a consequence of the foregoing, Plaintiff is entitled to avoid the Intercompany Notes and avoid and recover the Note Payments, together with interest from July 18, 2014, from each Noble, Noble Holdings Cayman, Noble Cayman, NHIL 1, NHIL 2, and FDR pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550(a). (Compl. ¶ 154.) |
| **Count IV** – Constructive Fraudulent Transfer | As a consequence of the foregoing, Plaintiff is entitled to avoid the Intercompany Notes and avoid and recover the Note Payments, together with interest from July 18, 2014, from each Noble, Noble Holdings Cayman, Noble Cayman, NHIL 1, NHIL 2, and FDR pursuant to 11 U.S.C. §§ 544(b), 548(a)(1)(B) and 550(a) and Del. Code Ann. Tit. 6 § 1304(a)(2). (Compl. ¶ 163.) |
| **Count V** – Recharacterization | As a consequence of the foregoing, Plaintiff is entitled to avoid and recover Dividends, together with interest from July 18, 2014, from each Noble, Noble Holdings Cayman, Noble Cayman, NHIL 1, NHIL 2, and FDR pursuant to 11 U.S.C. §§ 544(b), 548(a)(1)(B) and 550(a) and Del. Code Ann. Tit. 6 § 1304(a)(2). (Compl. ¶ 176.) |

| **Count VIII** – Unjust Enrichment | As a result of the foregoing, the Corporate Defendants should be compelled by the Court to make restitution in the amount of the Note Payments, together with interest from July 18, 2014 onward.  (Compl. ¶ 199.) |
|---|---|

All of the claims clearly relate to the same transaction and seek the same restitution.  As a result, a resolution of the unjust enrichment claim must necessarily "'contribute to the resolution of the issues raised by the fraudulent conveyance claims.'"  *In re EXDS, Inc.* 316 B.R. at 826 (citation omitted).  The same analysis applies equally to the claims against the Individual Defendants.  The Trust's theory is that Noble forced Paragon to pay $1.7 billion for assets that were worth considerably less.  Accordingly, any damages must necessarily depend on the value Paragon received in the Spin-Off.

These facts are the paradigm for staying the litigation of nonarbitrable claims pending arbitration.

## <u>CONCLUSION</u>

For all the foregoing reasons, Defendants respectfully request that the Court dismiss the Trust's claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust enrichment in favor of arbitration.  Additionally, Defendants respectfully request that the Court stay the proceedings of the remaining claims for actual and constructive fraudulent transfer and recharacterization of debt as equity pending completion of the arbitration and any related confirmation proceedings.

Dated:  February 15, 2018

Wilmington, Delaware

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Anthony W. Clark*
Anthony W. Clark (ID: 2051)
Stephen J. Della Penna (ID: 6103)
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone:  (302) 651-3000
Facsimile:  (302) 651-3001

- and -

George A. Zimmerman *(admitted pro hac vice)*
Lauren E. Aguiar *(admitted pro hac vice)*
Four Times Square
New York, New York 10036-6522
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000

- and –

Wallis M. Hampton *(admitted pro hac vice)*
1000 Louisiana Street, Suite 6800
Houston, Texas 77002-5026
Telephone:  (713) 655-5116
Facsimile:   (713) 483-9116

*Counsel for the Defendants*