## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| PARAGON OFFSHORE PLC, | Case No. 16-10386 (CSS) |
| Debtor.[1] | |
| PARAGON LITIGATION TRUST, | |
| Plaintiff, | |
| v. | |
| NOBLE CORPORATION PLC, NOBLE CORPORATION HOLDINGS LTD, NOBLE HOLDING INTERNATIONAL (LUXEMBOURG) S.A R.L., NOBLE FDR HOLDINGS LIMITED, ASHLEY ALMANZA, JULIE H. EDWARDS, GORDON T. HALL, JON A. MARSHALL, JAMES A. MACLENNAN, MARY P. RICCIARDELLO, JULIE J. ROBERTSON, AND DAVID WILLIAMS, | Adv. Proc. No. 17-51882 (CSS) |
| | Re: Docket Nos. 1, 23, 24, 38 |
| Defendants. | Hearing Date: To Be Determined |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR
## MOTION TO DISMISS IN FAVOR OF ARBITRATION
## AND TO STAY THE PROCEEDINGS[2]

---

[1]    The Debtor in this case, along with the last four digits of the debtor's federal tax identification number, is Paragon Offshore plc (in administration) (6017).  The Debtor's mailing address is 3151 Briarpark Drive, Suite 700, Houston, Texas 77042.  Neville Barry Kahn and David Philip Soden, each of Deloitte LLP, are the joint administrators of Paragon Offshore plc (in administration) (the "Joint Administrators").  The affairs, business and property of Paragon Offshore plc (in administration) are managed by the Joint Administrators.

[2]    In submitting Defendants' Reply in Support of Their Motion to Dismiss in Favor of Arbitration and to Stay the Proceedings, Defendants do not consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

Dated:  May 1, 2018                    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

Anthony W. Clark (ID: 2051)
Stephen J. Della Penna (ID: 6103)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone:  (302) 651-3000
Facsimile:  (302) 651-3001

- and -

George A. Zimmerman *(admitted pro hac vice)*
Lauren E. Aguiar *(admitted pro hac vice)*
Four Times Square
New York, New York 10036-6522
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000

- and -

Wallis M. Hampton *(admitted pro hac vice)*
1000 Louisiana Street, Suite 6800
Houston, Texas 77002-5026
Telephone:  (713) 655-5116
Facsimile:   (713) 483-9116

*Counsel for Defendants*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................4

I.    THE EXCLUSIVE JURISDICTION PROVISION IN THE PLAN AND
CONFIRMATION ORDER DOES NOT SUPERSEDE DEFENDANTS'
CONTRACTUAL RIGHT TO ARBITRATE. ...............................................................4

    A.    The Plan and Confirmation Order Expressly Preserve Defendants'
Contractual Right to Arbitrate. ...............................................................5

        1.    Noble Negotiated Language in the Plan and Confirmation Order
That Preserves Defendants' Rights and Defenses. ...................................5

        2.    The Court Can and Should Harmonize the Arbitration Provision
and the Exclusive Jurisdiction Provision. ....................................7

    B.    The Exclusive Jurisdiction Clause Does Not Extend the Court's
Jurisdiction Beyond Its Statutory Bounds. ..............................................8

II.    QUESTIONS OF ARBITRABILITY MUST BE DECIDED BY THE
ARBITRATORS. .............................................................................................................9

    A.    The MSA Clearly and Unmistakably Delegates Questions of Arbitrability
to the Arbitrators. ...................................................................................9

    B.    The Individual Defendants and the Claims Against Them Are Sufficiently
Related to the Contracts at Issue for the Arbitrator to Decide Issues of
Arbitrability. .........................................................................................12

III.    THE TRUST'S STATE LAW CLAIMS ARE ARBITRABLE. .....................................13

    A.    The Arbitration Provision Governs Any Claims That Arise Out of or
Relate to the MSA and the Transactions It Contemplated. .....................13

    B.    The Trust's State-Law Claims Arise Out of and Touch on the MSA. ...................14

IV.    THE COURT SHOULD STAY THE REMAINING CLAIMS PENDING
RESOLUTION OF THE ARBITRATION. ..................................................................16

    A.    Staying Arbitration Would Effectively Deprive Defendants of Their
Bargained-for Right to Arbitrate. ..........................................................17

    B.    Staying the Litigation Will Promote Judicial Economy and Other Policies
Favoring Arbitration. ............................................................................19

CONCLUSION .....................................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*AASI Creditor Liquidating Tr. v. Peoplesoft, USA, Inc. (In re All Am. Semiconductor, Inc.)*,
Bankruptcy No. 07-12963-BKC-LMI, Adversary No. 09-1466-BKC-LMI,
2010 WL 2854153 (Bankr. S.D. Fla. July 20, 2010),
*aff'd sub nom. Sirius Computer Sols., Inc. v. AASI Creditor Liquidating Tr.*,
No. 10-23406-CIV, 2011 WL 3843943 (S.D. Fla. Aug. 29, 2011) .................................... 6

*ACE Securities Corp. v. DB Structured Products, Inc.*,
25 N.Y.3d 581, 36 N.E.3d 623 (2015) ............................................................................. 16

*Allstate Insurance Co. v. Elzanaty*,
929 F. Supp. 2d 199 (E.D.N.Y. 2013) ............................................................................. 17

*Allstate Insurance Co. v. Toll Bros.*,
171 F. Supp. 3d 417 (E.D. Pa. 2016) .............................................................................. 11

*American Shipping Line, Inc. v. Massan Shipping Industries, Inc.*,
885 F. Supp. 499 (S.D.N.Y. 1995) .................................................................................. 17

*AstroPower Liquidating Trust v. Xantrex Technology, Inc. (In re AstroPower Liquidating Trust)*,
335 B.R. 309 (Bankr. D. Del. 2005) ................................................................................ 17

*Awuah v. Coverall North America, Inc.*,
554 F.3d 7 (1st Cir. 2009) ............................................................................................... 12

*Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*,
372 F.3d 154 (3d Cir. 2004) ........................................................................................ 3, 8

*Brayman Construction Corp. v. Home Insurance Co.*,
319 F.3d 622 (3d Cir. 2003) ............................................................................................ 14

*Brill v. Prudential-Bache Securities, Inc.*,
No. 84 Civ. 0846 (PKL), 1986 WL 6787 (S.D.N.Y. June 13, 1986) .................................. 5

*CIT Group Inc. v. Tyco International Ltd. (In re CIT Group Inc.)*,
Bankruptcy No. 09-16565 (ALG), Adversary No. 11-2267 (ALG),
2012 WL 831095 (Bankr. S.D.N.Y. Mar. 9, 2012) .......................................................... 7

*Coenen v. R. W. Pressprich & Co.*,
453 F.2d 1209 (2d Cir. 1972) .......................................................................................... 16

*Contec Corp. v. Remote Solution, Co.*,
    398 F.3d 205 (2d Cir. 2005)..................................................................... 10, 12

*Covina 2000 Ventures Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    No. 06 Civ. 15497(DLC), 2007 WL 2154186 (S.D.N.Y. July 26, 2007)........................ 13

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985).............................................................................. 18

*Degraw Construction Group, Inc. v. McGowan Builders, Inc.*,
    152 A.D.3d 567, 58 N.Y.S.3d 152 (2d Dep't 2017)....................................... 13

*Dickinson v. Heinold Securities, Inc.*,
    661 F.2d 638 (7th Cir. 1981) .................................................................. 18

*Douglas v. Regions Bank*,
    757 F.3d 460 (5th Cir. 2014) .................................................................. 11

*Drennen v. Certain Underwriters at Lloyd's of London (In re Residential Capital LLC)*,
    563 B.R. 756 (Bankr. S.D.N.Y. 2016) ...................................................... 17

*E. W. Bank v. Bingham*,
    992 F. Supp. 2d 1130 (W.D. Wash. 2014)............................................... 17, 20

