## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| PARAGON OFFSHORE PLC, | Bankr. Case No. 16-10386 (CSS) |
| Debtor. | |
| PARAGON LITIGATION TRUST, | |
| Plaintiff, | |
| v. | |
| NOBLE CORPORATION PLC, NOBLE CORPORATION HOLDINGS LTD, NOBLE CORPORATION, NOBLE HOLDING INTERNATIONAL (LUXEMBOURG) S.à r.l., NOBLE HOLDING INTERNATIONAL (LUXEMBOURG NHIL) S.à r.l., NOBLE FDR HOLDINGS LIMITED, MICHAEL A. CAWLEY, JULIE H. EDWARDS, GORDON T. HALL, JON A. MARSHALL, JAMES A. MACLENNAN, MARY P. RICCIARDELLO, JULIE J. ROBERTSON, and DAVID WILLIAMS, | Adv. Proc. No. 17-51882 (CSS) |
| Defendants. | Hearing Date:  To Be Determined |

## PARAGON LITIGATION TRUST'S OPPOSITION TO DEFENDANTS' MOTION PURSUANT TO BANKRUPTCY RULE 7016(b) AND 11 U.S.C. § 157(b)(3) FOR AN ORDER DETERMINING THAT THIS COURT MAY ONLY ENTER PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH RESPECT TO COUNTS I THROUGH VIII OF THE COMPLAINT

01:23789592.1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

**Preliminary Statement**................................................................................................ 1

**Background** .............................................................................................................. 3

**Argument** ................................................................................................................ 5

I.    The Court Has Final Adjudicatory Authority Over
Counts I Through V Of The Complaint ................................................................ 5

II.   The Court Has Final Adjudicatory Authority Over Count VIII Of
The Complaint To The Extent It Is Not Subject To Arbitration........................... 8

III.  The Defendants Consented To The Court's Entry Of
Final Judgments On All Counts.......................................................................... 10

**Conclusion** .............................................................................................................. 13

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Executive Benefits Ins. Agency v. Arkison*,
134 S. Ct. 2165 (2014)..................................................................................8

*Fed'n of Puerto Rican Orgs. of Brownsville, Inc. v. Howe*,
157 B.R. 206 (E.D.N.Y. 1993) .....................................................................11

*Granfinanciera, S. A. v. Nordberg*,
492 U.S. 33 (1989)..........................................................................................7

*Halper v. Halper*,
164 F.3d 830 (3d Cir. 1999)...........................................................................9

*In re Bartock*,
398 B.R. 135 (Bankr. W.D. Pa. 2008) .........................................................11

*In re DBSI, Inc.*,
467 B.R. 767 (Bankr. D. Del. 2012) (PJW)..................................6, 7, 8, 9

*In re DBSI, Inc.,* Adv. Proc. No. 10-54524 (PJW),
2012 WL 1078079 (Bankr. D. Del. Mar. 30, 2012)......................................9

*In re Direct Response Media, Inc.*,
466 B.R. 626 (Bankr. D. Del. 2012) (KG)...............................................6, 7

*In re G.S.F. Corp.*,
938 F.2d 1467 (1st Cir. 1991) *abrogated in part on other grounds by*
*Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 112 S.Ct. 1146 (1992) ...........................11

*In re Insilco Techs., Inc.*,
330 B.R. 512 (Bankr. D. Del. 2005) (KJC) ..................................................9

*In re Nat'l Serv. Indus., Inc.,* Adv. Proc. No. 14-50377 (MFW),
2015 WL 3827003 (Bankr. D. Del. June 29, 2015)......................................8

*In re New Century TRS Holdings, Inc.*,
544 F. App'x 70 (3d Cir. 2013) ....................................................................7

01:23789592.1

*In re PennySaver USA Publ'g, LLC,*
   587 B.R. 445 (Bankr. D. Del. 2018) (CSS) ........................................................6, 7

*In re Tribune Media Co.,*
   902 F.3d 384 (3d Cir. 2018)...............................................................10, 11, 13

*In re USDigital, Inc.,*
   461 B.R. 276 (Bankr. D. Del. 2011) (CSS) ...................................................5, 6, 7

*In re Winstar Commc'ns, Inc.,*
   554 F.3d 382 (3d Cir. 2009)...............................................................................9

