## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| PARAGON OFFSHORE PLC, | Bankr. Case No. 16-10386 (CSS) |
| Debtor. | |
| PARAGON LITIGATION TRUST, | |
| Plaintiff, | |
| v. | |
| NOBLE CORPORATION PLC, NOBLE CORPORATION HOLDINGS LTD., NOBLE CORPORATION, NOBLE HOLDING INTERNATIONAL (LUXEMBOURG) S.à r.l., NOBLE HOLDING INTERNATIONAL (LUXEMBOURG NHIL) S.à r.l., NOBLE FDR HOLDINGS LIMITED, MICHAEL A. CAWLEY, JULIE H. EDWARDS, GORDON T. HALL, JON A. MARSHALL, JAMES A. MACLENNAN, MARY P. RICCIARDELLO, JULIE J. ROBERTSON, and DAVID WILLIAMS, | Adv. Proc. No. 17-51882 (CSS) |
| Defendants. | |

## NOTICE OF RULE 30(b)(6) DEPOSITION OF
## AROSA CAPITAL MANAGEMENT LP

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, as made applicable herein by Rules 7030 and 9014 of the Federal Rules of

Bankruptcy Procedure,  Defendants will take the deposition upon oral examination of Arosa

Capital Management LP ("Arosa"), by the individual or individuals identified as the appropriate

corporate representative(s) to answer questions regarding the subject matters listed below, at the

offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New

York 10036-6522.  The deposition will commence at 9:00 a.m. on April 1, 2019, or on a

mutually agreed-upon date before the close of fact discovery on April 3, 2019 or as otherwise

extended by the Court,[1] and will continue day-to-day thereafter until completed.

      PLEASE TAKE FURTHER NOTICE that the deposition will be recorded by

stenographic means and by videotape.

      You are invited to attend and cross-examine.

Dated:  Wilmington, Delaware
       March 13, 2019

      SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

      */s/ Stephen J. Della Penna*
      Anthony W. Clark (I.D. No. 2051)
      Stephen J. Della Penna (I.D. No. 6103)
      One Rodney Square
      P.O. Box 636
      Wilmington, DE 19899-0636
      Telephone: (302) 651-3000
      Fax: (302) 651-3001

      – and –

      George A. Zimmerman (*admitted pro hac vice*)
      Lauren E. Aguiar (*admitted pro hac vice*)
      Four Times Square
      New York, NY 10036
      Telephone: (212) 735-3000
      Fax: (212) 735-2000

      – and –

      Wallis M. Hampton (*admitted pro hac vice*)
      1000 Louisiana Street, Suite 6800
      Houston, Texas 77002-5026
      Telephone: (713) 655-5116
      *Counsel for Defendants*

---

[1]  Should the Court grant Plaintiff's request to extend the deadline for fact discovery (Docket No. 166), Defendants reserve the right to reschedule the deposition to a mutually-acceptable date within that period.

# EXHIBIT A

## DEFINITIONS

1.      "Affiliate" means any person or entity related to, associated with, owning, owned by, under common control with, under the direction of, or with the ability to direct or control another person or Entity.  "Affiliate" also means any current or former principal, officer, director, manager, general partner, employee, agent, parent company, or subsidiary of any such person or entity, as well as that person's or entity's predecessors, trustees, successors, assigns, heirs, administrators, executors, supervisors, or representatives.

2.      "Asset" means all of the right, title, and interest in and to property of whatever type or nature (including real, personal, mixed, intellectual, tangible, and intangible property (including, but not limited to, goodwill)).

3.      "August 1 Distribution" means the distribution on August 1, 2014 to each Noble shareholder of one ordinary share of Paragon for every three ordinary shares of Noble that the shareholder held at 5 p.m. EDT on July 23, 2014.

4.      "Balance Sheet Test" means the test to determine whether the fair value and present fair saleable value of the Assets of a company on a consolidated basis would exceed its stated Liabilities and identified contingent Liabilities on a consolidated basis.

5.      "Cash Flow Test" means the test to determine whether a company should be able to pay its debts as they become absolute and mature.

6.      "Chapter 11 Plan" means the Fifth Joint Chapter 11 Plan of Paragon Offshore plc and its Affiliated Debtors (D.I. 1614-1) confirmed on June 7, 2017.

7.      "Communication" or "Communications" means any and all Documents or information constituting, reflecting or evidencing any oral or written transmission or receipt of

words or information, by whatever manner or means, regardless of how or by whom the Communication was initiated.

8.    "Document" shall have the broadest possible meaning provided under Federal Rule of Civil Procedure 34.

9.    "Ducera" means Ducera Partners LLC and its Affiliates.

