# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Anne I. Salomon
To Call Writer Directly:
+1 312 862 3092
Anne.salomon@kirkland.com

300 North LaSalle
Chicago, IL 60654
United States

+1 312 862 2000

www.kirkland.com

Facsimile:
+1 312 862 2200

May 14, 2019

Hon. Chief Judge Christopher S. Sontchi
United States Bankruptcy Court, District of Delaware
824 N. Market Street, 5th Floor
Wilmington DE 19801

Re:   *Paragon Litigation Trust v. Noble Corp. PLC et al.* (Adv. Proc. No. 17-51882)

Dear Chief Judge Sontchi:

We write on behalf of the Paragon Litigation Trust regarding three discovery disputes that, unfortunately, the parties have been unable to resolve despite exchanging over ten letters on these issues and conducting a meet-and-confer last week. Even though we could not resolve this dispute, we continue to work through other discovery issues that hopefully can be resolved without involving the Court.

I.      **Noble's Improper Privilege Assertions.**

Over the last several months, the Trust has identified hundreds of specific documents on Noble's privilege log that it has improperly withheld on privilege grounds. The Trust even shared its work product with Noble so that Noble could see exactly why the Trust believes each document should be produced. Although the Trust provided discrete sets of challenges typically involving fewer than 200 documents, Noble has taken several weeks—and once over six weeks—to respond to each set. To streamline this process, the Trust also provided categorical challenges with exemplar documents. The parties have now reached an impasse. The Trust believes that the Court's rulings on these documents will help facilitate the efficient resolution of these disputes.

A. **Noble Cannot Claim "Privilege" Over Documents Shared With Third Parties.**

Noble is improperly withholding hundreds of documents disclosed to third parties like Barclays, KPMG, and PwC relating to Paragon's solvency, asset selection for the spin, and the $1.7 billion of debt imposed on Paragon. Exhibit A lists documents that the Trust individually challenged on this basis, although Noble's logs have hundreds of additional such documents.

Noble concedes that "[d]isclosing a communication to a third party unquestionably waives the privilege." April 3, 2019 Ltr. at 2. It argues, however, that no waiver occurred here because the third party's participation in each of the hundreds of communications that Noble is withholding was "necessary for the provision of legal advice." April 12, 2019 Ltr. at 3. Courts narrowly

## KIRKLAND & ELLIS LLP

Hon. Chief Judge Christopher S. Sontchi
May 14, 2019
Page 2

construe this "necessity element" to mean "nearly indispensable." *Columbia Data Prod., Inc. v. Autonomy Corp.*, 2012 WL 6212898, at *15 (D. Mass. Dec. 12, 2012). It is not enough that "the communication proves important to the attorney's ability to represent the client." *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999) (rejecting attorney-client privilege over communications between counsel and investment banker even if "those conversations significantly assisted the attorney in giving his client legal advice"). This "limited" exception applies only where the third party "functions as a 'translator'" or "'go betweens' to assist the communication between a client and an attorney." *In re G-I Holdings Inc.*, 218 F.R.D. 428, 434–35 (D.N.J. 2003). Noble's identical boilerplate privilege log descriptions do not meet its burden of showing that its attorneys needed financial advisors to serve as translators for any—much less all—of these communications. In fact, the privilege log descriptions do not even address the third party's specific role or participation in the communication. Noble simply repeats the same two privilege descriptions for all 131 documents on Exhibit A, claiming that 92 are communications regarding an "actual or potential divestiture of Noble assets" and 39 are communications "regarding the Spin-Off." Nor has Noble provided declarations or any other evidence to support its claim that this narrow exception to the waiver doctrine applies here. It has failed to carry its burden.

### B. Noble Cannot Assert Privilege Over Pre-Spin Documents Relating To The Assets Noble Transferred to Paragon.

"[W]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985); *accord Soverain Software LLC v. Gap, Inc.*, 340 F. Supp. 2d 760, 763 (E.D. Tex. 2003) (applying *Weintraub* to asset transfers involving "transfer of control" of a business). The Master Separation Agreement ("MSA") similarly provides that "[w]ith respect to matters relating to the Paragon Business, ***Paragon shall have sole authority in perpetuity to determine whether to assert or waive any or all Privileges***." ECF No. 25-1, M.S.A. § 6.6(a) (emphasis added). The MSA defines "Paragon Business" broadly. It includes the "operation of the Paragon assets," "marketing activities," "contract drilling," "the business and activities" of Paragon's shore-based assets, and "any activity undertaken in order to provide or conduct the services and activities described in [this definition], including, without limitation, drilling rig, marine, regulatory, administrative, on-shore, office and shipyard activities." *Id.* § 1.1.

