# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Anne I. Salomon
To Call Writer Directly:
+1 312 862 3092
Anne.salomon@kirkland.com

300 North LaSalle
Chicago, IL 60654
United States

+1 312 862 2000

www.kirkland.com

Facsimile:
+1 312 862 2200

June 11, 2019

Hon. Chief Judge Christopher S. Sontchi
United States Bankruptcy Court, District of Delaware
824 N. Market Street, 5th Floor
Wilmington DE 19801

Re:   *Paragon Litigation Trust v. Noble Corp. PLC et al.* (Adv. Proc. No. 17-51882)

Dear Chief Judge Sontchi:

As discussed at the telephonic hearing on May 16, 2019, Noble is withholding nearly 700 documents that it shared with third parties as attorney-client privileged. Because Noble had not satisfied its burden to show that an exception to the third-party waiver rule applied for those documents, the Court required Noble to submit evidence "in support of Noble's position and how what occurred factually fits the cases as they have been cited to me." 5/16/2019 Tr. at 29:5-7. Noble's cursory seven-paragraph declaration does neither. (*See* Dkt. 196.)

To start, Noble's position at the discovery conference was that it did not waive privilege because these third parties were "agents of Noble in connection with these matters and that makes all the difference." 5/16/2019 Tr. at 19:13-15; *accord id.* at 21:22-22:8 (attempting to distinguish the Trust's precedent because those cases did not involve "agents").

Tellingly, Noble's declarant, Senior Vice President, General Counsel and Corporate Secretary William Turcotte, does not attest that any of these third parties were Noble's "agents." Nor could he. Noble made clear in at least three engagement letters that "Barclays Capital is not acting as an agent" of Noble. Noble_01143164 ¶ 11; Noble_00678988 ¶ 12; Noble_00534734 ¶ 12.[1] KPMG was not Noble's agent either: "It is understood and agreed that each of the parties hereto is an independent contractor and that neither party is or shall be considered an agent, distributor or representative of the other. Neither party shall act or represent itself, directly or by implication, as an agent of the other …." KPMG_PARAGON- 0018988 ¶ 10; KMPG_PARAGON-0002165 at 2171 (incorporating these terms). Mr. Turcotte likewise does not provide any facts to show any of the 14 third parties on Noble's privilege logs were the "functional equivalent of employees" at Noble—the only exception to the third-party waiver rule that comes close to the "agency" argument advanced by Noble. *See*, *e.g.*, *In re Bristol-Myers Squibb Sec. Litig.*, 2003 WL 25962198, at *4 (D.N.J. June 25, 2003) (exception requires showing that third parties "(1) were incorporated in the staff to perform a corporate function, which is necessary in the context of actual

---

[1] These letters are not attached because they are marked confidential, but can be provided to the Court upon request.

**KIRKLAND & ELLIS LLP**

Hon. Chief Judge Christopher S. Sontchi
June 11, 2019
Page 2

or anticipated litigation; (2) possessed information needed by attorneys in rendering legal advice; (3) possessed authority to make decisions on behalf of the company; and (4) were hired because the company lacked sufficient internal resources and/or adequate prior experience within the consultant's field"). Because Noble abandoned this argument and it was wrong anyway, Noble cannot withhold these documents on this basis.

Instead, Noble tacitly agrees with the Trust that to sustain its privilege claims, Noble must demonstrate these third parties were necessary "to explain and interpret certain financial concepts to allow legal advice to be rendered to Noble." Turcotte Decl. ¶ 2. Noble's conclusory declaration does not come close to satisfying its burden. *United States v. Norris*, 419 F. App'x 190, 195 (3d Cir. 2011) ("'[I]t is clear, in this Circuit, that a party who asserts a privilege has the burden of proving its existence and applicability.'"); *Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1423 (3d Cir. 1991) (the attorney-client privilege "is construed narrowly"); *Salvango v. Borough of Glen Ridge*, 2009 WL 2392887, at *4 (D.N.J. Aug. 3, 2009) (There is a "high bar … in the Third Circuit for the extension of the attorney client privilege to third parties.").

First, Noble failed to satisfy its burden to substantiate its privilege claim for any specific document listed on its privilege logs. Noble's declaration does not link any document or category of documents with any statement in the declaration. To the contrary, Noble carefully worded its declaration to make clear that Barclays, PwC, and KPMG did not work solely on legal matters. *See* Turcotte Decl. ¶ 3 ("***At numerous points***, Barclays was necessary to facilitate the provision of proper legal advice" (emphasis added)); *id.* ¶ 4 ("PwC advised in connection with the Spin-Off and other projects involving advising on Swiss tax issues, ***including assisting Noble's legal team***" (emphasis added)); *id.* ¶ 6 ("Noble also worked with KPMG as an advisor to assist with various aspects of the Spin-Off, ***including but not limited to*** assisting Noble's legal team to render advice … ***On numerous occasions***, KPMG worked directly with Noble's in-house and outside counsel" (emphasis added)). This is also evident from the descriptions of documents Noble is withholding, which include emails with Barclays about Paragon's working capital and expenditures, emails with Barclays titled "Standard co solvency concerns" and "Call regarding solvency issues for Shark," and communications with KPMG identifying which rigs to spin off to Paragon.

