**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| PARAGON OFFSHORE PLC, | Bankr. Case No. 16-10386 (CSS) |
| Debtor. | |

| | |
|---|---|
| PARAGON LITIGATION TRUST, | |
| Plaintiff, | |
| v. | |
| NOBLE CORPORATION PLC, NOBLE CORPORATION HOLDINGS LTD., NOBLE CORPORATION, NOBLE HOLDING INTERNATIONAL (LUXEMBOURG) S.à r.l., NOBLE HOLDING INTERNATIONAL (LUXEMBOURG NHIL) S.à r.l., NOBLE FDR HOLDINGS LIMITED, MICHAEL A. CAWLEY, JULIE H. EDWARDS, GORDON T. HALL, JON A. MARSHALL, JAMES A. MACLENNAN, MARY P. RICCIARDELLO, JULIE J. ROBERTSON, and DAVID WILLIAMS, | Adv. Proc. No. 17-51882 (CSS) |
| Defendants. | |

**AMENDED NOTICE OF RULE 30(b)(6) DEPOSITION OF**
**AROSA CAPITAL MANAGEMENT LP**

PLEASE TAKE NOTICE, that, pursuant to Rule 7030 of the Federal Rules of

Bankruptcy Procedure and Rule 30(b)(6) of the Federal Rules of Civil Procedure, the

Defendants, by and through their undersigned attorneys, will take the deposition of Arosa Capital

Management LP ("Arosa"), through one or more officers, directors, agents or other

representatives who shall be designated to testify regarding all information known or reasonably

available to Defendants with respect to the subject matters identified in Exhibit A.  Defendants

requests that Arosa provide written notice at least two (2) business days before the deposition of

the name(s) and employment position(s) of the individual(s) designated to testify on Arosa's

behalf, and the subject matters listed on Exhibit A to which each such designee will testify.  The

deposition shall commence on September 6, 2019 beginning at 9:00 a.m. (EST), and will

continue from day to day until it has been completed.

The Deposition shall be held at the offices of Skadden, Arps, Slate, Meagher &

Flom LLP, Four Times Square, New York, New York 10036. The Deposition will be taken upon

oral examination, before a court reporter, notary public or other person authorized by law to

administer oaths, and will be recorded by stenographic, sound and/or visual means.

Dated:  Wilmington, Delaware
      August 22, 2019

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Stephen J. Della Penna*
Anthony W. Clark (I.D. No. 2051)
Stephen J. Della Penna (I.D. No. 6103)
One Rodney Square
P.O. Box 636
Wilmington, DE 19899-0636
Telephone: (302) 651-3000
Fax: (302) 651-3001

– and –

George A. Zimmerman (*admitted pro hac vice*)
Lauren E. Aguiar (*admitted pro hac vice*)
Four Times Square
New York, NY 10036
Telephone: (212) 735-3000
Fax: (212) 735-2000

– and –

Wallis M. Hampton (*admitted pro hac vice*)
1000 Louisiana Street, Suite 6800
Houston, Texas 77002-5026
Telephone: (713) 655-5116

*Counsel for Defendants*

**EXHIBIT A**

**DEFINITIONS**

1.      "Affiliate" means any person or entity related to, associated with, owning, owned by, under common control with, under the direction of, or with the ability to direct or control another person or Entity.  "Affiliate" also means any current or former principal, officer, director, manager, general partner, employee, agent, parent company, or subsidiary of any such person or entity, as well as that person's or entity's predecessors, trustees, successors, assigns, heirs, administrators, executors, supervisors, or representatives.

2.      "Asset" means all of the right, title, and interest in and to property of whatever type or nature (including real, personal, mixed, intellectual, tangible, and intangible property (including, but not limited to, goodwill)).

3.      "August 1 Distribution" means the distribution on August 1, 2014 to each Noble shareholder of one ordinary share of Paragon for every three ordinary shares of Noble that the shareholder held at 5 p.m. EDT on July 23, 2014.

4.      "Balance Sheet Test" means the test to determine whether the fair value and present fair saleable value of the Assets of a company on a consolidated basis would exceed its stated Liabilities and identified contingent Liabilities on a consolidated basis.

