# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PARAGON OFFSHORE PLC,<br><br>*Debtor*. | Chapter 11<br><br>Bankr. Case No. 16-10386 (CSS) |
| PARAGON LITIGATION TRUST,<br><br>*Plaintiff*,<br><br>v.<br><br>NOBLE CORPORATION PLC, NOBLE CORPORATION HOLDINGS LTD., NOBLE CORPORATION, NOBLE HOLDING INTERNATIONAL (LUXEMBOURG) S.à r.l., NOBLE HOLDING INTERNATIONAL (LUXEMBOURG NHIL) S.à r.l., NOBLE FDR HOLDINGS LIMITED, MICHAEL A. CAWLEY, JULIE H. EDWARDS, GORDON T. HALL, JON A. MARSHALL, JAMES A. MACLENNAN, MARY P. RICCIARDELLO, JULIE J. ROBERTSON, and DAVID WILLIAMS,<br><br>*Defendants*. | Adv. Pro. No. 17-51882 (CSS)<br><br><br><br><br><br>**Objection Deadline: Feb. 18, 2021 at 4:00 p.m. (ET)**<br><br>**Hearing Date: March 9, 2021 at 10:00 a.m. (ET)** |

## THE PARAGON LITIGATION TRUST'S MOTION FOR ENTRY OF AN ORDER APPROVING THE SETTLEMENT AMONG THE PARAGON LITIGATION TRUST, THE NOBLE DEFENDANTS, AND THE D&O DEFENDANTS

The Paragon Litigation Trust (the "Trust") respectfully states as follows in support of this motion:

**Preliminary Statement**

1. After several years of litigation, the Trust and Defendants have entered into a global settlement that fully resolves all of the Trust's claims. This settlement was the result of a months-long mediation among the Trust, Noble, the D&O Defendants, and the Insurers that was led by

former Bankruptcy Judge Kevin Gross.[1] Thanks in large part to former Judge Gross' persistence, the Trust will receive $90,375,000 in cash to settle its claims.

2. Although the Trust has great confidence in the merits of its case, any judgment against the bankrupt Noble Defendants would essentially be uncollectible. While the individual D&O Defendants have insurance, the Insurers have contested the scope of coverage and are making a substantial contribution. Attempting to recover more would require time-consuming and uncertain litigation against the Insurers in a foreign jurisdiction under foreign law. The settlement eliminates these obstacles and provides a certain and still substantial recovery to all of the Trust's beneficiaries. Accordingly, the Trust respectfully submits that the settlement is fair and reasonable and should be approved.

**Relief Requested**

3. The Trust seeks entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), approving a settlement and compromise of claims among the Trust, the Defendants and the Insurers pursuant to the terms of the settlement agreement attached as Exhibit B (the "Settlement Agreement").

**Jurisdiction and Venue**

4. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Trust confirms its consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1(f) of the Local Rules of

---

[1] Undefined capitalized terms are defined in the Settlement Agreement. If there is any inconsistency or discrepancy between this Motion and the terms of the Settlement Agreement, the Settlement Agreement shall govern.

2

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, to the entry of a final order by the Court in connection with this motion if it is later determined that the Court, absent consent of the parties, cannot enter the requested final order consistent with Article III of the United States Constitution.

5. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory basis for the relief requested herein is Bankruptcy Rule 9019.

## Background

7. On August 1, 2014, Noble completed the spin-off of its wholly-owned subsidiary, Paragon Offshore plc ("Paragon"), by way of a distribution to Noble's shareholders. In the spin-off, Noble divested most of its standard specification drilling rigs and related historical liabilities.

8. On February 14, 2016, Paragon filed chapter 11 proceedings in this Court. Paragon's plan of reorganization established the Trust to pursue claims against Noble and its officers and directors arising from the spin-off.

9. On December 15, 2017, the Trust filed a complaint seeking approximately $1.7 billion in damages against several Noble entities and certain directors of Noble and Paragon. Adv. D.I. 1. The Trust subsequently amended the complaint to add approximately $950 million in damages and three corporate defendants. Adv. D.I. 265.

10. On July 31, 2020, the Noble Defendants and certain related companies filed voluntary chapter 11 petitions in the United States Bankruptcy Court for the Southern District of Texas (the "Texas Bankruptcy Court"). D.I. 1, *In re Noble Corporation plc,* No. 20-33836 (Bankr. S.D. Tex. July 31, 2020).

11. The Trust moved to lift the automatic stay in order to proceed with trial against the Noble Defendants in this Court. *Id.*, D.I. 65. Shortly thereafter, the Noble Debtors (i) moved to extend the automatic stay to cover the Trust's claims against the D&O Defendants and (ii) filed a

3

motion requesting that the Texas Bankruptcy Court estimate the Trust's claims against the Noble Defendants. *Id.*, D.I. 144; Adv. D.I. No. 3, *Noble Corporation plc v. Paragon Litigation Trust*, Adv. Proc. No. 20-03354 (Bankr. S.D. Tex. Aug. 4, 2020).