*Ernst & Young LLP v. Baker O'Neal Holdings, Inc. (In re Baker O'Neal Holdings, Inc.)*,
    Nos. IP 00-1538-C H/G et al., 2001 WL 1397310 (S.D. Ind. Sept. 28, 2001),
    *aff'd*, 304 F.3d 753 (7th Cir. 2002) ........................................................ 18

*Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*,
    304 F.3d 753 (7th Cir. 2002) ................................................................... 6

*EXDS, Inc. v. Ernst & Young LLP (In re EXDS, Inc.)*,
    316 B.R. 817 (Bankr. D. Del. 2004) ...................................................... 19, 20

*Executive Benefits Insurance Agency v. Arkison*,
    134 S. Ct. 2165 (2014)............................................................................ 3

*F.D. Import & Export Corp. v. M/V REEFER SUN*,
    248 F. Supp. 2d 240 (S.D.N.Y. 2002)....................................................... 17

*First Liberty Investment Group v. Nicholsberg*,
    145 F.3d 647 (3d Cir. 1998)................................................................... 14

*Gadelkareem v. Blackbook Capital LLC*,
    46 Misc. 3d 149(A),
    2015 N.Y. Slip Op. 50265(U) (Sup. Ct. App. T. 1st Dep't 2015) ...................... 8

*Gandy v. Gandy (In re Gandy)*,
　　299 F.3d 489 (5th Cir. 2002) ........................................................................ 17

*Gerszberg v. Li & Fung (Trading) Ltd.*,
　　215 F. Supp. 3d 282 (S.D.N.Y. 2016) ........................................................... 13

*Giles v. Blunt, Ellis & Loewi, Inc.*,
　　845 F.2d 131 (7th Cir. 1988) ........................................................................ 18

*Gillman v. Chase Manhattan Bank, N.A.*,
　　73 N.Y.2d 1, 534 N.E.2d 824 (1988) ............................................................ 11

*Goldsmith v. Macri Associates, Inc. (In re E & G Waterworks, LLC)*,
　　571 B.R. 500 (Bankr. D. Mass. 2017) ........................................................... 17

*Hays & Co. v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
　　885 F.2d 1149 (3d Cir. 1989) ..................................................................... 9, 18

*Hirschfeld Products, Inc. v. Mirvish*,
　　88 N.Y.2d 1054, 673 N.E.2d 1232 (1996) .................................................... 13

*In re Cont'l Airlines, Inc.*,
　　236 B.R. 318 (Bankr. D. Del. 1999) (Walrath, J.), *aff'd sub nom.*
　　*Eastern Pilots Merger Committee v. Continental Airlines (In re Cont'l Airlines)*,
　　Nos. 90-932 ADV, 99-47, CIV.A. 99-795-SLR,
　　2000 WL 1425751 (D. Del. Sept. 12, 2000), *aff'd*, 279 F.3d 226 (3d Cir. 2002) ............. 9

*In re Monge Oil Corp.*,
　　83 B.R. 305 (Bankr. E.D. Pa. 1988) ............................................................... 8

*Isaacs v. Westchester Wood Works, Inc.*,
　　278 A.D.2d 184, 718 N.Y.S.2d 338 (1st Dep't 2000) ................................... 7, 8

*JLM Industries, Inc. v. Stolt-Nielsen SA*,
　　387 F.3d 163 (2d Cir. 2004) ..................................................................... 13, 15

*Kitay v. Landegger (In re Hagerstown Fiber Ltd. Partnership)*,
　　277 B.R. 181 (Bankr. S.D.N.Y. 2002) ........................................................... 19

*Klay v. All Defendants*,
　　389 F.3d 1191 (11th Cir. 2004) .................................................................... 17

*KPMG LLP v. Cocci*,
　　565 U.S. 18 (2011) ......................................................................................... 1

*Lepera v. ITT Corp.*,
　　No. 97-1461, 1997 WL 535165 (E.D. Pa. Aug. 12, 1997) ......................... 19, 20

*Lloyd v. HOVENSA, LLC*,
    369 F.3d 263 (3d Cir. 2004)....................................................................................... 16

*Madison Foods, Inc. v. Fleming Cos. (In re Fleming Cos.)*,
    325 B.R. 687 (Bankr. D. Del. 2005) ..................................................................... 8, 19

*Martin v. Catholic Diocese of Wilmington, Inc. (In re Catholic Diocese of Wilmington,*
    *Inc.)*,
    484 B.R. 629 (D. Del. 2012) ................................................................................... 17

*Meadows v. Dickey's Barbecue Restaurants Inc.*,
    144 F. Supp. 3d 1069 (N.D. Cal. 2015) ................................................................. 12

*Megafoods Stores, Inc. v. Flagstaff Realty Associates (In re Flagstaff Realty Associates)*,
    60 F.3d 1031 (3d Cir. 1995)...................................................................................... 8

*MF Global Holdings Ltd. v. Allied World Assurance Co. (In re MF Global Holdings Ltd.)*,
    571 B.R. 80 (Bankr. S.D.N.Y. 2017), *leave to appeal denied*,
    No. 17-CV-7332 (JSR), 2017 WL 4898218 (S.D.N.Y. Oct. 30, 2017)........................ 6, 7

*Microbilt Corp. v. Chex Systems, Inc. (In re Microbilt Corp.)*,
    588 F. App'x 179 (3d Cir. 2014) ............................................................................ 13

*Moore v. T-Mobile USA, Inc.*,
    No. 10-CV-527 (SLT)(CLP), 2012 WL 13036858 (E.D.N.Y. Sept. 28, 2012),
    *aff'd*, 548 F. App'x 686 (2d Cir. 2013) ..................................................................... 5

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
    460 U.S. 1 (1983)............................................................................................... 1, 14

*Official Committee of Unsecured Creditors of Allied Systems Holding, Inc. v. Yucaipa*
    *American Alliance Fund I, L.P. (In re Allied Systems Holdings, Inc.)*,
    524 B.R. 598 (Bankr. D. Del. 2015) ......................................................................... 6

*OHC Liquidation Trust v. American Bankers Insurance Co. (In re Oakwood Homes*
    *Corp.)*,
    Nos. 02-13396PJW, ADV No. 04-56928PBL,
    2005 WL 670310 (Bankr. D. Del. Mar. 18, 2005)............................................... 17

*Opalinski v. Robert Half International, Inc.*,
    761 F.3d 326 (3d Cir. 2014)................................................................................... 10

*Oracle America, Inc. v. Myriad Group A.G.*,
    724 F.3d 1069 (9th Cir. 2013) ............................................................................... 12

*Paramedics Electromedicina Comercial, LTDA. v. GE Medical Systems Information*
    *Technologies, Inc.*,
    369 F.3d 645 (2d Cir. 2004)................................................................................... 15

v

*Pardo v. Pacificare of Texas, Inc. (In re APF Co.)*,
    264 B.R. 344 (Bankr. D. Del. 2001) ............................................................................ 17

*Parfi Holding AB v. Mirror Image Internet, Inc.*,
    817 A.2d 149 (Del. 2002) ........................................................................................ 14

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    7 F.3d 1110 (3d Cir. 1993) ...................................................................................... 13

*Qualcomm Inc. v. Nokia Corp.*,
    466 F.3d 1366 (Fed. Cir. 2006) ................................................................................ 11

*REDF Organic Recovery, LLC v. Karfin*,
    No. 12 Civ. 7973 (JFK), 2012 WL 5844191 (S.D.N.Y. Nov. 19, 2012) ........................... 5

*Roby v. Corp. of Lloyd's*,
    996 F.2d 1353 (2d Cir. 1993) .................................................................................. 13

*Saizhang Guan v. Uber Technologies, Inc.*,
    236 F. Supp. 3d 711 (E.D.N.Y. 2017) ...................................................................... 11