*Stern v. Marshall,* 564 U.S. 462, 503 (2011)...................................................1, 5, 7, 8

*Wellness Int'l Network, Ltd. v. Sharif,*
   135 S. Ct. 1932 (2015).................................................................................7, 10

STATUTES

11 U.S.C. § 157(b)(3) ...........................................................................................1

28 U.S.C. § 157(b)(1) ...........................................................................................5

28 U.S.C. § 157(b)(2) .........................................................................................5, 6

Bankruptcy Code Chapter 11 ..............................................................................2, 3, 4

Bankruptcy Code § 502(h)......................................................................................12

Bankruptcy Code § 548 .......................................................................................3, 8

01:23789592.1

Plaintiff Paragon Litigation Trust (the "Trust") opposes *Defendants' Motion Pursuant to Bankruptcy Rule 7016(b) and 11 U.S.C. § 157(b)(3) for an Order Determining that this Court May Only Enter Proposed Findings of Fact and Conclusions of Law with Respect to Counts I Through VIII of the Complaint* [Adv. D.I. 94][1] (the "Motion") on the following grounds.

## PRELIMINARY STATEMENT

The Defendants claim that the Court has no authority to enter a final judgment on any of the eight counts in the Trust's Complaint, including the five fraudulent transfer causes of action they concede are statutory core claims.

As to those five core claims, the Defendants urge the Court to read *Stern v. Marshall* expansively. They argue that *Stern* precludes the Court from entering a final judgment on any common law claim that might augment the bankruptcy estate. But *Stern* only involved the single "isolated" category of compulsory state law counterclaims, and the Supreme Court emphasized that its conclusion that bankruptcy courts could not finally adjudicate such claims "did not change all that much" about general bankruptcy jurisdiction and procedure. As a result, this Court and others within this District have declined to apply *Stern* as broadly as the Defendants propose and have concluded that bankruptcy courts have full authority to finally adjudicate fraudulent transfer claims like those asserted by the Trust.

Moreover, and in any event, the Defendants have consented to the Court's final adjudication of *all* the Trust's causes of action, including the state law causes of action for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust enrichment (the

---

[1]    Docket items in the main bankruptcy case are cited as "Bk. D.I." and docket items in this adversary proceeding are cited as "Adv. D.I."  "Memo." is the *Memorandum of Law* in support of the Motion [Adv. D.I. 95].  Capitalized terms not defined here have the meanings given to them in the Memo and the Complaint [Adv. D.I. 5].

"damages claims").  For the first year of the Paragon chapter 11 cases, the Defendants pursued approval of a settlement that would have released them from all liability to the bankruptcy estate, including liability on the fraudulent transfer and damage claims now asserted by the Trust.  In the settlement agreement providing for such release (the "Noble Settlement Agreement"), Noble agreed (on behalf of the Defendants) to the "exclusive jurisdiction" of the Court over any claim relating to the settlement and waived all rights to a jury trial on such claims.  That consent is still valid even though the settlement is no longer viable.  The Defendants' tactical gamesmanship in submitting to the Court's jurisdiction when it was favorable for them to do so, and then attempting to retract the consent once the releases were off the table, cannot be countenanced.

Further, the Defendants' consent to the Court's exclusive jurisdiction over any claims relating to the spin-off (the "Noble Claims") continued even after the Noble Settlement Agreement was no longer valid and the claims were preserved for prosecution by the Trust.  As detailed in Trust's *Memorandum of Law in Opposition to Defendants' Motion to Dismiss in Favor of Arbitration and to Stay the Proceedings* [Adv. D.I. 38] (the "Arbitration Opposition"), Paragon's plan of reorganization expressly provides the Court with "exclusive jurisdiction" to "adjudicate the Noble Claims to the fullest extent permissible under law."  Plan § 11.1(r); Arbitration Opposition at 9.  Noble was well aware of this provision before confirmation and did not contest it.  Indeed, the Defendants never objected to the Court's retention of jurisdiction until well after the plan was confirmed and became effective.  Under governing Supreme Court and Third Circuit precedent, the Defendants' conduct served to consent to this Court's final adjudication of the Noble Claims.

## BACKGROUND[2]

On February 14, 2016, Paragon Offshore plc ("Paragon") and certain of its affiliates (the "Debtors") filed voluntary petitions under chapter 11 of the Bankruptcy Code.