10.    "Employee Matters Agreement" means that certain Employee Matters Agreement dated July 31, 2014, by and between Noble and Paragon, as the same may be amended by the parties thereto from time to time in accordance with the terms thereof.

11.    "Entity" means any legal entity including, without limitation, a limited liability company, corporation, trust, general partnership, limited partnership, sole proprietorship, professional corporation, limited liability partnership, professional association, joint venture, non-profit organization, memberships, trust, living trust, or testamentary trust.

12.    "Financial Report" means any Document concerning the financial activities and position of the referenced Person, including, without limitation, income statements, balance sheets, and statements of cash flows, as well as any schedules or notes (including footnotes) related to any of the foregoing Documents, whether audited or unaudited.

13.    "Intercompany Notes" means the NHIL 1 Note, the NHIL 2 Note, and the FDR Note as those documents are defined in the Complaint filed on December 15, 2017 (D.I. 2012), which were the intercompany notes issued on or around July 17, 2014 by Paragon Offshore Finance Company to Noble Affiliates in the aggregate amount of approximately $1.73 billion.

14.    "June 17 Revolving Credit Facility" means the Senior Secured Revolving Credit Agreement among Paragon, Paragon International Finance Company, various lenders and issuing

banks party thereto, and JPMorgan Chase Bank, N.A., as administrative agent, entered into on June 17, 2014.

15.      "July 17 Transfer" means the July 17, 2014 transfer of Assets and Liabilities from Noble to Paragon, including the issuance by subsidiaries of Paragon of the Intercompany Notes.

16.      "July 18 Financing" means the $1.08 billion of senior unsecured notes that Paragon issued on July 18, 2014 pursuant to the Senior Unsecured Notes Offering Memorandum executed on July 11, 2014 and the $650 million that Paragon borrowed under the Term Loan Agreement executed on July 18, 2014.

17.      "Lazard" means Lazard Ltd. and its Affiliates.

18.      "Litigation Trust Agreement" means the agreement created pursuant to Section 5.7 of the Chapter 11 Plan, dated July 18, 2017 (D.I. 1796-1).

19.      "MSA" means that certain Master Separation Agreement dated July 31, 2014, by and between Noble and Paragon [A.D.I. 25-1].

20.      "Noble" means Noble Corporation plc, a public limited liability company organized under the laws of England and Wales and its Affiliates.

21.      "Noble Settlement" means the settlement articulated in the Noble Settlement Agreement, a settlement agreement, as defined in the Chapter 11 Plan, between Paragon and Noble dated as of April 29, 2016 (D.I. 399-4), and any negotiations or Communications related to that agreement.

22.      "Paragon" means (a) Noble Spinco Limited, a wholly-owned subsidiary of Noble, and its Affiliates; (b) Paragon Offshore Limited, a wholly-owned subsidiary of Noble, and its Affiliates; (c) Paragon Offshore plc, a limited liability company incorporated under the laws of England and Wales, and its Affiliates; and (d) Paragon Offshore Limited, the Cayman Islands

successor company to Paragon Offshore plc formed upon Paragon Offshore plc's emergence from bankruptcy on July 18, 2017, and wholly-owned subsidiary of Borr Drilling Limited, and its Affiliates. For the avoidance of doubt, Paragon shall also mean the debtors in the bankruptcy proceeding captioned In re Paragon Offshore plc, Bankr. Case No. 16-10386 (CSS).

23.    "Person" means, without limitation, any natural person, firm, sole proprietorship, partnership, corporation, association, trust, governmental body, or agency, and all past, and present members, managing members, limited partners, officers, directors, employees, and agents, along with all others acting or purporting to act on such Person's behalf.

24.    "Reasonable Capital Test" means the test to determine whether a company should not have unreasonably small capital for the business in which it is engaged.

25.    "Solvency" means whether the fair market value of a company's Assets exceeds its Liabilities.

26.    "Spin-Off" refers to the transactions completed pursuant to the MSA, the Tax Sharing Agreement, the Employee Matters Agreement, the Transition Services Agreement, the Transition Services Agreement (Brazil), the August 1 Distribution, the June 17 Revolving Credit Facility, the July 17 Transfer, and the July 18 Financing.

27.    "Tax Sharing Agreement" means that certain Tax Sharing Agreement dated July 31, 2014, by and between Noble and Paragon, as the same may be amended by the parties thereto from time to time in accordance with the terms thereof.

28.    "Term Loan Agreement" means that certain Senior Secured Loan Agreement, dated as of July 18, 2014, among Paragon Offshore plc as parent, Paragon Offshore Finance Company as borrower, and JPMorgan Chase Bank, N.A. as administrative agent.