Noble is withholding thousands of documents over which Paragon holds the privilege because they relate to Paragon's assets. Exhibit B lists documents that the Trust individually challenged on this basis to date. In total, Noble is withholding over 3,500 documents—more than half of its privilege log entries—with the same boilerplate description that they relate to the "actual or potential divestiture of Noble assets" (*i.e.*, the ***Paragon*** assets).[1] For example, Noble is

---

[1] Because of these boilerplate descriptions, the Trust undertook a document-by-document review of Noble's privilege log entries. Based on their family members and metadata fields (*i.e.*, the email subject line or file name), the Trust can glean a more specific topic of the communication for some documents.

## KIRKLAND & ELLIS LLP

Hon. Chief Judge Christopher S. Sontchi
May 14, 2019
Page 3

withholding documents concerning: (i) "Project Sahara" (Noble's unsuccessful effort to sell the Paragon assets in 2011 and 2012), (ii) Noble's failed IPO involving these assets, (iii) numerous failed efforts to sell individual rigs, including the cold stacked rigs it spun to Paragon, (iv) and Paragon's finances, valuation, and solvency. Because each of these topics relates to the business and assets transferred to Paragon, the privilege passed to Paragon under *Weintraub*. These topics also fall within the MSA's definition of "Paragon Business," which is informed by *Weintraub*'s broad holding and extends Paragon's privilege rights to the financial "operation of the Paragon assets," and the "marketing" of those assets.

Noble refuses to produce these documents for two reasons. First, it argues that MSA Section 7.13 "makes clear that the attorney-client privilege for Spin-related documents continues to reside with Noble." April 17, 2019 Ltr. at 4. Section 7.13, however, only governs Noble's privilege rights concerning "this Agreement [*i.e.*, the MSA], the Ancillary Agreements, the Separation, the Distribution and the other transactions contemplated hereby." Because Noble only decided to pursue *this* transaction (rather than an IPO or sale) in April 2014, this provision by its terms does not apply to pre-April 2014 documents or other abandoned transactions. For documents after April 2014, Noble already agreed to produce "all documents from the privilege logs that were created between April 1, 2013 and August 1, 2014 relating to the Spin-Off or to the Paragon Business." ECF No. 98 ¶ 5. Section 7.13 offers no basis for Noble to withhold these documents.

Second, Noble claims it can continue to assert privilege over documents "that relate to the Spin-Off but are outside of the time frame covered by the Stipulation." March 27, 2019 Ltr. at 4. The Stipulation solely addressed the fact that Noble could not claim privilege over documents subject to a jointly-held privilege. It did not transfer back to Noble the privilege rights that passed to Paragon under *Weintraub* and the MSA, or limit either party's ability to challenge privilege. The Stipulation cannot shield these documents from production either.

## II.     Noble Should Produce Documents Hitting on "Houlihan" and "HL" Search Terms.

Noble retained Houlihan Lokey to provide a solvency opinion of Paragon for the spin-off. Months ago, the Trust identified deficiencies in Noble's production and asked Noble to address them by adding "Houlihan" and "HL" as search terms. The magnitude of these deficiencies was confirmed when Noble admitted that 6,500 unique documents hit on these terms and have not been produced. Yet, Noble refuses to even *review* them on grounds of "burden." There is no dispute that these documents are relevant and responsive: Noble concedes that Houlihan's work for Noble "was limited to the solvency analysis it performed in connection with the Spin." April 17, 2019 Ltr. at 4. The documents also do not need to be reviewed for privilege. Since Noble did not retain Houlihan until April 2013, these documents fall within the parties' joint privilege stipulation. Because there is minimal, if any, burden involved, Noble should produce these documents.

Sincerely,

Anne I. Salomon