Noble's generic approach leaves the Trust—and this Court—guessing as to which statements purport to address which documents on its privilege logs. Not surprisingly, courts in this Circuit reject similar "wholesale" invocations of the attorney-client privilege because "'claims of attorney-client privilege must be asserted document by document, rather than as a single, blanket assertion.'" *Takahashi v. Cuyco*, 2019 WL 2028715, at *4 (D.N.J. May 8, 2019) (*quoting United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990)); *accord UPMC v. CBIZ, Inc.*, 2018 WL 1542423, at *7 (W.D. Pa. Mar. 29, 2018) (granting motion to compel because "the information contained on the privilege log is insufficient to determine whether the privilege attaches and Plaintiffs failed to make any document-specific arguments or isolate groupings of the over 1,500 items on the privilege log," and thus "failed to indicate any specific documents to which this '*Kovel* arrangement' applies"). For this reason alone, the third-party documents on Noble's privilege logs should be produced.

## KIRKLAND & ELLIS LLP

Hon. Chief Judge Christopher S. Sontchi
June 11, 2019
Page 3

Second, Noble's limited factual support is insufficient to establish that Barclays, KPMG and PwC were "function[ing] as a 'translator' between the client and the attorney" in each withheld communication and that they were "nearly indispensable" to the provision of legal advice. *In re G-I Holdings Inc.*, 218 F.R.D. 428, 434-35 (D.N.J. 2003); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 314 (D.N.J. 2008). In other words, for a communication shared with a third party to continue to be privileged, "the agent must evaluate the information and in a sense 'translate' it into understandable terms for the non-expert attorney." *La. Mun.*, 253 F.R.D. at 312. "[T]he Third Circuit … has been loath to construe the privilege broadly and has viewed what assists an attorney in rendering legal advice narrowly." *Salvango*, 2009 WL 2392887, at *2.

Noble's generalized declaration falls far short of meeting this standard. *See Hurst v. F.W. Woolworth Co.*, 1997 WL 104965, at *2 (S.D.N.Y. Mar. 7, 1997) (finding deficient "affidavit [that] presents little more than conclusory statements that these documents were prepared for the purpose of obtaining legal advice"). Mr. Turcotte asserts that Barclays "assist[ed] Noble's counsel with the preparation and execution of the Spin-Off transaction" and was "instrumental in assisting" Noble's lawyers as its "financial advisor" "in negotiating and interpreting provisions of certain key agreements" related to a potential asset sale. Turcotte Decl. ¶ 3. He does not describe Barclays' role in any communication that Noble withholds, elaborate on the "assistance" Barclays provided, or explain how this assistance was "nearly indispensable or serve[d] some specialized purpose in facilitating attorney-client communications." *La. Mun.*, 253 F.R.D. at 314; *see also UPMC*, 2018 WL 1542423, at *8 ("[P]rivilege does not attach simply because counsel communicates with a third party—such as actuaries, accountants, or federal agencies—to obtain information, seek advice, or attain professional services."). Noble has not met its burden of showing that Barclays' assistance was "*necessary* to the lawyer's provision of *legal advice*" so that information could be translated "into understandable terms for the non-expert attorney." *La. Mun.*, 253 F.R.D. at 312, 314 (finding declarations insufficient that "do not explain how [the third party] was to 'translate' information into terms that counsel could use more effectively" and the court could not "ignore that '[t]he involvement of the third party must be nearly indispensable or serve some specialized purpose in *facilitating attorney-client communications*'").

Noble's statements about PwC and KPMG fare no better. Mr. Turcotte asserts these third parties provided "support" and "assist[ance]" to the Noble legal team regarding tax compliance, including "facilitat[ing] the execution of various legal documents." Turcotte Decl. ¶¶ 4-6. "[A] communication between an attorney and a third party does not become shielded by the attorney-client privilege solely because the communication proves important to the attorney's ability to represent the client," even assuming "those conversations significantly assisted the attorney in giving his client legal advice about its tax situation." *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999); *accord G-I Holdings*, 218 F.R.D. at 435-36 (finding deficient affidavit asserting that tax consultant "assisted us in understanding the tax and tax accounting ramifications of the proposed structure, which assistance was necessary in order for us to provide legal advice and counsel to the senior management"). Similarly, Noble states that PwC "assisted Noble's legal counsel in understanding and negotiating certain contractual provisions," yet does not explain

## KIRKLAND & ELLIS LLP

Hon. Chief Judge Christopher S. Sontchi
June 11, 2019
Page 4

PwC's specific role or how its involvement was necessary to providing *legal* advice. This superficial showing is not sufficient to justify withholding hundreds of documents.

Finally, Noble's declaration provides no facts to support its privilege assertions over documents voluntarily shared with eleven of the third parties on its privilege logs: Castle Harlan, Simmons & Co., Jindal, Houlihan, Fearnleys, Ernst & Young, Mercer, RRD, Alvarez and Marshal, Horn Solutions, and Compushare.[2]

Noble has had multiple chances to support its privilege assertions for the nearly 700 communications that it shared with third parties. It has repeatedly failed to do so. The Trust respectfully requests that the Court order the production of these documents.

Sincerely,

*Anne Salomon /* JAF

Anne I. Salomon

---

[2] Noble acknowledges the need to support its privilege assertions with respect to these other third parties. *See* Turcotte Decl. ¶ 2 ("Noble retained *several* financial advisors in connection with" potential transactions and "[t]hose advisors—*including* Barclays, PricewaterhouseCoopers ('PwC') and KPMG—provided crucial assistance." (emphases added)). The declaration, though, fails to address any of these remaining third parties.