5.      "Cash Flow Test" means the test to determine whether a company should be able to pay its debts as they become absolute and mature.

6.      "Chapter 11 Plan" means the Fifth Joint Chapter 11 Plan of Paragon Offshore plc and its Affiliated Debtors (D.I. 1614-1) confirmed on June 7, 2017.

7.      "Communication" or "Communications" means any and all Documents or information constituting, reflecting or evidencing any oral or written transmission or receipt of

words or information, by whatever manner or means, regardless of how or by whom the Communication was initiated.

8.      "Document" shall have the broadest possible meaning provided under Federal Rule of Civil Procedure 34.

9.      "Ducera" means Ducera Partners LLC and its Affiliates.

10.     "Employee Matters Agreement" means that certain Employee Matters Agreement dated July 31, 2014, by and between Noble and Paragon, as the same may be amended by the parties thereto from time to time in accordance with the terms thereof.

11.     "Entity" means any legal entity including, without limitation, a limited liability company, corporation, trust, general partnership, limited partnership, sole proprietorship, professional corporation, limited liability partnership, professional association, joint venture, non-profit organization, memberships, trust, living trust, or testamentary trust.

12.     "Financial Report" means any Document concerning the financial activities and position of the referenced Person, including, without limitation, income statements, balance sheets, and statements of cash flows, as well as any schedules or notes (including footnotes) related to any of the foregoing Documents, whether audited or unaudited.

13.     "Intercompany Notes" means the NHIL 1 Note, the NHIL 2 Note, and the FDR Note as those documents are defined in the Complaint filed on December 15, 2017 (D.I. 2012), which were the intercompany notes issued on or around July 17, 2014 by Paragon Offshore Finance Company to Noble Affiliates in the aggregate amount of approximately $1.73 billion.

14.     "June 17 Revolving Credit Facility" means the Senior Secured Revolving Credit Agreement among Paragon, Paragon International Finance Company, various lenders and issuing

banks party thereto, and JPMorgan Chase Bank, N.A., as administrative agent, entered into on June 17, 2014.

15.    "July 17 Transfer" means the July 17, 2014 transfer of Assets and Liabilities from Noble to Paragon, including the issuance by subsidiaries of Paragon of the Intercompany Notes.

16.    "July 18 Financing" means the $1.08 billion of senior unsecured notes that Paragon issued on July 18, 2014 pursuant to the Senior Unsecured Notes Offering Memorandum executed on July 11, 2014 and the $650 million that Paragon borrowed under the Term Loan Agreement executed on July 18, 2014.

17.    "Lazard" means Lazard Ltd. and its Affiliates.

18.    "Litigation Trust Agreement" means the agreement created pursuant to Section 5.7 of the Chapter 11 Plan, dated July 18, 2017 (D.I. 1796-1).

19.    "MSA" means that certain Master Separation Agreement dated July 31, 2014, by and between Noble and Paragon [A.D.I. 25-1].

20.    "Noble" means Noble Corporation plc, a public limited liability company organized under the laws of England and Wales and its Affiliates.

21.    "Noble Settlement" means the settlement articulated in the Noble Settlement Agreement, a settlement agreement, as defined in the Chapter 11 Plan, between Paragon and Noble dated as of April 29, 2016 (D.I. 399-4), and any negotiations or Communications related to that agreement.

22.    "Paragon" means (a) Noble Spinco Limited, a wholly-owned subsidiary of Noble, and its Affiliates; (b) Paragon Offshore Limited, a wholly-owned subsidiary of Noble, and its Affiliates; (c) Paragon Offshore plc, a limited liability company incorporated under the laws of England and Wales, and its Affiliates; and (d) Paragon Offshore Limited, the Cayman Islands

successor company to Paragon Offshore plc formed upon Paragon Offshore plc's emergence

from bankruptcy on July 18, 2017, and wholly-owned subsidiary of Borr Drilling Limited, and

its Affiliates. For the avoidance of doubt, Paragon shall also mean the debtors in the bankruptcy

proceeding captioned In re Paragon Offshore plc, Bankr. Case No. 16-10386 (CSS).