12.     At a hearing on those motions, the Texas Bankruptcy Court noted that "it is my view that with respect to the [Noble] Debtors, there should absolutely be an estimation hearing before me … ." The Texas Bankruptcy Court further noted that it intended to defer to this Court whether the litigation against the D&O Defendants should be stayed. D.I. 234, Transcript of August 21, 2020 Hearing at 13: 1-4, 15:1-5, *In re Noble Corporation plc, et al.*, Case No. 20-33826 (Bankr. S.D. Tex.). This Court set trial for the Trust's claims against the D&O Defendants for November 30, 2020. Adv. D.I. 385.

## Settlement Background

13.     Leading up to the filing and throughout the duration of Noble's chapter 11 case, the parties have engaged in active, arms-length negotiations. Those discussions began in earnest in April 2020 when it became clear that Noble would likely be filing for bankruptcy before trial was scheduled to begin in September.

14.     On July 22, 2020, the Court entered an order requiring the Trust, the Defendants, and the Insurers to participate in mediation. Adv. D.I. 365. The Court appointed former Bankruptcy Judge Kevin Gross as mediator.

15.     On July 28, 2020, the parties held a formal mediation session. Though those efforts were initially unsuccessful, the parties continued to discuss a potential resolution of the Trust's claims and former Judge Gross remained in constant contact with all of the parties following the formal mediation session. The Settlement Agreement is a product of those negotiations and former Judge Gross' efforts.

4

16. On September 23, 2020, the Trust reached a settlement with the Noble Defendants, which provided for an $85 million claim to be allowed against the Noble Debtors' estates in full settlement of the Trust's claims against them.

17. The treatment of that claim was structured to incentivize a global settlement of all of the Trust's claims, including its claims against the D&O Defendants. Settlement of the claims against the D&O Defendants required the cooperation of the Insurers. If a global resolution was not reached on or before October 1, 2020, the Noble Debtors would make an up-front cash payment of $7.5 million to the Trust and pursue coverage claims against the Insurers for their defense costs and the $85 million allowed claim. The Trust would receive any recovery for the $85 million allowed claim and split any recovery of defense costs with the Noble Defendants. Pursuant to the terms of this settlement, the Trust's total recovery against the Noble Defendants was capped at $85 million.

18. The Noble Debtors sought and obtained approval under Bankruptcy Code sections 105(a) and 363, and Bankruptcy Rule 9019, for the Noble Defendants Settlement from the Texas Bankruptcy Court. D.I. 442 & 545, *In re Noble Corporation plc,* No. 20-33836 (Bankr. S.D. Tex.).

19. The parties continued their mediation efforts with the assistance of former Judge Gross. On October 9, the parties reached a global resolution of all claims asserted by the Trust.

20. The resulting Settlement Agreement provides that the Trust will receive $90,375,000 in cash, which includes (i) $82,675,000 from the Insurers and (ii) $7,700,000 from the Noble Defendants.

21. Pursuant to Section 6.10 of the Litigation Trust Agreement, "[t]he Litigation Trust Management shall be authorized to settle any of the Noble Claims upon approval by a majority of the members of the Litigation Trust Committee without approval of the Bankruptcy Court." The

Litigation Trust Committee unanimously approved the settlement on October 8. Section 7.7 of the Litigation Trust Agreement also provides that "[t]he Litigation Trust Management shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Trust Assets and the Noble Claims required to be administered by the Litigation Trust" and protects the Trust from liability for any decisions made with Court approval. Accordingly, the Trust is filing this motion to ensure that all beneficiaries have notice and an opportunity to be heard and the Court has an opportunity to review the settlement.

## Basis for Relief

### I. The Settlement is Fair, Reasonable, and in the Best Interests of the Trust Beneficiaries.

22. The Trust seeks Court approval of the settlement pursuant to Bankruptcy Rule 9019(a), which provides in part: "On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

23. Settlements are often used to expedite case administration and reduce unnecessary administrative costs. As such, they are favored in bankruptcy. *See In re Nutraquest, Inc.*, 434 F.3d 639, 646 (3d Cir. 2006) ("[i]t is axiomatic that settlement will almost always reduce the complexity and inconvenience of litigation"). Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a settlement so long as the proposed compromise is fair, reasonable and in the best interest of the estate. *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del 1998) ("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate.'"); *In re Nw. Corp.*, 2008 WL 2704341, at *6 (Bankr. D. Del. July 10, 2008) ("[T]he bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate."); *In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) ("[T]he bankruptcy court has a duty to make an informed, independent judgment that the compromise is fair and equitable."). A proposed compromise need

not be the best result that a debtor could have achieved, but only must fall within the "reasonable range of litigation possibilities." *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004).

24. In determining whether a compromise is fair and reasonable, the Third Circuit has adopted a four-factor balancing test: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Nutraquest*, 434 F.3d at 643; *see also Key3Media Grp.*, 336 B.R. 87 at 93 (when determining whether a compromise is in the best interests of the estate, courts must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal") (internal citations omitted). The settlement easily satisfies these factors.