*Southeastern Pennsylvania Transportation Authority v. AWS Remediation, Inc.*,
    No. Civ.A. 03-695, 2003 WL 21994811 (E.D. Pa. Aug. 18, 2003) ................................. 8

*Second Ave. Holdings, LLC v. Latimer (In re Latimer)*,
    489 B.R. 844 (Bankr. N.D. Ala. 2013) ...................................................................... 19

*SFC New Holdings, Inc. v. Earthgrains Co. (In re GWI, Inc.)*,
    269 B.R. 114 (Bankr. D. Del. 2001) ........................................................................... 8

*Simply Fit of North America, Inc. v. Poyner*,
    579 F. Supp. 2d 371 (E.D.N.Y. 2008) ...................................................................... 13

*Smith/Enron Cogeneration Ltd. Partnership v. Smith Cogeneration International, Inc.*,
    198 F.3d 88 (2d Cir. 1999) ...................................................................................... 15

*Societe Nationale Algerienne Pour La Recherche v. Distrigas Corp.*,
    80 B.R. 606 (D. Mass. 1987) ..................................................................................... 8

*Spiers Graff Spiers v. Menako (In re Spiers Graff Spiers)*,
    190 B.R. 1001 (Bankr. N.D. Ill. 1996) ...................................................................... 17

*Spinelli v. Nat'l Football League*,
    96 F. Supp. 3d 8 (S.D.N.Y. 2015) ............................................................................ 13

*Stern v. Marshall*,
    131 S. Ct. 2594 (2011) ................................................................................ 3

*Symphony Fabrics Corp. v. Knapel*,
    No. 07 CIV. 6606 (GEL), 2008 WL 2332333 (S.D.N.Y. June 2, 2008) ......................... 13

*The Republic of Iraq v. BNP Paribas USA*,
    472 F. App'x 11 (2d Cir. 2012) ................................................................... 13

*Togut v. RBC Dain Correspondent Services (In re S.W. Bach & Co.)*,
    425 B.R. 78 (Bankr. S.D.N.Y. 2010) ............................................................. 17

*Trenton Metropolitan Area Local of the American Postal Workers Union v. U.S. Postal Service*,
    636 F.3d 45 (3d Cir. 2011)...................................................................... 1, 14

*Turi v. Main Street Adoption Services, LLP*,
    633 F.3d 496 (6th Cir. 2011) ..................................................................... 11

*Union Trust Philadelphia, LLC v. Singer Equipment Co. (In re Union Trust Philadelphia, LLC)*,
    465 B.R. 765 (Bankr. E.D. Pa. 2011), *aff'd*, 460 B.R. 644 (E.D. Pa. 2011).................... 17

## STATUTES

28 U.S.C. § 1334(b) .................................................................................. 3, 8, 9

## RULES

AAA Rule 7(a) ........................................................................................ 10

Fed. R. Bankr. P. 7008 ............................................................................... 5

Fed. R. Civ. P. 8(c)(1)................................................................................ 5

# INTRODUCTION[3]

Defendants' moving papers established that the "emphatic federal policy in favor or arbitral dispute resolution" creates a "presumption of arbitrability" mandating that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."[4]   Here, there is no doubt as to the scope of arbitrable issues because the MSA that governs the Spin-Off requires arbitration of "any dispute . . . whether sounding in contract, tort or otherwise [,] that arises out of or relates to" the "[MSA] Agreement  . . . or the transactions contemplated" thereby, and encompasses "all actions taken in furtherance of the transactions contemplated" thereby. (MSA §5.1.)  This is the paradigm of a broad arbitration provision under the controlling cases.

 Given this daunting landscape, the Trust does an about face from its Complaint and asks the Court to ignore the MSA as a merely "ancillary" contract that somehow is completely divorced from the Noble Spin-Off of assets to Paragon that is the fundamental underpinning of the Trust's claims.  To hear the Trust tell it, the challenged actions occurred before the MSA, which is simply a mop-up agreement governing peripheral post-spin arrangements between Noble and Paragon that have nothing to do with the actual Spin-Off transaction that the Trust now challenges.  Therefore, those claims do not "arise out of or relate to" the MSA.

But that argument is demonstrably wrong – and the Trust knows it.  ***The Trust's own Complaint*** correctly alleges that the MSA is the document "***effectuating the Spin-Off***" which it now attacks, and explicitly acknowledges that the "Spin-Off was ***governed*** by" the MSA and other agreements.  (Compl. ¶¶ 87, 111) (emphasis added).  The assets that were spun-off to

---

3    The Trust's opposing memorandum of law (D.I. 38) is cited as "Opp. at [page no.]."

4    *KPMG LLP v. Cocci,* 565 U.S. 18, 21 (2011) (per curiam); *Trenton Metro. Area Local of Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 636 F.3d 45, 52 (3d Cir. 2011); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Paragon are identified in Schedule 1.1(c) to the MSA, and were actually transferred to Paragon – the very act that is the *sine qua non* of the Trust's claims – pursuant to § 2.1 of the MSA. Without this MSA-effectuated transfer, there is no claim for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, or unjust enrichment, the three claims for which Defendants are moving to compel arbitration.

The Trust's temporal argument – that the events of which it complains all preceded the MSA – also fails because the MSA's Arbitration Provision specifically includes all actions "in furtherance of the transactions contemplated" by the MSA, including actions taken "***on or prior to***" the date thereof.  (MSA § 5.1) (emphasis added).  Therefore, the MSA, including its mandatory Arbitration Provision, is the critical prerequisite of all of the claims in this lawsuit. Thus, the Trust's newly-minted assertion that its "damage claims do not arise out of, touch on, depend upon, intertwine with, or have anything whatsoever to do with the MSA" (Opp. at 2) cannot be taken seriously.

The Trust's response is equally unconvincing – that the Plan confers on this Court "exclusive jurisdiction . . . to adjudicate the Noble Claims to the fullest extent permissible under law." (Opp. at 9.)  According to the Trust, Defendants waived their right to arbitrate by failing to object to this Plan provision.  Citing to non-controlling case law, the Trust concludes that the Court retained exclusive jurisdiction, not merely to determine whether the claims are arbitrable and the Individual Defendants (non-signatories to the MSA) have sufficient connection to this dispute to compel arbitration, but, rather, to render final judgment on all claims in the Complaint. (Opp. at 15.)  This argument is factually and legally flawed.

First, as a factual matter, the Noble Entities did object and insisted that the Plan provide, in three separate places, that "the Noble Entities shall retain any and all rights and defenses

against the Litigation Trust with respect to the Noble Claims." (Plan Sections 5.7 (b), (e), 10.10.) As the contractual right to arbitrate is an affirmative defense, the Noble Entities explicitly preserved their right to compel arbitration.

Second, the Trust's attempt to equate a reservation of exclusive jurisdiction to "adjudicate" the Trust's non-core claims with exclusive jurisdiction to render a final judgment on those claims is based upon a non-controlling decision that pre-dated the Supreme Court's landmark decision in *Stern v. Marshall*, 131 S. Ct. 2594, 2596 (2011). Respectfully, *Stern* and the Supreme Court's subsequent decision in *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2172 (2014), firmly establish that bankruptcy courts cannot render final judgments on non-core claims, like the Trust's arbitrable claims here, absent explicit and unequivocal consent of all affected parties. On its face, the Noble Entities' explicit preservation in the Plan of all rights and defenses, and their express reservation in previous filings that no final judgment can be entered by the Court, is conclusive on the "adjudication" point.

Moreover, it is well-established that "jurisdiction retention plans [of reorganization] cannot confer jurisdiction greater than that granted under 28 U.S.C. §1334 or 28 U.S.C. §157." *In re Resorts Int'l, Inc.*, 372 F.3d 154, 169 (3d Cir. 2004). Because § 1334 confers only "original ***but not exclusive*** jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11" 28 U.S.C. § 1334(b) (emphasis added), the Plan could not confer exclusive jurisdiction on this Court to render a final judgment on the non-core claims, as urged by the Trust.