Shortly before the petition date, Paragon and Noble Corporation plc ("Noble") negotiated a settlement, to be implemented through a plan of reorganization, pursuant to which Paragon agreed to release Noble (and its affiliates, officers and directors) of any claims relating to the spin-off.  That settlement was memorialized in a "Definitive Settlement Agreement" dated as of April 29, 2016, which was filed on the docket in the bankruptcy case at D.I. 399-4 and is attached here as *Exhibit A*.

The Noble Settlement Agreement provided for a full general release, as of the effective date of the proposed plan, in favor of Noble and all of the Defendants in this adversary proceeding for all liability "in any way arising out of, relating to, or in connection with any matter relating to the Spin-Off."  Noble Settlement Agreement § 2.1(a).  The proposed release specifically "include[d] any Noble Releasee that acted as a director of Paragon in such Releasee's capacity as a director of Paragon" and "any fraudulent transfer or similar claims arising under section 548 of the Bankruptcy Code or any similar state or foreign statue."  *Id.*

Because the release was to be embodied in and implemented by a plan of reorganization to be confirmed by the Court, Noble agreed that "the Bankruptcy Court shall have exclusive jurisdiction over this Agreement."  *Id.* § 9.6.  Noble also agreed that, because "any controversy which may arise under this Agreement is likely to involve complicated and difficult issues," it would "irrevocably and unconditionally waive any right [it] may have to a trial by jury with

---

[2]    Further relevant background is set forth in the Complaint and Trust's Arbitration Opposition.

01:23789592.1

respect to any litigation directly or indirectly arising out of or relating to this Agreement, or the transactions contemplated by this Agreement." *Id.* § 9.7.

In the bankruptcy case, certain creditors objected to the Noble settlement. Ultimately, after the Court declined to confirm the proposed plan providing for implementation of the Noble Settlement Agreement, Paragon proposed a plan that eliminated the Noble settlement and, instead, provided for the Trust to investigate and prosecute claims against Noble and the Defendants as warranted.

At the exact same time, Paragon's plan of reorganization was modified to expand the Court's exclusive jurisdiction "to adjudicate the Noble Claims to the fullest extent permitted by the law." Plan § 11.1(r); [Bk. D.I. 1389-1 (April 21, 2017 plan amendment)]. While the Defendants insisted that a reservation of certain rights and defenses related to the Noble Claims be inserted into the Plan, they did *not* object the Court's exclusive jurisdiction to adjudicate the Noble Claims. *See* Arbitration Opposition at 9-11. Thereafter, on June 7, 2017, the Court entered an order [Bk. D.I. 1614] (the "Confirmation Order") approving the *Fifth Joint Chapter 11 Plan of Paragon Offshore PLC and its Affiliated Debtors* [Bk. D.I. 1614, Ex. A] (the "Plan"). The Confirmation Order and Plan provide for the Court to have exclusive jurisdiction to adjudicate the Trust's claims against Noble and the Defendants to the fullest extent permitted by law. Confirmation Order ¶¶ OO, 45; Plan § 11.1(r).

The Trust filed its Complaint on December 15, 2017. The Complaint asserts five causes of action for avoidance and recharacterization of the $1.7 billion in fraudulent transfers Paragon made to Noble (Counts I-V) and the three damage claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust enrichment (Counts VI-VIII).

**ARGUMENT**

I.    **THE COURT HAS FINAL ADJUDICATORY AUTHORITY OVER COUNTS I THROUGH V OF THE COMPLAINT**

In Title 28, Congress empowered bankruptcy courts to "hear and determine" – and enter final judgments in – all core proceedings.  28 U.S.C. § 157(b)(1).  The Defendants concede that, as actions to avoid and recover fraudulent transfers, "Counts I through V [of the Trust's Complaint] are statutory core matters."  Memo. at 6; *see* 28 U.S.C. § 157(b)(2)(H) (core proceedings include "proceedings to determine, avoid, or recover fraudulent conveyances").

Invoking *Stern v. Marshall*, however, the Defendants insist that section 157(b) is unconstitutional as applied to those core claims.  Memo. at 6-9.  They urge the Court to read *Stern* broadly to cover each and every "claim[] for damages at common law designed solely to augment the estate."  *Id.* at 2.  This misreads *Stern*, ignores this Court's decision in *USDigital*, and neglects the weight of other authority in this District.