29.  "Transition Services Agreement" means that certain Transition Services Agreement dated July 31, 2014, by and between Noble and Paragon, as the same may be amended by the parties thereto from time to time in accordance with the terms thereof.

30.  "Transition Services Agreement (Brazil)" means that certain Transition Services Agreement (Brazil) dated July 31, 2014, by and between Noble and Paragon, as the same may be amended by the parties thereto from time to time in accordance with the terms thereof.

31.  "Trust" means the Paragon Litigation Trust as formed pursuant to the Litigation Trust Agreement.

32.  "Valuation" means the estimated, actual, and/or projected measure of the value of an Asset or Entity, including without limitation, its acquisition cost, carrying cost, appraised or estimated value, fair value, fair market value, replacement cost, sale price, future usefulness, future worth, or disclosed value. "Valuation" includes the Asset's or Entity's estimated, actual, and/or projected economic value, as well as the manner in which that value is accounted for by, is shown on the books and records of, or is otherwise determined by any Person or Entity with an economic interest in that Asset.

33.  "Weil" means Weil, Gotshal & Manges LLP and its Affiliates.

34.  "You" or "Your" means Arosa Capital Management LP and any Person or Persons acting in any capacity for or on its behalf, including current and former employees, agents, representatives, legal counsel, financial advisors, investment bankers, or any other Person.

## SUBJECTS OF DEPOSITION

Pursuant to Rule 30(b)(6), You shall designate a person or persons who can competently testify as to the following subjects based on information known or reasonably available to You

1.      The Valuation of Paragon or its Assets at any point between April 1, 2014 and February 14, 2016, including Communications and Documents related thereto.

2.      The Solvency of Paragon at any point between the Spin-Off and February 14, 2016, including Communications and Documents related thereto.

3.      Financial Reports, projections, Valuations, or Solvency analyses of or relating to Paragon prepared, reviewed, or obtained by You, including but not limited to those prepared by Ducera or Lazard.

4.      Your analysis of Paragon's Solvency, liquidity, or the adequacy of its capitalization as of the Spin-Off, including but not limited to any analyses under the Balance Sheet Test, Cash Flow Test, or Reasonable Capital Test.

5.      Any claims Paragon or any of its creditors may have or may have had against Noble concerning the Spin-Off, including but not limited to the claims asserted by the Trust in the proceeding captioned *Paragon Litigation Trust v. Noble Corporation plc et al.,* Adv. Proc. No. 17-51882 (CSS).

6.      Any analyses You performed, reviewed, or obtained concerning the offshore drilling market, oil prices, demand for drilling rigs, dayrates, newbuilds, or rig utilization.

7.      Your diligence and decision to invest in Paragon securities or debt.

8.      Your Communications with Paragon, Lazard, Ducera, or Weil concerning the Noble Settlement or any possible claim against Noble concerning the Spin-Off.

9.    Your consideration of, or decision to support, the Noble Settlement, including Your consideration of any Valuation or Solvency analysis of Paragon.

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____ District of __Delaware_____

In re __PARAGON OFFSHORE PLC_____
                    Debtor

*(Complete if issued in an adversary proceeding)*

__PARAGROM LITIGATION TRUST_____
                    Plaintiff
                v.
__NOBLE CORPORATION PLC, et al._____
                    Defendant

Case No.  __16-10386 (CSS_____

Chapter __11_____

Adv. Proc. No.  __17-51882 (CSS)_____

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: <u>Arosa Capital Management LP, Attn: Person Most Knowledgeable, c/o Kirkland & Ellis LLP, Jeffrey J. Zeiger, Esq., 300 North LaSalle,</u>
    Chicago, IL 60654          *(Name of person to whom the subpoena is directed)*

[X] *Testimony*:  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding).  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| PLACE | DATE AND TIME |
|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, NY, NY 10036 | April 1, 2019 at 9:00 a.m. (Eastern) |

The deposition will be recorded by this method:

[ ] *Production*:  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

        The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  __3/13/19_____

                    CLERK OF COURT

                              OR

_____          __/s/ Anthony W. Clark_____
  *Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
__Defendants_____ , who issues or requests this subpoena, are:  Attn: Anthony W. Clark
Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, NY, NY 10036, Tel: 302-651-3000 Email: anthony.clark@skadden.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____
_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


        I declare under penalty of perjury that this information is true and correct.

Date: _____

                                                    _____
                                                              *Server's signature*

                                                    _____
                                                            *Printed name and title*

                                                    _____
                                                              *Server's address*


Additional information concerning attempted service, etc.:

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)