23.     "Person" means, without limitation, any natural person, firm, sole proprietorship,

partnership, corporation, association, trust, governmental body, or agency, and all past, and

present members, managing members, limited partners, officers, directors, employees, and

agents, along with all others acting or purporting to act on such Person's behalf.

24.     "Reasonable Capital Test" means the test to determine whether a company should

not have unreasonably small capital for the business in which it is engaged.

25.     "Solvency" means whether the fair market value of a company's Assets exceeds

its Liabilities.

26.     "Spin-Off" refers to the transactions completed pursuant to the MSA, the Tax

Sharing Agreement, the Employee Matters Agreement, the Transition Services Agreement, the

Transition Services Agreement (Brazil), the August 1 Distribution, the June 17 Revolving Credit

Facility, the July 17 Transfer, and the July 18 Financing.

27.     "Tax Sharing Agreement" means that certain Tax Sharing Agreement dated July

31, 2014, by and between Noble and Paragon, as the same may be amended by the parties thereto

from time to time in accordance with the terms thereof.

28.     "Term Loan Agreement" means that certain Senior Secured Loan Agreement,

dated as of July 18, 2014, among Paragon Offshore plc as parent, Paragon Offshore Finance

Company as borrower, and JPMorgan Chase Bank, N.A. as administrative agent.

29.     "Transition Services Agreement" means that certain Transition Services Agreement dated July 31, 2014, by and between Noble and Paragon, as the same may be amended by the parties thereto from time to time in accordance with the terms thereof.

30.     "Transition Services Agreement (Brazil)" means that certain Transition Services Agreement (Brazil) dated July 31, 2014, by and between Noble and Paragon, as the same may be amended by the parties thereto from time to time in accordance with the terms thereof.

31.     "Trust" means the Paragon Litigation Trust as formed pursuant to the Litigation Trust Agreement.

32.     "Valuation" means the estimated, actual, and/or projected measure of the value of an Asset or Entity, including without limitation, its acquisition cost, carrying cost, appraised or estimated value, fair value, fair market value, replacement cost, sale price, future usefulness, future worth, or disclosed value. "Valuation" includes the Asset's or Entity's estimated, actual, and/or projected economic value, as well as the manner in which that value is accounted for by, is shown on the books and records of, or is otherwise determined by any Person or Entity with an economic interest in that Asset.

33.     "Weil" means Weil, Gotshal & Manges LLP and its Affiliates.

34.     "You" or "Your" means Arosa Capital Management LP and any Person or Persons acting in any capacity for or on its behalf, including current and former employees, agents, representatives, legal counsel, financial advisors, investment bankers, or any other Person.

## SUBJECTS OF DEPOSITION

Pursuant to Rule 30(b)(6), You shall designate a person or persons who can competently testify as to the following subjects based on information known or reasonably available to You

1.     The Valuation of Paragon or its Assets at any point between April 1, 2014 and February 14, 2016, including Communications and Documents related thereto.

2.     The Solvency of Paragon at any point between the Spin-Off and February 14, 2016, including Communications and Documents related thereto.

3.     Financial Reports, projections, Valuations, or Solvency analyses of or relating to Paragon prepared, reviewed, or obtained by You, including but not limited to those prepared by Ducera or Lazard.

4.     Your analysis of Paragon's Solvency, liquidity, or the adequacy of its capitalization as of the Spin-Off, including but not limited to any analyses under the Balance Sheet Test, Cash Flow Test, or Reasonable Capital Test.

5.     Any claims Paragon or any of its creditors may have or may have had against Noble concerning the Spin-Off, including but not limited to the claims asserted by the Trust in the proceeding captioned *Paragon Litigation Trust v. Noble Corporation plc et al.,* Adv. Proc. No. 17-51882 (CSS).

6.     Any analyses You performed, reviewed, or obtained concerning the offshore drilling market, oil prices, demand for drilling rigs, dayrates, newbuilds, or rig utilization.

7.     Your diligence and decision to invest in Paragon securities or debt.

8.     Your Communications with Paragon, Lazard, Ducera, or Weil concerning the Noble Settlement or any possible claim against Noble concerning the Spin-Off.

9

9.   Your consideration of, or decision to support, the Noble Settlement, including

Your consideration of any Valuation or Solvency analysis of Paragon.

9