(a) <u>Probability of Success in Litigation</u>

25. The Trust believes that its claims are strong and meritorious. If they were collectible, the Trust would not be settling for $90 million. But unfortunately they are not. Despite the Trust's confidence in its claims, they turn largely on the issue of solvency, which depends both on hotly contested factual issues and sharply divergent, competing expert testimony. And so there can be no assurance that the Trust will ultimately prevail on its claims.

(b) <u>Likely Difficulties in Collection</u>

26. In this case, collectability is the decisive factor. A multi-billion dollar judgment is small comfort if it is uncollectible. The Noble Defendants are effectively judgment proof. Absent settlement, the Trust faced an estimation proceeding that, even if successful, would have only provided a claim against the Noble Defendants' estates worth a few pennies on the dollar.

27.     The Trust would also likely encounter significant difficulties collecting on any judgments against the D&O Defendants on its breach of fiduciary duty claims. The D&O Defendants have insurance capped at a maximum of $200 million less the tens of millions that have already been spent, and will continue to be spent, for defense costs. The Insurers have contested underlying liability and the scope of their coverage. The Insurers' $82.675 million contribution represents a sizable portion of what realistically could be recovered. To recover more would likely require that the Trust wins at trial, sustains that victory through appeals, and then attempts to collect against the insurers in a foreign jurisdiction under foreign law. And while the individual D&O Defendants could potentially face personal liability, any attempt to collect against them would be an expensive and tedious process with little prospect for meaningful additional recoveries.

        (c)    <u>Complexity of Litigation Involved, and the Expense, Inconvenience and Delay Necessarily Attending It</u>

28.     The proof required to obtain a judgment for the Trust would be substantial and complex given that the Trust's primary theories of fraudulent transfer and breach of fiduciary duty are fact-intensive and subject to competing expert opinions. Prior to settlement, the parties anticipated a 120-hour trial involving eight expert witnesses, numerous other witnesses presented live and by deposition, and hundreds of exhibits. Defendants made clear that they would vigorously defend against the claims through trial and likely appeals. Approval and consummation of the settlement will avoid those enormous costs, risks and uncertainties, and provide immediate resolution of the Trust's claims and recovery for the Trust's beneficiaries.

        (d)    <u>Paramount Interests of Creditors</u>

29.     The Trust was created to prosecute claims on behalf of creditors holding Allowed Revolver Claims, Allowed Term Loan Claims, and Allowed Senior Notes Claims, with all other

creditors' claims having been resolved by the confirmation of the Fifth Joint Chapter 11 Plan. D.I. 1614; D.I. 1614-1 at 14-15. Ownership units in the Trust were divided into two tranches: Class A and Class B. D.I. 1614-1 at 10.

30. The settlement provides cash to holders of both classes of interests in the Trust. It provides the certainty of a substantial recovery to the Trust's beneficiaries and avoids the insurmountable problem of collecting against a hopelessly insolvent corporate defendant.

### Notice

31. Notice of this Motion has been provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Administrative Agent under the Credit Agreement dated as of July 29, 2019 by and among Paragon Litigation Trust, as the Borrower, the Lenders Party Hereto, as Lenders, and Cantor Fitzgerald Securities, as the Agent; (iii) all holders of Class A Litigation Trust Interests; (iv) all holders of Class B Litigation Trust Interests; (v) Skadden, Arps, Slate, Meagher & Flom LLP (Attn: George Panagakis, Esq. and Anthony Clark, Esq.), counsel to Defendants; (vi) Barnes & Thornburg LLP (Attn: Joseph A. Matteo, Esq.), conflicts counsel; (vii) Troutman Pepper Hamilton Sanders LLP (Attn: Douglas D. Herrmann, Esq. and Marcy J. McLaughlin Smith, Esq.), counsel to Julie J. Robertson; (viii) Schiffer Hicks Johnson Pllc (Attn: Andrew S. Hicks, Esq.), counsel to Julie J. Robertson; and (ix) all parties who filed a request for service of notices under Bankruptcy Rule 2002.

WHEREFORE, the Trust respectfully requests that this Court enter an Order, in substantially the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other relief as is just and proper.

Dated: February 4, 2021

*/s/ Laura Davis Jones*
PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
ljones@pszjlaw.com
tcairns@pszjlaw.com

- and -

KIRKLAND & ELLIS LLP
David J. Zott, P.C. (admitted *pro hac vice*)
Jeffrey J. Zeiger, P.C. (admitted *pro hac vice*)
William E. Arnault (admitted *pro hac vice*)
Anne I. Salomon (admitted *pro hac vice*)
Jason A. Feld (admitted *pro hac vice*)
300 N. LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
dzott@kirkland.com
jzeiger@kirkland.com
warnault@kirkland.com
anne.salomon@kirkland.com
jason.feld@kirkland.com

*Co-Counsel for the the Paragon Litigation Trust*