Defendants' position is the *only* one that honors the bedrock principles that (i) all provisions of an agreement (here, the Plan's retention of jurisdiction and the Noble Entities' reservation of rights and defenses) must be harmonized whenever possible, and (ii) a court

cannot confer jurisdiction upon itself that it does not otherwise have.  As set forth below, the

Court undoubtedly can and should adjudicate that the non-signatory Individual Defendants have

a sufficient relationship to the Spin-Off Agreements and the Noble Entities to warrant allowing

the arbitrators to decide all issues of arbitrability of the Trust's claims, because the Individual

Defendants are all directors of the signatories of the Spin-Off Agreements, including the MSA,

and approved the Spin-Off on behalf of the Noble Entities.

Finally, the Court should stay this litigation pending the arbitration proceedings, as

bankruptcy courts routinely do under similar circumstances.  (*See* Op. Br. at 16).  The Trust's

contrary arguments lack force, and most of the cases it cites do not even consider whether a stay

of arbitration is appropriate.  Of the handful of cases that actually address the issue, most

involved Section 105(a) stays to prevent an arbitration from frustrating an *ongoing*

reorganization or liquidation, or rested on an antiquated view that has since been discredited by

the Supreme Court.  Indeed, several of the Trust's cases  recognize that courts generally grant

litigation stays where, as here, there is significant overlap between the parties and issues.

## ARGUMENT

I.      **THE EXCLUSIVE JURISDICTION PROVISION IN THE PLAN AND
        CONFIRMATION ORDER DOES NOT SUPERSEDE DEFENDANTS'
        CONTRACTUAL RIGHT TO ARBITRATE.**

The Trust argues that the exclusive jurisdiction provision in the Plan and Confirmation

Order – which says nothing about arbitration – overrides the parties' express agreement in the

MSA to arbitrate all claims arising from or related to the Spin-Off.  That argument fails for the

reasons set forth below.

A.    **The Plan and Confirmation Order Expressly Preserve Defendants'
Contractual Right to Arbitrate.**

1.    **Noble Negotiated Language in the Plan and Confirmation Order That
Preserves Defendants' Rights and Defenses.**

The Trust tries to have it both ways, contending that Defendants are bound by a cherry-picked jurisdiction provision in the Plan and Confirmation Order while ignoring the repeated explicit reservation of all rights and defenses which Noble insisted be included in the Plan:

- Section 5.7(b):  "Noble Entities shall retain any and all rights and defenses against the Litigation Trust with respect to the Noble Claims . . . ."

- Section 5.7(e):  "For the avoidance of doubt, the Noble Entities shall retain any and all rights and defenses against the Litigation Trust with respect to the Noble Claims . . . ."

- Section 10.10:  "[T]he Litigation Trust shall have all rights in respect of the Noble Claims as set forth in Section 5.7 of the Plan . . . subject to the Noble Entities' applicable rights and defenses against the Litigation Trust with respect to the Noble Claims."

The Confirmation Order also reaffirms that the Trust's right to prosecute the Noble Claims is "subject to the Noble Entities' applicable rights and defenses against the Litigation Trust with respect to the Noble Claims."  (Docket No. 1614 at ¶ 33.)  These "rights and defenses" include the contractual right to arbitrate under the Spin-Off Agreements.[5]  The two cases cited by the Trust are off point, because the defendants there had *not* negotiated the reservations of rights that Noble did and, therefore, those courts never had to square an exclusive

---

[5]    *See* Fed. R. Civ. P. 8(c)(1) (arbitration is an affirmative defense) (made applicable by Fed. R. Bank. P. 7008); *REDF Organic Recovery, LLC v. Kafin*, 2012 WL 5844191, at *4 (S.D.N.Y. Nov. 19, 2012) (contractual right to arbitrate is affirmative defense); *Moore v. T-Mobile USA, Inc.*, 2012 WL 13036858, at *3 (E.D.N.Y. Sept. 28, 2012); *Brill v. Prudential-Bache Sec., Inc.*, 1986 WL 6787, at *2 (S.D.N.Y. June 13, 1986) (same).   Claiming that the exclusive jurisdiction provision specifically "targets" the Noble Claims is no answer, as the reservation of rights also specifically targets these claims.

jurisdiction provision with unequivocal reservation of rights provisions.[6]  That critical distinction is dispositive.

The Trust relies heavily on *Ernst & Young* (*see* Opp. at 2, 11, 13-15), which pre-dates *Stern v. Marshall* and found that the retention of jurisdiction provision's use of the term "adjudicate" meant the court should reach a ***final*** judgment on the non-core claims at issue; and, as the plan there represented a "new" agreement between the debtor and creditors, it superseded the pre-petition agreement to arbitrate.  *See  Ernst & Young LLP v. Baker O'Neal Holdings, Inc.* 304 F.3d 753, 756 (7th Cir. 2002).  But the Supreme Court's subsequent decisions in *Stern* and *Executive Benefits* make clear that bankruptcy courts cannot issue final judgments on non-core claims absent the express unequivocal consent of the parties – and the Noble Entities clearly and unequivocally did *not* so consent.[7]  It is also well-settled that the Trust's claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust enrichment are non-core claims.[8]  Accordingly, *Ernst & Young* is unavailing.

Judge Glenn's decision in *In re MF Glob. Holdings Ltd.*, 571 B.R. 80, 90 (Bankr. S.D.N.Y. 2017), *leave to appeal denied*, 2017 WL 4898218 (S.D.N.Y. Oct. 30, 2017), rejected a similar argument on a less compelling record than here.  There, the plan of reorganization

---

[6]    *See Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753 (7th Cir. 2002); *In re All Am. Semiconductor, Inc.*, 2010 WL 2854153 (Bankr. S.D. Fla. July 20, 2010), *aff'd sub nom. Sirius Computer Sols., Inc. v. AASI Creditor Liquidating Tr.*, 2011 WL 3843943 (S.D. Fla. Aug. 29, 2011).

[7]    In addition to the express reservation of all rights and defenses to the Noble Claims in the Plan and Confirmation Order, Noble also expressly stated its objection to entry of a final judgment in previous submissions in the Paragon Chapter 11 proceeding.  *See* Certification of Counsel in Support of Order Extending Deadline to Answer Complaint (D.I. 8) at 2, n.2; Corporate Defendants' Answer and Affirmative Defenses to Adversary Complaint (D. I 18) at 2; Defendants' Motion to Dismiss in Favor of Arbitration and to Stay the Proceedings (D.I. 23) at 2; Objection of Noble Corporation plc to the Official Committee of Unsecured Creditors' Motion, Pursuant to Bankruptcy Rule 2004, for an Order Directing Production from Noble Corporation plc (Bankr. D.I. 1640) at 1, n.2; Stipulation Governing the Production and/or Disclosure of Confidential Documents and Discovery Materials (Bankr. D.I. 1971-1) at 1–2, n.3.

[8]    *See In re Allied Sys. Holdings, Inc.*, 524 B.R. 598, 605 (Bankr. D. Del. 2015) (Sontchi, J.) (claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty are non-core); *see also* Op. Br. at 14, n.9.

contained a retention of jurisdiction provision substantially similar to the one here.  Citing *Ernst & Young* and *All American Semiconductor,* the trust in *MF Global* argued that this provision superseded a pre-petition agreement to arbitrate.  The court rejected that argument and ordered arbitration.  571 B.R. at 97.  On reconsideration, the court held that the retention of jurisdiction provision

> should not be interpreted in this case to supersede a contractual arbitration provision in a pre-petition contract . . . .  If the Debtors in this case wanted to attempt to modify pre-petition contract rights to arbitrate disputes that had not resulted in a pre-confirmation adversary proceeding, at a minimum they should have said so explicitly.[9]

As the Noble Entities took even greater care than the defendants in *MF Global* to preserve their right to arbitrate, Judge Glenn's rationale applies *a fortiori* here.  *See also In re CIT Grp. Inc.*, 2012 WL 831095, at *2 (Bankr. S.D.N.Y. Mar. 9, 2012) (sending claims to arbitration because exclusive jurisdiction retention provision "should not be construed in a manner that is fundamentally at odds not only with another provision of the Plan but also with the strong 'federal policy favoring arbitration agreements.'") (citations omitted).