In *Stern*, the Supreme Court issued a limited ruling – "[w]e conclude today that Congress, in one isolated respect, exceeded" the Constitutional limitation on the exercise of judicial power by non-Article III judges when it empowered bankruptcy courts "to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." 564 U.S. 462, 503 (2011).  The Supreme Court deemed this a "narrow" holding that did not "meaningfully change[] the division of labor [between bankruptcy and district courts] in the current statute" and noted that "our decision today does not change all that much."  *Id.* at 502.

Given the narrowness of that holding, this Court specifically has limited *Stern* to its facts: adjudication of "a state law counterclaim to a proof of claim filed by the trustee."  *In re USDigital, Inc.*, 461 B.R. 276, 292 (Bankr. D. Del. 2011) (CSS).  "It is simply incredulous to conclude that the Supreme Court contemplated that its holding would transform *all* state

common law claims from core under the statute to non-core under the Constitution while stating that its ruling would not meaningfully change the division of labor in the current statute!" *Id.* at 290 (emphasis in original). Thus, "[t]o broadly apply *Stern's* holding is to create a mountain out of a mole hill. The Supreme Court was concerned with a challenge 'that may seem innocuous at first blush' to the separation of powers 'where Congress has conferred the judicial power outside Article III only over certain counterclaims in bankruptcy.' Its opinion should be read in such a spirit and its numerous attempts to limit its scope should be respected. To expand the reach of the opinion farther is to do violence to its plain meaning." *Id.* at 292 (footnotes omitted).

Judge Walsh and Judge Gross subsequently adopted the Court's reasoning specifically in the context of fraudulent transfer adversary proceedings. *See In re DBSI, Inc.*, 467 B.R. 767, 773 (Bankr. D. Del. 2012) (PJW) ("I find that *Stern* is not applicable to this action, as it does not involve a state-law counterclaim by the estate. Consequently, I conclude that I can enter a final judgment on the core preference, post-petition transfer, fraudulent transfer, and unjust enrichment claims."); *In re Direct Response Media, Inc.*, 466 B.R. 626, 644 (Bankr. D. Del. 2012) (KG) ("The Court adopts the Narrow Interpretation and holds that *Stern* only removed a non-Article III court's authority to finally adjudicate one type of core matter, a debtor's state law counterclaim asserted under § 157(b)(2)(C). By extension, the Court concludes that *Stern* does not remove the bankruptcy courts' authority to enter final judgments on other core matters, including the authority to finally adjudicate preferences and fraudulent conveyance actions like those at issue before the Court."). Then, earlier this year, this Court followed suit and specifically held that *Stern* does not bar final adjudication of fraudulent conveyance claims. *In*

*re PennySaver USA Publ'g, LLC*, 587 B.R. 445, 450 n.2 (Bankr. D. Del. 2018) (CSS) (fraudulent

transfer claims are not *Stern* claims).[3]

In other contexts, the Supreme Court itself and the Third Circuit similarly have concluded

that a narrow interpretation of *Stern* is appropriate.  In *Wellness International* (discussed below),

the Supreme Court held that "[a]n expansive reading of *Stern* . . . would be inconsistent with the

opinion's own description of its holding."  *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct.

1932, 1946 (2015).  And in *New Century*, the Third Circuit cabined *Stern* to its facts, concluding

that bankruptcy courts may enter final judgments in proceedings regarding the settlement of a

claim because, among other things, *Stern*'s holding expressly was limited to the "isolated" issue

of state law counterclaims.  *In re New Century TRS Holdings, Inc.*, 544 F. App'x 70, 73 (3d Cir.

2013).