> **2.**    **The Court Can and Should Harmonize the Arbitration Provision and the Exclusive Jurisdiction Provision.**

Under New York law (which applies here), conflicting contract provisions should be harmonized "if reasonably possible, so as not to leave any provision without force and effect." *Isaacs v. Westchester Wood Works, Inc.*, 278 A.D.2d 184, 185 (1st Dep't 2000).  The exclusive jurisdiction and reservation of rights provisions in the Plan here are easily harmonized.  The Trust's claims for breach of fiduciary duty, aiding and abetting, and unjust enrichment must be arbitrated, but the Court retains exclusive jurisdiction to rule on a motion to compel arbitration

---

[9]    *In re MF Global Holdings Ltd.*, Chapter 11 Case No. 11-15059 (MG), Adv. Proc. No. 16-01251 (MG), Order at 3 (Bankr. S.D.N.Y. Sept. 6, 2017), ECF No. 202 (attached as Exhibit A).

and to confirm an arbitration decision.  This interpretation gives meaning to the reservation of rights, as well as the exclusive jurisdiction's caveat that the Court's jurisdiction is only "to the fullest extent permitted by law."  (Docket No. 1614-1 at §11.1(r).)  This result is fully consistent with the case law holding that an exclusive jurisdiction provision does not supersede a pre-petition contractual right to arbitrate.[10]

Similarly, *In re GWI, Inc.*, 269 B.R. 114, 118 (Bankr. D. Del. 2001) found that because the plan adopted the terms of the pre-petition agreements, the exclusive jurisdiction provision should not be read to supersede the contractual right to arbitrate.  The Trust tries to downplay this decision, asserting that the Plan rejected the Spin-Off Agreements.  But that is a distinction without a difference, because that "rejection of a contract, or even breach of it, will not void an arbitration clause."[11]  Thus, the Trusts' contract rejection argument is without merit.

### B.    The Exclusive Jurisdiction Clause Does Not Extend the Court's Jurisdiction Beyond Its Statutory Bounds.

The Trust's position also is contrary to the Third Circuit's holding that "jurisdictional retention plans cannot confer jurisdiction greater than that granted under 28 U.S.C. § 1334 or 28 U.S.C. § 157."  *In re Resorts Int'l, Inc.*, 372 F.3d at 169.  Under Section 1334, the bankruptcy

---

[10]    *See, e.g., Isaacs*, 278 A.D.2d at 185 (exclusive jurisdiction provision did not negate agreement to arbitrate because (1) there is a strong policy favoring arbitration, (2) an arbitration provision is more specific than a jurisdictional provision, and (3) conflicting provisions should be harmonized).  Similarly, the court in *Gadelkareem v. Blackbook Capital LLC*, 46 Misc. 3d 149(A), 13 N.Y.S. 3d 850 (N.Y. App. Term. 2015), found that a later contract that contained a jurisdictional provision did not supersede an earlier agreement to arbitrate, where the later contract "significantly, contained 'no express denial of the agreement to arbitrate.'"

[11]    *In re Fleming Companies, Inc.*, 325 B.R. 687, 693–94 (Bankr. D. Del. 2005) (Walrath, J.); *accord In re Monge Oil Corp.*, 83 B.R. 305, 308 (Bankr. E.D. Pa. 1988) ("Rejection [of an executory contract] does not make the contract null and void ab initio; it simply protects the estate from assuming contractual obligations on a priority, administrative basis . . . . Thus, it may not follow from §365(g)(1) that a rejection of a contract voids a compulsory arbitration clause."); *Southeastern Pa. Transp. Auth. v. AWS Remediation, Inc.*, 2003 WL 21994811, at *3 (E.D. Pa. Aug. 18, 2003); *Societe Nationale Algerienne Pour La Recherche v. Distrigas Corp.*, 80 B.R. 606, 609 (D. Mass. 1987) (similar); *Megafoods Stores, Inc. v. Flagstaff Realty Assocs.*, 60 F.3d 1031, 1034 (3d Cir. 1995) (similar).

court has "original ***but not exclusive jurisdiction*** of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b) (emphasis added).

In *Continental Airlines*,[12] Judge Walrath reconciled an exclusive jurisdiction provision with the agreement to arbitrate in the parties' pre-petition collective bargaining agreement and referred the dispute to the arbitrator after determining that the court could not expand its jurisdiction when it confirmed a plan:

> If a court does not have jurisdiction over a dispute, it cannot create that jurisdiction by simply stating it has jurisdiction in a confirmation or other order. . . . Similarly, where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization.

236 B.R. at 323 (citations omitted).

As a result, to the extent the Court has non-exclusive post-confirmation jurisdiction over the Trust's non-core claims (albeit not the power to enter a final judgment), the Plan's language alone cannot render that jurisdiction exclusive; nor can it keep arbitrable non-core claims out of arbitration. *See Hays & Co. v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 885 F.2d 1149, 1155–56 (3d Cir. 1989) (bankruptcy court has no discretion to refuse to compel arbitration of non-core claims). Accordingly, the Plan's exclusive jurisdiction provision does not supersede the Arbitration Provision in the MSA.

## II.    QUESTIONS OF ARBITRABILITY MUST BE DECIDED BY THE ARBITRATORS.

### A.    The MSA Clearly and Unmistakably Delegates Questions of Arbitrability to the Arbitrators.

The parties agree that arbitrators decide questions of arbitrability if there is "express contractual language unambiguously delegating the question of arbitrability to the arbitrator."

---

[12]    *In re Cont'l Airlines, Inc.*, 236 B.R. 318, 324 (Bankr. D. Del. 1999) (Walrath, J.), *aff'd sub nom In re Cont'l Airlines*, 2000 WL 1425751 (D. Del. Sept. 12, 2000), *aff'd* 279 F.3d 226 (3d Cir. 2002).

*See Opalinski v. Robert Half Int'l, Inc.*, 761 F.3d 326, 335 (3d Cir. 2014); Opp. at 16.  Here, the Arbitration Provision does so and expressly provides that "[t]he arbitrators shall have full power and authority to determine issues of arbitrability."  (MSA, § 5.6(b).)

The Trust argues that this language merely means that the arbitrators *may* determine arbitrability, but only until the Trust files suit, at which point, according to the Trust, only the Court can determine arbitrability.  (Opp. at 17.)  The Trust offers no authority for this nonsensical argument, which literally would mean that a party could eviscerate an arbitration provision simply by filing suit, in which case the arbitrators no longer would have the "full power and authority to determine" issues of arbitrability.[13]

New York law, which governs the MSA, also makes clear that "when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."  *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005).  As with the Arbitration Provision, the AAA Rules – selected by the parties to govern these circumstances – provide that the "arbitrator *shall have the power* to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement."  AAA Rule 7(a) (emphasis added).  The incorporation of this rule further demonstrates the parties' clear intent to delegate questions of arbitrability to the arbitrators.

The Trust's hypothesis – that the arbitrators may decide only issues that "involve interpretation, construction, or breach" of the Spin-Off Agreements – misreads the Arbitration Provision.  (Opp. at 18.)  Section 5.6(b) of the MSA states:

---

[13] The Trust also argues that a delegation clause providing that arbitrability "shall be decided by" the arbitrators is materially different from the language here.  (Opp. at 17.)  That makes no sense.  Since that language and the delegation clause here both include the mandatory term "shall," both give the arbitrators the power to decide arbitrability.