Despite all this, the Defendants assert that *Stern* "affirmed" the "principle" from

*Granfinanciera, S. A. v. Nordberg*, 492 U.S. 33 (1989), that "Congress could not constitutionally

assign resolution of [a] fraudulent conveyance action to a non-Article III court."  Memo. at 6

(quoting *Stern*, 564 U.S. at 492 n.7).  But *Stern* did not "affirm" *Granfinanciera* (which involved

the right to a jury trial).  It recognized that *Granfinanciera* was not at issue in the case.  564 U.S.

at 492 n.7 ("neither party asks us to reconsider the public rights framework for bankruptcy" as

set forth in *Granfinanciera*).  Rather, *Stern* determined that the state law counterclaim at issue

(not a fraudulent transfer claim) did not constitute a public right that would be assignable to a

---

[3]  The Defendants ignore *USDigital* and *Direct Response* but attempt to distinguish *PennySaver*
on the ground that it was "a case where the defendants had filed proofs of claim."  Memo.
at 8 n.6.  But the Court's opinion says nothing about the filing of a claim.  To the contrary, it
notes that "[t]he Defendants have explicitly not consented to entries of final orders or
judgments by this Court."  *PennySaver*, 587 B.R. at 450 n.2.  Moreover, in *DBSI*, Judge
Walsh specifically held that the filing of a claim is *not* a prerequisite to the Court's ability to
enter a final judgment on a fraudulent transfer claim.  *DBSI*, 467 B.R. at 773 n.9.

non-Article III court because, among other things, it did not derive from "a right of recovery created by federal bankruptcy law" or "flow from a federal statutory scheme." *Stern*, 564 U.S. at 493, 498.

In contrast, as Judge Walsh has observed, "a fraudulent transfer action under § 548, which is expressly created by the Bankruptcy Code – and even under § 544, which creates the right for *the trustee* to step into the shoes of a creditor and pursue state law claims – does in fact 'stem from the bankruptcy itself' in the same way as a preference action.  Thus, . . . the treatment of fraudulent transfer actions against a noncreditor is another question the *Stern* court left unanswered." *DBSI*, 467 B.R. at 773 n.9 (emphasis in original).[4]

As a consequence, the Court has the constitutional and statutory authority to enter final judgments on Counts I through V of the Trust's Complaint.

## II.    THE COURT HAS FINAL ADJUDICATORY AUTHORITY  OVER COUNT VIII OF THE COMPLAINT TO THE EXTENT IT IS NOT SUBJECT TO ARBITRATION

The Court previously determined that an arbitrator must determine whether Count VIII of the Trust's Complaint – for unjust enrichment – is subject to arbitration.  The Defendants argue that, if the arbitrator concludes that the claim is not subject to arbitration, the Court would lack authority to enter a final judgment on it.  Memo. at 1 n.2.  In support, the Defendants cite *In re Insilco Techs., Inc.*, 330 B.R. 512 (Bankr. D. Del. 2005) (KJC), which held an unjust enrichment

---

[4]    The Trust recognizes that, in *In re Nat'l Serv. Indus., Inc.*, Adv. Proc. No. 14-50377 (MFW), 2015 WL 3827003 (Bankr. D. Del. June 29, 2015), Judge Walrath cited *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014) for "holding that [a] bankruptcy court could not enter [a] final order in [a] fraudulent conveyance action but could make recommendations to [the] district court for disposition." *Id.* at *2.  *Arkison*, however, only "assume[d] without deciding, that the fraudulent conveyance claims in this case [we]re *Stern* claims" because "neither party contest[ed] th[e] [Ninth Circuit's] conclusion" on the point. 134 S. Ct. at 2172, 2174.  *Arkison* offers no guidance, much less binding precedent, on the subject.

claim to be non-core because it did "not meet the elements of the second part of the [Third Circuit's] *Halper* test,[5] because [the] claim [did not] invoke[] a substantive right provided by title 11, nor could [the] claim arise only in the context of a bankruptcy case." *Id.* at 521-22.

However, the Defendants fail to mention the more recent decision in *DBSI*, which distinguished *Insilco* and came to the opposite conclusion regarding an unjust enrichment claim analogous to the claim asserted by the Trust.  *In re DBSI, Inc.*, Adv. Proc. No. 10-54524 (PJW), 2012 WL 1078079 (Bankr. D. Del. Mar. 30, 2012).  In *DBSI*, Judge Walsh held:

> The *Insilco* decision . . . is distinguishable.  The complaint in *Insilco* asserted mostly non-bankruptcy claims related to state corporate law (e.g. breach of fiduciary duty, abuse of control).  Further, there was no discussion of whether the unjust enrichment claim derived from either of the Bankruptcy Code claims.  In contrast, the unjust enrichment claim here is in the nature of a fraudulent conveyance action, which is undoubtedly core.