> The arbitrators shall have full power and authority to determine issues of arbitrability but shall otherwise be limited to interpreting or construing the applicable provisions of this Agreement or any Ancillary Agreement, ***and will have no authority or power to limit, expand, alter, amend, modify, revoke, or suspend any condition or provision of this Agreement or any Ancillary Agreement.***

(Emphasis added). In context, this language means only that the arbitrators cannot rewrite the parties' contracts. This interpretation also dovetails with Section 5.1 of the MSA, which provides that the Arbitration Provision applies to claims "whether sounding in contract, tort or otherwise." Accordingly, the arbitrators must necessarily rule on more than just issues of contract interpretation and construction.

Contrary to the Trust's argument, this Court need not determine if there is a "rational relationship" between the claims at issue and the Arbitration Provision. (Opp. at 19-20.) The Trust's authorities do not adopt this test, and neither the Third nor the Second Circuit has articulated such a test. The Trust's cases instead stand for the unremarkable proposition that an arbitrator decides issues of arbitrability so long as there are plausible arguments that the dispute is covered by the agreement to arbitrate.[14] In any case, Defendants certainly have presented more than plausible arguments that the Trust's claims must be arbitrated.[15]

---

[14]    In *Douglas v. Regions Bank*, 757 F.3d 460, 463 (5th Cir. 2014), the court allowed the arbitrator to decide issues of arbitrability because there were "plausible arguments that the dispute was covered by the agreement." In *Turi v. Main St. Adoption Servs., LLP*, 633 F.3d 496, 511 (6th Cir. 2011), the court held that the delegation clause in a narrow arbitration provision applied to claims that were "arguably covered by the agreement." Under the Federal Circuit's test in *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006), if the parties delegate issues of arbitrability to the arbitrators, the court may conduct a limited inquiry to determine whether the assertion of arbitrability is "wholly groundless."

[15]    The Trust also argues that Noble improperly forced Paragon to accept the Arbitration Provision – which is another way of arguing that the Arbitration Provision was procedurally unconscionable. (Opp. at 17; *see also id.* at 24 n. 10.) But under New York law, a party must show both procedural and substantive unconscionability to invalidate a contract provision. *See Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988); *Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 729 (E.D.N.Y. 2017). Because the Trust does not, and cannot, do this, it cites non-binding cases that neither apply New York law nor involve similar facts. One of those cases actually held that a procedurally unconscionable arbitration clause was enforceable because it was not substantively unconscionable. *See Allstate Ins. Co. v. Toll Bros., Inc.*, 171 F. Supp. 3d 417, 436 (E.D. Pa. 2016). Two other cases merely held that a delegation provision between sophisticated parties is enforceable. *See*

*(cont'd)*

**B.    The Individual Defendants and the Claims Against Them Are Sufficiently Related to the Contracts at Issue for the Arbitrator to Decide Issues of Arbitrability.**

The parties agree that before sending questions of arbitrability to the arbitrators, the Court must determine whether the non-signatory Individual Defendants and the claims against them have a sufficient relationship with the Spin-Off Agreements and their signatories.  *See Contec* 398 F.3d at 209.  As the *Contec* court explained,

> A useful benchmark for relational sufficiency can be found in our estoppel decision in *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, where we held that the signatory to an arbitration agreement "is estopped from avoiding arbitration with a non-signatory 'when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'"

*Id.* (quoting *Choctaw*, 271 F.3d 403, 404 (2d Cir. 2001)).  That test is easily met here.

First, the Trust's claims against the Individual Defendants are inextricably connected to the Spin-Off Agreements.  The Complaint alleges that the Individual Defendants caused and facilitated the Spin-Off, which was effectuated and governed by the MSA and the other Spin-Off Agreements.  (Compl. ¶¶ 87, 111, 181(g), 193.)  Moreover, all of the claims against the Individual Defendants are integrally connected to the transfer of assets to Paragon pursuant to the MSA.  The value of this transfer is a key issue in this case.  (Opp. at 27.)

Second, the Individual Defendants have a clear and undisputed relationship to the signatories of the MSA.  They have been named in their capacity as directors of the Noble and Paragon parent companies who (according to the Trust) carried out the terms of the Spin-Off Agreements on behalf of the signatories.  (Compl. ¶¶ 178, 181, 189, 193.)  Accordingly, the

_____

*(cont'd from previous page)*

*Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1075 (9th Cir. 2013); *Meadows v. Dickey's Barbecue Restaurants Inc.*, 144 F. Supp. 3d 1069, 1079 (N.D. Cal. 2015).  And the last decision held that the court could determine whether arbitration clauses were invalid because the arbitration remedy was illusory.  *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009).  None of these authorities provide any basis to invalidate the Arbitration Provision here.

arbitrators, not the Court, must decide whether the Trust's claims against the Individual

Defendants may be arbitrated.  *See Simply Fit of N. Am., Inc. v. Poyner*, 579 F. Supp. 2d 371,

382 (E.D.N.Y. 2008) ("It is indisputable that non-signatory agents of an entity may move to

compel arbitration.").[16]

Finally, even if the Court, rather than arbitrators, determines whether the claims against

the Individual Defendants are arbitrable, controlling New York law dictates that they are.[17]

## III.    THE TRUST'S STATE LAW CLAIMS ARE ARBITRABLE.

Regardless of who decides the issue, the Trust's claims manifestly are arbitrable.

### A.    The Arbitration Provision Governs Any Claims That Arise Out of or Relate to the MSA and the Transactions It Contemplated.

The Arbitration Provision requires arbitration of "any dispute . . . whether sounding in

contract, tort or otherwise[,] that arises out of or relates to" the "Agreement . . . or the

transactions contemplated hereby."  (MSA § 5.1.)  This is the paradigm of a broad arbitration

clause under New York law.  *See JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 172-73 (2d

Cir. 2004) (collecting cases); *In re Microbilt Corp.*, 588 Fed. App'x 179 (3d Cir. 2014); *Spinelli

v. Nat'l Football League*, 96 F. Supp. 3d 81, 100 (S.D.N.Y. 2015); *Symphony Fabrics Corp. v.

Knapel*, 2008 WL 2332333, at *5 (S.D.N.Y. June 2, 2008).  In *JLM Industries*, for instance, the

---

[16]    Neither *Gerszberg v. Li & Fung (Trading) Ltd.*, 215 F. Supp. 3d 282 (S.D.N.Y. 2016), nor *The Republic of Iraq v. BNP Paribas USA*, 472 F. App'x 11 (2d Cir. 2012), changes this conclusion.  (Opp. at 21–22.)  Those cases involved non-signatories with no clear connection to the signatories of the arbitration agreement and therefore argued that they were third-party beneficiaries of the agreements containing the arbitration provisions.  The Individual Defendants here need not make that claim to enforce the Arbitration Provision under New York law. *See Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993) (employees need not be signatories or third-party beneficiaries to rely on arbitration clause signed by employer); *Covina 2000 Ventures Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2007 WL 2154186, at *1 (S.D.N.Y. July 26, 2007) (non-signatory could compel arbitration of claims against him under agreement to which former employer was party.).

[17]    *See Degraw Const. Grp., Inc. v. McGowan Builders, Inc.*, 152 A.D.3d 567, 58 N.Y.S.3d 152 (N.Y. App. Div. 2017) (non-signatory officers and employees could enforce arbitration clause because corporation could act only through its officers and employees, and alleged misconduct attributed to officers and employees related to their behavior as such); *Hirschfeld Prods., Inc. v. Mirvish*, 88 N.Y.2d 1054, 673 N.E.2d 1232 (1996); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir. 1993).

Second Circuit held that an arbitration provision that governed disputes "arising out of" the agreement applied to claims resulting "from the fact that [the party] entered into the" agreement. 387 F.3d at 175.

Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). The Third Circuit has long enforced this "presumption of arbitrability." *See, e.g.*, *Trenton Metro. Area Local of the Am. Postal Workers Union v. U.S. Postal Serv.*, 636 F.3d 45, 52 (3d Cir. 2011). Thus, "[a]n order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *First Liberty Inv. Grp. v. Nicholsberg*, 145 F.3d 647, 653 (3d Cir. 1998). Further, "[i]f the allegations underlying the claims 'touch matters' covered by an arbitration clause in a contract, then those claims must be arbitrated, whatever the legal labels attached to them." *Brayman Constr. Corp. v. Home Ins. Co.*, 319 F.3d 622, 626 (3d Cir. 2003) (citations omitted). Here, there is no question that the Trust's claims are covered by the Arbitration Provision.[18]

### B. The Trust's State-Law Claims Arise Out of and Touch on the MSA.

The Trust concedes that arbitration is required if the claims "touch on" the underlying contract. (Opp. at 24.) The Trust's claims all arise out of the Spin-Off. Although it accuses Defendants of "misdirection" for asserting that the Spin-Off was "effectuated through five

---

[18]    The Trust also argues that its claims do not meet the more stringent standard set forth in *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 151-52 (Del. 2002), because they are not "intertwined" with the MSA or the other Spin-Off Agreements. (Opp. at 26–30.) But *Parfi* was decided under Delaware law, which does not apply here, and its arbitration provision covered only disputes "arising out of or in connection with this Agreement, or the breach, termination or invalidity thereof." Even under *Parfi*'s more stringent standard, the Trust's claims must be arbitrated because they would not "be assertable had there been no . . . Agreement." *Id.* at 157.

14

principal agreements [including the MSA]," the Trust's ***own complaint*** characterizes the MSA as

the document "effectuating the Spin-Off." (Compl. ¶ 87.) The Trust also concedes that "[t]he

Spin-Off was governed by" the MSA and the other Spin-Off Agreements. (*Id.* ¶ 111.)

The Trust now tries to backpedal from those admissions, characterizing the MSA and the

other Spin-Off Agreements as mere "administrative" and "technical" contracts addressing such

issues as intellectual property licenses and indemnification. (Opp. at 6-7, 27.) While admitting

that the "claims do indeed relate to the Spin-Off," the Trust asserts that they do not "touch upon

or in any way implicate" these agreements. (Opp. at 26.) But as the Trust admits, "[a]ll of the

Trust's claims center on the value Paragon received during the Spin-Off." (Opp. at 27.)

The primary value that Paragon received in the Spin-Off was a fleet of standard

specification rigs. Those rigs, which are set forth on Schedule 1.1(c) to the MSA and are defined

by the MSA as the "Paragon Assets," were transferred to Paragon pursuant to Section 2.1 of the

MSA. Absent the MSA, those rigs would not have been transferred, the Spin-Off would not

have been effectuated, and the Trust's claims would not exist. In these circumstances, courts

routinely hold that the claims must be submitted to arbitration. *See, e.g.*, *JLM Indus.*, 387 F.3d at

175; *Paramedics Electromedicina Comercial, LTDA. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d

645, 654 (2d Cir. 2004) (damages claim "touche[d] matters" covered by agreements that

governed relationship between parties and transactions at issue).

The Trust's argument that certain relevant events occurred before the MSA was executed

does not change the analysis. (Opp. at 28-29.) The Arbitration Provision expressly covers "all

actions taken in furtherance of the transactions contemplated" by the MSA, including those taken

"***on or prior to the date***" the MSA was signed. (MSA §5.1) (emphasis added). It is well-settled

that arbitration clauses can cover events occurring before the date of the agreement to arbitrate.

15

*See Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 99 (S.D.N.Y. 1999); *Coenen v. R. W. Pressprich & Co.*, 453 F.2d 1209, 1212 (2d Cir. 1972). The Trust's interpretation would read the temporal language in the Arbitration Provision out of the contract, which is impermissible. *See ACE Sec. Corp. v. DB Structured Prods., Inc.*, 25 N.Y.3d 581, 597 (2015).

The Trust also mistakenly alleges that the Individual Defendants cannot enforce the Arbitration Provision because they fail the relational sufficiency test. (Opp. at 29.) But that test does not concern whether non-signatories can enforce an arbitration provision; it relates solely to whether they can enforce a clause delegating issues of arbitrability to the arbitrators. As explained above, non-signatory officers and directors can enforce an arbitration provision of an agreement signed by their employer. *See* Section II(B).

## IV.    THE COURT SHOULD STAY THE REMAINING CLAIMS PENDING RESOLUTION OF THE ARBITRATION.

The Trust's arguments to stay the not-yet-commenced arbitration, instead of briefly staying the existing litigation, have no basis in controlling law and ignore the strong federal policy favoring enforcement of arbitration agreements. With no persuasive argument to depart from the normal course, the Court should stay litigation of the remaining claims in this Court so that arbitration of the arbitrable claims may proceed in the most efficient manner.[19]

---

[19]    As the Trust has applied for a stay, rather than dismissal, of the arbitrable claims pending arbitration (*see* Opp. at 30–31 n.15.), a stay of the arbitrable claims pending the resolution of arbitration of those claims is appropriate. *See Lloyd v. HOVENSA, LLC.*, 369 F.3d 263, 269 (3d Cir. 2004).

### A. Staying Arbitration Would Effectively Deprive Defendants of Their Bargained-for Right to Arbitrate.

In arguing that the Court should stay the arbitration, the Trust stitches together cases from a variety of jurisdictions involving a wide spectrum of legal issues. In fact, none of the Trust's authorities, most of which are irrelevant, supports a stay of arbitration here.[20]

Once these cases are stripped away, the Trust's argument hinges on four decisions, three of which stayed arbitration under Section 105(a) of the Code.[21] But as the court held in *S.W. Bach*, a bankruptcy court cannot stay an arbitration under Section 105(a) unless it finds that "the claims threaten to thwart or frustrate the debtor's reorganization efforts, and that the injunction is important for effective reorganization." 425 B.R. at 99. Here, there is no such risk, because the Debtors' Plan already has been confirmed.[22] Thus, Section 105(a) does not apply.[23]

---

[20] The courts in several cases considered whether to stay the litigation, not the arbitration. *See Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004); *F.D. Imp. & Exp. Corp. v. M/V REEFER SUN*, 248 F. Supp. 2d 240, 250–51 (S.D.N.Y. 2002); *Am. Shipping Line, Inc. v. Massan Shipping Industries Inc.*, 885 F. Supp. 499 (S.D.N.Y. 1995); *E. W. Bank v. Bingham*, 992 F. Supp. 2d 1130, 1136 (W.D. Wash. 2014). Other decisions denied motions to compel arbitration and thus never reached the stay issue. *See In re Oakwood Homes Corp.*, 2005 WL 670310, at *4–5 (Bankr. D. Del. Mar. 18, 2005); *In re Gandy*, 299 F.3d 489, 500 (5th Cir. 2002). Yet other decisions denied without prejudice motions to compel arbitration or to stay the litigation to allow for limited discovery, and did not address whether to stay arbitration through the final resolution of the litigation. *See In re APF Co.*, 264 B.R. 344, 361, 365 (Bankr. D. Del. 2001); *In re AstroPower Liquidating Trust*, 335 B.R. 309, 326 (Bankr. D. Del. 2005). And one district court applied Rule 65's preliminary injunction standard to stay arbitration under the All Writs Act. *See Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 221 (E.D.N.Y. 2013). The Trust does not cite, and Defendants are not aware of, any precedent for a bankruptcy court using the All Writs Act to stay or enjoin arbitration. In any event, the Trust has not attempted to satisfy Rule 65's requirements for a preliminary injunction.

[21] *See In re S.W. Bach & Co.*, 425 B.R. 78, 99 (Bankr. S.D.N.Y. 2010) (quoting *McHale v. Alvarez*, 397 B.R. 670, 684 (Bankr. S.D.N.Y. 2008)); *In re E & G Waterworks, LLC*, 571 B.R. 500, 509 (Bankr. D. Mass. 2017); *In re Residential Capital LLC*, 563 B.R. 756 (Bankr. S.D.N.Y. 2016).