*Id.* at *4 (citation omitted).  The Trust's unjust enrichment claim here is directly tied to the Trust's fraudulent transfer claims.  As with the first five counts, it seeks recovery of the same transfers alleged to be fraudulent, on the ground that the "Defendants unjustly retained, and Paragon and its subsidiaries were unjustly deprived of, cash, credit and other things of value." Compl. ¶ 196.

As a consequence, if the Trust's unjust enrichment claim ultimately returns to the Court for adjudication, the Court will have full authority to enter a final judgment on it along with the Trust's core fraudulent transfer avoidance claims.

---

[5]    The Third Circuit in *Halper* adopted a two-step process to determine whether a claim is a core proceeding.  "First, 'a court must consult § 157(b)' to determine if the claim at issue fits within that provision's 'illustrative list of proceedings that may be considered 'core.'"  If so, "a proceeding is core [1] if it invokes a substantive right provided by title 11 or [2] if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case."  *In re Winstar Commc'ns, Inc.*, 554 F.3d 382, 405 (3d Cir. 2009) (quoting *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999)).

**III.     THE DEFENDANTS CONSENTED TO THE COURT'S ENTRY OF FINAL JUDGMENTS ON ALL COUNTS**

Independently, the Court is authorized to enter final judgements on *all* counts of the

Complaint, including the non-core state law damage claims in Counts VI and VII, because the

Defendants have consented.

In *Wellness International*, the Supreme Court held that "bankruptcy litigants [may] waive

the right to Article III adjudication of *Stern* claims."  *Wellness Int'l*, 135 S. Ct. at 1944; *see, e.g.*,

*In re Tribune Media Co.*, 902 F.3d 384, 394 (3d Cir. 2018) ("a litigant's consent gives

bankruptcy courts the constitutional authority to enter a final judgment on claims that ordinarily

require a ruling by an Article III court").  That consent need not be express and may be implied

from a litigant's conduct.  *Wellness Int'l*, 135 S. Ct. 1947-48 ("The implied consent standard . . .

supplies the appropriate rule for adjudications by bankruptcy courts under § 157.  Applied in the

bankruptcy context, that standard possesses the same pragmatic virtues – increasing judicial

efficiency and checking gamesmanship – that motivated our adoption of it for consent-based

adjudications by magistrate judges.").

The Third Circuit recently summarized the types of conduct that amount to implied

consent to a bankruptcy court's final adjudication of *Stern* and non-core claims:

> In the wake of *Wellness*, several courts have opined on what
> actions (and omissions) amount to implied consent.  Most
> prominently, the Fifth Circuit has held a party impliedly consents
> to bankruptcy jurisdiction when he "raise[s] no constitutional
> objection when joining the case."  District courts have echoed this
> conclusion, stating a litigant impliedly consents to jurisdiction by
> appearing before the bankruptcy court "without [any] objection."
>
> In reaching their respective holdings, courts have heeded the
> views of the Supreme Court on implied consent, "increasing
> judicial efficiency[,] and checking gamesmanship."  They have
> observed that the Supreme Court has highlighted "the
> consequences of 'a litigant . . . 'sandbagging' the court – remaining
> silent about his objection and belatedly raising the error only if the

> case does not conclude in his favor.'''  Thus courts have required
> claimants to raise the issue of consent before bankruptcy cases
> conclude, and have looked to litigants' actions to determine if they
> have knowingly and voluntarily consented to jurisdiction.

*Tribune Media*, 902 F.3d at 395 (citations omitted).