[22] *See, e.g.*, *In re Catholic Diocese of Wilmington, Inc.*, 484 B.R. 629, 639 (D. Del. 2012) (cautioning that § 105(a) may be a basis for extending relief to non-debtors "if and only if . . . there [is a] danger of imminent, irreparable harm to the estate or the debtor's ability to reorganize") (citation omitted); *In re Union Tr. Phila., LLC*, 465 B.R. 765, 771–72 (Bankr. E.D. Pa. 2011) (employing same test); *In re Spiers Graff Spiers*, 190 B.R. 1001, 1012 (Bankr. N.D. Ill. 1996) (similar).

[23] The court in *In re Residential Capital LLC*, 563 B.R. 756, similarly relied on the *Alvarez* test set forth in *Bach* but omitted the threshold requirement that the court must find that the claims threaten to frustrate the reorganization efforts before enjoining claims against non-debtors.

This leaves the Trust with an outdated case holding that the court could stay arbitration to control its docket.  *See Dickinson v. Heinold Sec., Inc.*, 661 F.2d 638, 644 (7th Cir. 1981).  However, the Supreme Court, in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 222 (1985), disagreed with *Dickinson*'s approach and held that "neither a stay of proceedings, nor joined proceedings, is necessary to protect the federal interest in the federal-court proceeding."  Courts have since recognized that the potential impact of arbitration on federal proceedings does not warrant a stay of arbitration.[24]

In short, the Trust cites no applicable law supporting a stay of arbitration.  More fundamentally, staying arbitration because of a risk of collateral estoppel, inconsistent judgments, or inefficiencies is contrary to the strong federal policy (recognized by the Supreme Court and the Third Circuit) favoring contractually agreed-upon arbitration despite the potential impact on federal court proceedings.  As the Supreme Court made clear in *Dean Witter*, "the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims . . . even where the result would be the possibly inefficient maintenance of separate proceedings in different forums."  470 U.S. at 217.  Likewise, in *Hays*, the Third Circuit emphasized the need to prioritize arbitration rights despite the potential effect on bankruptcy matters:  "[E]ven if there were some potential for an adverse impact on the core proceeding, such as inefficient delay, duplicative proceedings, or collateral estoppel effect, Hayes [sic] has not shown that it would be substantial enough to override the policy favoring arbitration."  885 F.2d at 1158.

The Trust's claim that it would be "disproportionally disadvantaged" by discovery under the Arbitration Provision rings hollow because it already has reviewed sweeping Rule 2004 and

---

[24]    *See Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 2001 WL 1397310, at *6 n.2 (S.D. Ind. Sept. 28, 2001), *aff'd*, 304 F.3d 753 (7th Cir. 2002); *see also Giles v. Blunt, Ellis & Loewi, Inc.*, 845 F.2d 131, 134 (7th Cir. 1988) (vacating district court order staying arbitration).

confirmation discovery from multiple parties.  (Opp. at 34.)  And the Trust's suggestion that arbitrators will lack the required knowledge/expertise is baseless – arbitrators routinely resolve complex commercial disputes involving claims such as breach of fiduciary duty and unjust enrichment.

**B.    Staying the Litigation Will Promote Judicial Economy and Other Policies Favoring Arbitration.**

The Trust does not disagree that the arbitrable and non-arbitrable claims substantially factually overlap.  (Opp. at 35)  This fact strongly supports staying the litigation in this Court of the non-arbitrable claims.[25]

Unable to offer contrary controlling authority on these issues, the Trust tries to distinguish *EXDS* and *Hagerstown* by characterizing the fraudulent transfer claims there as "tangential."  (Opp. at 35-36.)   Neither of those courts so found.  Rather, in determining that a  stay of litigation was appropriate, the *EXDS* court noted that, as here, "the factual underpinnings of [the fraudulent transfer claim] are essentially those underlying [the arbitrable claims]."  316 B.R. at 826.  As for *Hagerstown*, the court found a stay was appropriate because the fraudulent conveyance claims were directly connected to the contract at issue and shared common questions of fact.  So too here – for both the arbitrable and non-arbitrable claims, the Trust will seek to prove the value of the rigs that were transferred in the MSA.  *See Hagerstown*, 277 B.R. at 208.[26]

---

[25]   *See, e.g.*, *In re Fleming Cos., Inc.*, 325 B.R. 687, 695 (Bankr. D. Del. 2005); *In re EXDS, Inc.*, 316 B.R. 817, 826 (Bankr. D. Del. 2004); *In re Hagerstown Fiber Ltd. P'ship*, 277 B.R. 181, 208 (Bankr. S.D.N.Y. 2002).

[26]   The non-Delaware cases on which the Trust relies actually support a stay of litigation.  (Opp. at 35–37.)  In *In re Latimer*, 489 B.R. 844, 875 (Bankr. N.D. Ala. 2013), the court stayed the litigation in favor of arbitration because it was "concerned that allowing discovery to proceed simultaneously in this proceeding and in the arbitration will create a potential source of conflict between the arbitrator and this tribunal."  In *Lepera v. ITT Corp.*, though the court declined to stay a "clearly separate" claim that did "not significantly overlap" with the arbitrable claims, it noted that "[w]here significant overlap exists between parties and issues, courts generally

*(cont'd)*

The Trust also contends that Defendants must "make out a clear case of hardship or inequity in being required to go forward" with the litigation during the pendency of the arbitration.  (Opp. at 36 (citing *E. W. Bank v. Bingham*, 992 F. Supp. 2d 1130, 1136 (W.D. Wash. 2014)).)  But this standard applies to stays of litigation among non-arbitrating parties, not to parties who contractually agreed to arbitrate their claims.  *See E. W. Bank*, 992 F. Supp. 2d at 1136 (setting forth test for whether "to stay litigation among the non-arbitrating parties pending the outcome of the arbitration").  Not surprisingly, this test was not employed in staying the non-arbitrable claims in *EXDS*, nor is it relevant here.  *See EXDS*, 316 B.R. at 826.

Here, staying the litigation pending arbitration of significantly overlapping claims that will "have some effect on the non-arbitrable claims" will promote judicial efficiency, avoid the risk of inconsistent judgments, further the strong federal policy in favor of arbitration, and effectuate the parties' contractually agreed-upon arbitration provisions.  *Cf. Lepera*, 1997 WL 535165, at \*8.  The Trust chose to bring claims that are subject to mandatory arbitration.  It should now have to proceed in that forum.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court stay the Trust's claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust enrichment in favor of arbitration and stay the remaining claims until the arbitration and any related proceedings are completed.

---

*(cont'd from previous page)*
stay the entire action pending arbitration" and that "[w]here the arbitrable claims overwhelm ***or will have some effect on the non-arbitrable claims***, the power to stay the non-arbitrable claims should be exercised."  1997 WL 535165, at \*8 (E.D. Pa. Aug. 12, 1997) (emphasis added) (citations omitted).  Because the Trust agrees that the two sets of claims here overlap (Opp. at 35), *Lepera* supports a stay.

Dated:  May 1, 2018
Wilmington, Delaware

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Anthony W. Clark*
Anthony W. Clark (ID: 2051)
Stephen J. Della Penna (ID: 6103)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone:  (302) 651-3000
Facsimile:  (302) 651-3001

- and -

George A. Zimmerman *(admitted pro hac vice)*
Lauren E. Aguiar *(admitted pro hac vice)*
Four Times Square
New York, New York 10036-6522
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000

- and -

Wallis M. Hampton *(admitted pro hac vice)*
1000 Louisiana Street, Suite 6800
Houston, Texas 77002-5026
Telephone:  (713) 655-5116
Facsimile:  (713) 483-9116

*Counsel for Defendants*