Here, Noble and the Defendants consented to the Court's ability to enter final judgments in two ways.  First, they raised no objection to the Court's authority when they "joined" the bankruptcy case by signing onto the Noble Settlement Agreement, which expressly contemplated the Court's exclusive jurisdiction over an agreement designed to give the Defendants full and comprehensive releases.  To the contrary, they *consented* to the Court's exclusive jurisdiction – and waived all rights to a trial by jury – in the context of the Noble Settlement Agreement, which was to waive and release the exact claims now prosecuted by the Trust.  That consent provides the Court with authority to enter final judgment on those same claims.  *See In re Bartock*, 398 B.R. 135, 151-53 (Bankr. W.D. Pa. 2008) (holding that parties' entry into a settlement agreement provided implied consent for bankruptcy court to enter final order on emergency motion); *In re G.S.F. Corp.*, 938 F.2d 1467, 1477 (1st Cir. 1991) *abrogated in part on other grounds by Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 112 S.Ct. 1146 (1992) (noting that "[t]here can be no clearer sign of consent" than the submission of a stipulation and release with the bankruptcy court for entry as a final judgment); *Fed'n of Puerto Rican Orgs. of Brownsville, Inc. v. Howe*, 157 B.R. 206, 210 (E.D.N.Y. 1993) ("[D]efendants agreed to have the bankruptcy judge sign the settlement agreement and enter it as an order of that court, thus implicitly consenting to that court's authority to enter a final order in this proceeding.").

In addition, the Defendants insisted that the Court enter an order approving the Noble Settlement Agreement before it could become effective.  *See* Noble Settlement Agreement §§ 6.1(d), 6.2(d).  Noble and the Defendants were perfectly content to have the Court finally

determine and order that they could be *released* from the Trust's claims, but object to the Court *adjudicating* those claims to final judgment now that the proposed compromise has been abandoned.  That is the very sort of "gamesmanship" the Supreme Court sought to prevent in *International Wellness*.

Second, Noble and the Defendants never objected to the Plan's explicit retention of the Court's exclusive jurisdiction to "adjudicate" the Trust's claims "to the fullest extent permitted by law" (which law includes a litigant's ability to consent to final adjudication by the bankruptcy court).  They instead demanded Plan language providing for them to "retain any and all rights and defenses against the Litigation Trust with respect to the Noble Claims, including, but not limited to, any offset claims under Section 502(h) of the Bankruptcy Code or any other applicable provision of the Bankruptcy Code or state or other statutory or case law that the Noble Entities may have had or would have against the Debtors and/or their Estates with respect to the Noble Claims."  Plan § 5.7(b).

Even when commenting on the Plan and Confirmation Order, the Defendants said nothing about the Court's alleged inability to finally adjudicate the claims.  This silence – knowing that the Trust would assert the very claims now pending in this case – is the epitome of procedural sandbagging that amounts to implied consent under *International Wellness* and *Tribune Media*.[6]  Accordingly, the Court has full authority to enter final judgments as to each of the Trust's eight claims for relief.

---

[6]   The Court previously held that the Plan's reservation of rights was sufficient to preserve the Defendants' right to argue that the Trust's claims are subject to arbitration because arbitration is enumerated as affirmative "defense" in Rule 8(c)(1) of the Federal Rules of Civil Procedure.  [Adv. D.I. 67 at 18-19]  In contrast, the Court expressly declined to consider its authority to finally adjudicate the claims that are not subject to arbitration.  *Id*. at

**<u>CONCLUSION</u>**

For the reasons set forth above, the Trust respectfully requests that the Court deny the

relief sought in the Motion and grant the Trust such further relief as is appropriate.

Dated: October 26, 2018

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/* Michael S. Neiburg
Pauline K. Morgan (No. 3650)
Joel A. Waite (No. 2925)
Jaime Luton Chapman (No. 4936)
Michael S. Neiburg (No. 5275)
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email: pmorgan@ycst.com
         mneiburg@ycst.com

- and -

JONES DAY
Bruce Bennett
James O. Johnston
555 South Flower Street, 50th Floor
Los Angeles, California 90071
Telephone:  (213) 489-3939
Facsimile:  (213) 243-2539
Email: bbennett@jonesday.com
         jjohnston@jonesday.com

- and -

---

(continued…)

18 n.62.  As a result, the arbitration decision has no bearing on the Defendants' latest attempt
to prevent the Court from hearing and determining the Trust's claims.

01:23789592.1

Gregory M. Shumaker
David S. Torborg
51 Louisiana Ave., N.W.
Washington, DC 20001
Telephone:  (202) 879-3939
Facsimile:   (202) 626-1700
Email:  gshumaker@jonesday.com
        dstorborg@jonesday.com

- and -

Jennifer L. Del Medico
Genna L. Ghaul
250 Vesey Street
New York, New York 10281
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Email: jdelmedico@jonesday.com
        gghaul@jonesday.com

*Counsel to Paragon Litigation Trust*